# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Arthur Bekker, individually and on behalf of a class of all other persons similarly situated, and on behalf of the Neuberger Berman 401(k) Plan,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>NEUBERGER BERMAN GROUP LLC, Neuberger Berman LLC, Neuberger Berman Trust Company N.A., Marvin Schwartz, the Neuberger Berman Investment Committee and JANE AND JOHN DOES 1–25,<br><br>　　　　　　　　　　Defendants. | Civil Action No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)** |

## I.    INTRODUCTION

1.      Plaintiff Arthur Bekker ("Plaintiff"), individually and on behalf of a class of similarly situated participants ("Plaintiffs") in the Neuberger Berman Group 401(k) Plan (the "Plan"), and on behalf of the Plan, bring this action for breach of fiduciary duty and prohibited transactions under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), against Neuberger Berman LLC, and Neuberger Berman Trust Company N.A., (collectively "Neuberger"), Marvin Schwartz, the Neuberger Berman Investment Committee and its members during the proposed class period ("Jane and John Does 1–25").

2.      Plaintiffs bring this action by and through their undersigned attorneys based upon their personal knowledge and information obtained through counsel's investigation. Plaintiffs anticipate that discovery will uncover further substantial support for the allegations in this Complaint.

## II.     NATURE OF THE ACTION

3.      The ERISA fiduciary obligations of retirement plan fiduciaries to the participants and beneficiaries of a plan are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598, 602 (8th Cir. 2009).

4.      When selecting investments for a retirement plan, plan fiduciaries are required to: perform with undivided loyalty; act prudently; and defray reasonable plan expenses. ERISA §404(a)(1), 29 U.S.C. §1104(a)(1).

5.      In addition, ERISA prohibits certain transactions and arrangements that have a high potential for abuse. Thus, ERISA prohibits a fiduciary from causing a plan to transact with a party in interest, such as the plan sponsor, and prohibits plan fiduciaries from causing plan transactions for the benefit of themselves or others.  ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b).

6.      Defendants, who are or were fiduciaries to the Plan during the Class Period have violated their fiduciary duties and engaged in prohibited transactions with assets of the Plan.

7.      Defendants, during the Class Period, were responsible for selecting, monitoring, and removing the investments in the Plan. The individual Defendants were officers or employees of Neuberger or an affiliated entity. Instead of acting for the exclusive benefit of the

Plan and its participants and beneficiaries with respect to managing the Plan's assets, these Defendants acted for the benefit of Neuberger — and one of its shareholders in particular — by forcing the Plan into investments managed by Neuberger or an affiliated entity, which charged excessive fees that benefited Neuberger and the managers of the proprietary funds.

8.      One fund in particular, the Value Equity Fund, was larded with high fees and has suffered from consistently abysmal performance. Nevertheless, in 2011 Defendants opened the Fund to new investments and have maintained the Fund in the Plan despite its high fees and persistent and increasing underperformance compared to readily available alternatives. The decision to continue to offer the Fund, and to open the Fund to new investments, were fiduciary breaches which cost the Plan over $130 million.

9.      Neuberger, meanwhile, profited handsomely from the arrangement, receiving for itself tens of millions of dollars in fees during the Class Period from the Plan's investment in the Value Equity Fund, and more from the inclusion of other Neuberger-managed options. These fees were 40 times more than comparable alternative funds like those identified by Defendant Schwartz. Schwartz, manager of the Fund and shareholder in Neuberger, profited from assets he removed from the Fund and the Plan through fees collected directly for him and by the Straus Group at Neuberger, which Schwartz lead and co-founded, as well as by Neuberger Berman Trust N.A.

10.      Defendants also engaged in prohibited transactions during the Class Period. Each time the Plan paid fees to Neuberger Berman Trust Company N.A., or other Neuberger entities, in connection with the Plan's investment in the Fund, Defendants caused the Plan to engage in a prohibited transaction under ERISA. Specifically, the Plan engaged in a transaction prohibited by ERISA § 406(a), which prohibits Defendants from causing the Plan to transact

with the plan sponsor, Neuberger, or any of its affiliates. Each time the Plans paid fees to any of these entities, the Plan also engaged in a transaction prohibited by ERISA § 406(b), which prohibits Defendants from causing the Plan to engage in a transaction benefiting a person, here Neuberger Berman Trust Company N.A. and Marvin Schwartz, whose interests are adverse to the interests of the Plan and its participants and beneficiaries, and prohibits Neuberger from dealing with Plan assets in its own interest or for its own account.

11.     This is a civil enforcement action under ERISA, and in particular under ERISA §§ 404, 406, 409, and 502(a)(2), 29 U.S.C. §§ 1104, 1106, 1109 and 1132(a)(2).

12.     Plaintiffs bring this action on behalf of the Plan for losses to the Plan and for disgorgement of unlawful fees, expenses, and profits taken by Defendants, and to obtain such further equitable or remedial relief as may be appropriate to redress and to enforce the provisions  of Title I of ERISA.

13.     This class action is brought on behalf of participants in the Plan who participated from June 15, 2010 through the present (the "Class Period") and who invested in the Fund.

### III.  JURISDICTION AND VENUE

14.     **Subject Matter Jurisdiction.** This court has subject matter jurisdiction over this  action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of  the  United States, and pursuant to ERISA § 502(e)(1), 29 U.S.C. §1132(e)(1), which provides for federal jurisdiction of civil actions brought under Title I of ERISA.

15.     **Personal Jurisdiction.** This court has personal jurisdiction over Defendants because they reside and/or transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process, ERISA § 502(e)(2), 29 U.S.C. §

1132(e)(2), and the Plan is and was administered in this District and the breaches of ERISA took place herein. This Court also has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in New York.

16.     **Venue.** Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is and was administered in New York, New York, within this District, the breaches of ERISA took place in this District, and/or a Defendant resides or may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because a defendant resides and/or does business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## IV. PARTIES

17.     Plaintiff Arthur Bekker is a resident of Westfield, New Jersey. He participated in the Plan during the entire Class Period.

18.     Plaintiff's individual account in the Plan was invested in various investment options offered under the Plan's investment menu in the Class Period, including the Fund. Plaintiff, like substantially all plan participants, was not provided any information regarding the substance of deliberations, if any, of Defendants concerning the Plan's menu of investment options or selection of service providers during the Class Period. Plaintiff otherwise had no knowledge of the substance of the deliberations, or of the nature of the investments he selected in the Plan beyond what was provided to him by the Plan. Plaintiff discovered his claims shortly before commencing this action.

19.     Defendant Neuberger Berman Group LLC, the Plan Sponsor, is a Delaware company with its principal place of business in New York, New York.

20.     Defendant Neuberger Berman LLC is also a Delaware company and is an indirect wholly owned subsidiary of Neuberger Berman Group LLC. Neuberger Berman LLC is a registered broker-dealer and registered investment adviser engaged principally in providing investment advisory services to individuals and institutions. Its principal place of business is also New York, New York.

21.     Defendant Neuberger Berman Trust Company N.A, is a wholly-owned subsidiary of Neuberger Berman Group LLC and is the trustee of the Fund (the "Trustee). It maintains ultimate fiduciary authority over the management of, and investments made, in the Fund. Since April 18, 2011, the Fund has been part of a Collective Investment Trust sponsored and maintained by Neuberger Berman Trust Company N.A. Neuberger Berman Trust Company N.A. is also a Delaware corporation with its principal place of business in New York, New York.

22.     Marvin Schwartz is the lead manager of the Fund through the Straus Group at Neuberger. Schwartz is Managing Director, Senior Portfolio Manager and Team Leader. Schwartz joined Neuberger in 1961 and, with Philip Straus, established the Straus Group in 1967. His previous roles at Neuberger include being a member of the Neuberger Berman Executive Committee, Director of Neuberger Berman Management Co., and a member of the firm's Board of Directors. Schwartz is a part-owner of Neuberger Berman Group LLC, the Vice Chairman of the Board of Directors of Neuberger Berman Group LLC, Managing Director of Neuberger Berman Group LLC, and a resident of New York.

23.     The Neuberger Berman Investment Committee (the "Committee"), operating under the Plan Document, consists of at least three members appointed by the Board of Directors of Neuberger Berman Group LLC. The Investment Committee is the Named

Fiduciary for the appointment of managers and the control or management of the assets of the Plan, except with respect to those matters which under the Plan or the Trust Agreement are the responsibility or subject to the authority of the Trustee or an investment manager). The Investment Committee may appoint an investment manager or managers to managed any assets of the Plan.

24.     Defendants Jane and John Does 1–25 are members of the Committee and/or Neuberger  Executive Vice Presidents in charge of Human Resources during the Class Period, who are unknown to Plaintiffs.

25.     Defendants are or in the Class  Period were fiduciaries to the Plan within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and parties in interest to the Plan within the meaning of  ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

26.     Defendant Schwartz also served as an investment manager within the meaning of ERISA §§ 3(38), 29 U.S.C. § 1002(38), to one or more of the investment options offered by the Plan during the Class Period, including the Value Equity Fund, and is therefore a fiduciary with respect to assets of the Plan allocated to such investment options.

## V.     FACTS

**a.  The Plan and Administration of the Plan.**

27.     The Plan as an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

28.     The Plan is also an "employee pension benefit plan" or "pension plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and a "defined contribution plan" or

"individual account plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

29.     The Plan covers eligible employees of Neuberger Berman Group LLC, including its domestic subsidiaries.

30.     Participants in the Plan have the opportunity to direct the investment of all of the assets allocated to their individual accounts into the investment options offered by the Plan, and the return on those investments are credited to each participant's account.

31.     The Plan's benefits are funded by participants' voluntary tax-deferred contributions and by employer matching contributions.  The Plan is intended to qualify under Code § 401(k).

32.     The Plan was created on January 1, 2010 after the separation of Neuberger from Lehman Brothers. Participant account balances from the Lehman Brothers Savings Plan for employees of Neuberger who were active on January 1, 2010 were moved into the newly-created Plan, as were account balances for employees of Neuberger who had terminated from Neuberger prior to January 1, 2010, but who had balances in the Neuberger Berman Value Equity Fund. In addition, accounts for employees of the Lehman Trust Companies were moved into the Plan on July 15, 2010.

33.     The Plan's most recent Form 5500 filings with the U.S. Department of Labor states that at the end of the 2014 plan year the Plan had 2,677 combined participants and deceased participants with beneficiaries entitled to benefits. At that time, the Plan had $444,451,094 invested in the Fund, out of total Plan assets of $831,225,394.

34.     The Plan invests in 29 different investment options, of which eight, including the Fund, are managed by Neuberger.

35.     Neuberger Berman Group, LLC, as Plan Administrator, is responsible for selecting, monitoring, and removing the investment options in the Plan.  At some or all times during the Class Period, it designated the Committee to carry out this duty. The Committee's individual members are officers and/or employees of Neuberger or its affiliates, and are not independent of Neuberger.

36.     Neuberger Berman Group, LLC is, and since December 2014 has been, 100% owned by Neuberger portfolio managers and senior professionals. Only about 20% of the employees of Neuberger are permitted to own shares of Neuberger. Prior to December 2014, Neuberger was owned by these high-level Neuberger employees as well as certain creditors of Lehman Brothers, from which Neuberger separated in 2009.

**b.  The Value Equity Fund**

37.     The Plan invested approximately half of its assets in the Neuberger Berman Value Equity Fund (hereafter "the Fund"). Neuberger Berman Trust Company N.A. (the "Trustee") serves as the Trustee of the Fund and maintains fiduciary authority over the management of, and investments made in the Fund. The Fund is part of a Collective Investment Trust (the "Trust") sponsored and maintained by the Trustee. The Trustee is a wholly-owned subsidiary of Neuberger Berman Group LLC.

38.     Prior to April 18, 2011, the Fund was a separately managed account managed Marvin Schwartz and the Straus Group. It had been closed to new Participants since 2003 after Neuberger's predecessor plans were merged into Lehman Brother's defined contribution plan. Lehman Brothers prohibited participants from moving assets into the Neuberger Berman Value Equity Fund while it was in their Plan.

39.     In 2008, Schwartz had, by his own admission, a "cataclysmic year". His Value

Equity holdings lost nearly 50% of their value, even though his stated benchmark, the S&P 500, lost only 37%.

40.     On April 18, 2011, following the re-separation of Neuberger from Lehman Brothers, and despite Schwartz' poor performance, Neuberger transferred the assets of the separate account into a collective trust and re-opened the Fund as an investment option for the Plan. The conversion not only permitted the Plan to invest additional assets in the Fund, but also allowed investors other than the Plan to invest in the Fund. Nevertheless, the Plan continues to represent well over 90% of the assets in the Fund. Defendants converted the Plan's investment in the Separate Account version of the Fund to the Collective Trust version on the same date (the "Collective Trust Inception Date").

41.     Neuberger's stated benchmark for the Fund is the S&P 500 Index. The S&P 500 Index is widely regarded as the standard for measuring the performance of large-cap stocks traded on U.S. markets and includes a representative sampling of leading companies in leading industries. It is unmanaged and is not available for direct investment.

42.     As of December 31, 2010, when the Fund was still a Separate Account, the Plan's investments through the separate account consisted of 44 common stocks and a *de minimus* investment in a cash-equivalent fund for liquidity purposes. Nearly all stocks were companies included in the S&P 500.

43.     As of December 31, 2012, the 18 largest holdings of the Fund were all companies in the S&P 500 Index. Collectively, these 18 holdings represented 71.5% of the Fund's assets.

44.     As of June 30, 2016, the ten largest holdings of the Fund — the only holdings disclosed in the June 30, 2016 fact sheet — were all companies in the S&P 500 Index.

Collectively, these ten holdings represented 51% of the Fund's assets.

45.     Accordingly, the S&P 500 Index is an appropriate benchmark of the Fund's returns.

46.     Defendant Schwartz has admitted that investors have a choice between his active management "and the associated fees or just buy an index."[1]

47.     Actively managed equity funds, particularly those managed by Neuberger Berman, rarely outperform their benchmarks. For example, Neuberger's 2014 Annual Report notes that 71% of their equity investments failed to meet their benchmarks over the prior 5-year period and 74% failed to meet their benchmarks over the prior 3-year period. Thus, Defendants knew that Neuberger managed equity investments, like the Fund, are nearly three-times as likely to underperform their benchmark as they are to outperform it.

48.     Numerous other managers offer investment products intended to replicate the performance of the S&P 500 Index. For example, Vanguard offers large investors, like the Plan, the Institutional Index Fund Institutional Plus Shares (hereafter referred to by ticker symbol, "VIIIX"). That fund has matched the performance of the S&P 500 Index over the past 5-years and charges a management fee of 2 basis points ("bps"), which means two one-hundredth of one-percent per year. Other managers, including State Street Global Advisors, also offer investments tracking the S&P 500 Index for 2 bps or less.

49.     Neuberger, in contrast, charges the Plan fees that are 40 times higher (80 bps) for the management of the Fund. These fees are paid to the Trustee, directly or indirectly, by the Plan. Based on year-end reported assets the fees to Neuberger have been:

---

[1] http://citywireselector.com/news/marvin-schwartz-makes-bold-calls-after-poor-year/a340987

| YEAR | ASSETS | FEE TO NEUBERGER | VIIIX FEE | EXCESS |
|---|---|---|---|---|
| 2010 | $278,027,414 | $2,224,219[2] | $55,605 | $2,168,614 |
| 2011 | $346,598,100 | $2,345,776 | $69,320 | $2,276,456 |
| 2012 | $349,244,108 | $3,582,934 | $69,849 | $3,513,085 |
| 2013 | $428,841,242 | $3,841,771 | $85,768 | $3,756,003 |
| 2014 | $444,451,094 | $4,018,322 | $88,890 | $3,929,432 |
| 2015 | $444,451,094[3] | $4,018,322 | $88,890 | $3,929,432 |
| Total | | $20,031,344 | $458,323 | $19,573,022 |

50.     Thus, Neuberger received at least $20 million in fees even though comparable large-cap funds would have charged the Plan radically less — under $500,000 total over the past five years.

51.     During and before the Class Period, the Fund dramatically underperformed the S&P 500 Index and similar investible products such as VIIIX. For the ten-years ending on June 30, 2016, the Fund had an *annualized* return of 2.97% while the S&P 500 Index and VIIIX had annualized returns of 7.42%.[4]

52.     The underperformance has been accelerating. For the five-years ending on June 30, 2016, the Fund had an annualized return of 4.7% while the S&P 500 Index and VIIIX had annualized returns of 12.1%. Meanwhile, during the 1-year ending June 30, 2016, the Fund lost 10.15% while the S&P 500 and VIIIX gained 4%, a difference of over 14% in a single year.

---

[2] Estimated.
[3] Estimated.
[4] Neuberger Berman Group LLC itself invests in various Vanguard Funds, including the Vanguard S&P 500 ETF.

| Fund | 1-year | 3-year | 5-year | 10-year |
|---|---|---|---|---|
| Neuberger | -10.2% | 2.9% | 4.7% | 3.0% |
| Vanguard | 4.0% | 11.7% | 12.1% | 7.4% |
| **Difference** | **-14.2%** | **-8.8%** | **-7.4%** | **-4.4%** |

53.     With approximately $350 million of Plan assets in the Fund over the past five years, this underperformance cost the Plan $26 million *per year* in lost returns. For the past five years alone, that sum adds up to $130 million in losses to the Plan. This is a conservative estimate because it does not factor in the compounding of these losses, new contributions into the Fund during the period, future losses as the Fund continues to underperform, or losses incurred more than five-years ago — when the Fund was a separate account within the Plan.

54.     Nevertheless, the Fund remains in the Plan to this day.

**c.   Neuberger and its Officers and Senior Managers Benefit from the Fund's continued inclusion in the Plan.**

55.     The Fund continues in the Plan because Defendants have and continue to breach their fiduciary obligations to remove the Fund.

56.     The Fund is managed by the Straus Group, a Neuberger team lead by Managing Director, Senior Portfolio Manager and Team Leader Marvin Schwartz. Schwartz joined Neuberger in 1961 and, with Philip Straus, established the Straus Group in 1967. His previous roles at Neuberger include being a member of the Neuberger Berman Executive Committee, Director of Neuberger Berman Management Co., and a member of the firm's Board of Directors.

57.     Neuberger is 100% management owned. Upon information and belief, this includes Schwartz and other managers who benefit financially from the continued inclusion of

the Fund in the Plan and any additional success the Fund has in the marketplace through their positions as significant shareholders in Neuberger.

58.     Upon information and belief, Schwartz and other managers also benefit financially from the continued inclusion of the Fund in the Plan and any additional success the Fund has in the marketplace because a portion or some or all of their compensation is determined by the assets they have under management and the profit generated from those assets.

59.     Meanwhile, the Plan was the first and largest investor in the Fund. During the relevant time period the Plan has represented between 94 and 96 percent of the assets in the Fund. Accordingly, Defendants used the retirement assets of Neuberger employees to seed a new investment product, the Value Equity Fund Collective Trust, to make the Fund marketable to outside investors and increase profits for Neuberger and Schwartz. In fact, the Fund has been almost universally rejected by other 401(k) Plans. The ICI reports that in 2012 there were about 515,000 401(k) plans in the country. Nevertheless, over the entire course of the class period only four other employers have included the Fund in their plans, each of which is, like Neuberger's Plan, too small to qualify to investing in VIIIX. Collectively, their investment in the Fund represented less than 7 percent of the total Fund during the Class Period.

## VI. ERISA'S FIDUCIARY STANDARDS AND PROHIBITED TRANSACTIONS

60.     ERISA imposes strict fiduciary duties of loyalty and prudence upon Defendants as fiduciaries of the Plan. ERISA § 404(a), 29 U.S.C.§ 1104(a), states, in relevant part, that:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest  of the participants and beneficiaries and —

(A)               for the exclusive purpose of:

   (i)           providing benefits to participants and their beneficiaries; and

   (ii)         defraying reasonable expenses of administering the plan; [and]

(B)               with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of like

character and with like aims;

(C)               by diversifying the investments of the plan so as to minimize

the  risk of large losses, unless under the circumstances it is clearly prudent not to do

so[.]

61.      ERISA also imposes co-fiduciary duties on plan fiduciaries. ERISA §

405,  29 U.S.C. § 1105, states in relevant part that:

> In addition to any liability which he may have under any other provision of this  part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary  responsibility of another fiduciary with respect to the same plan in the following  circumstances:
>
>    (1)  if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission  is a breach;
>
>    (2)  if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a  fiduciary, he has enabled such other fiduciary to commit a breach; or
>
>    (3)  if he has knowledge of a breach by such other fiduciary, unless he  makes reasonable efforts under the circumstances to remedy the breach.

62.      Under ERISA, fiduciaries who exercise discretionary authority or control over

the  selection of plan investments and the selection of plan service providers must act prudently

and  solely in the interest of participants and beneficiaries of the plan when performing such

functions. Thus, "the duty to conduct an independent investigation into the merits of a particular

investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings*

*Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996).

      63.    As the Department of Labor explains,

> [T]o act prudently, a plan fiduciary must consider, among other factors, the
> availability, riskiness, and potential return of alternative investments for his or her
> plan. [Where an investment], if implemented, causes the Plan to forego other
> investment opportunities, such investments would not be prudent if they provided  a
> plan with less return, in comparison to risk, than comparable investments  available to
> the plan, or if they involved a greater risk to the security of plan  assets than other
> investments offering a similar return.

DOL Opinion 88-16A (1988).

      64.    Pursuant to these duties, fiduciaries must ensure that the services provided to the

plan are necessary and that the fees are reasonable:

> Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries must act
> prudently and solely in the interest of the Plan participants and beneficiaries … in
> determining which investment options to utilize or make available to Plan
> participants or beneficiaries. In this regard, the responsible Plan fiduciaries must
> assure that the compensation paid directly or indirectly by the Plan to [service
> providers] is reasonable . . .

DOL Opinion 97-15A (1997); DOL Opinion 97-16A (1997).

      65.    A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest

of  plan participants and beneficiaries. As the Department of Labor has warned:

> [T]he Department has construed the requirements that a fiduciary act solely in the
> interest of, and for the exclusive purpose of providing benefits to participants and
> beneficiaries, as prohibiting a fiduciary from subordinating the interests of
> participants and beneficiaries in their retirement income to unrelated objectives.
> In other words, in deciding whether and to what extent to invest in a particular
> investment, or to make a particular fund available as a designated investment
> alternative, a fiduciary must ordinarily consider only factors relating to the
> interests of plan participants and beneficiaries in their retirement income. A

> decision to make an investment, or to designate an investment alternative, may not be influenced by non-economic factors unless the investment ultimately chosen for the plan, when judged solely on the basis of its economic value, would be equal to or superior to alternative available investments.

DOL Opinion 98-04A (1998); *see also* DOL Opinion 88-16A (1988). The Department of Labor

has repeatedly warned:

> While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable.

*Meeting Your Fiduciary Responsibilities*, U.S. Dep't of Labor Employee Benefits Security

Admin. (Feb. 2012), http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html.

66.     In a separate publication, the Department of Labor writes:

> The Federal law governing private-sector retirement plans, the Employee Retirement Income Security Act (ERISA), requires that those responsible for managing retirement plans -- referred to as fiduciaries -- carry out their responsibilities prudently and solely in the interest of the plan's participants and beneficiaries. Among other duties, fiduciaries have a responsibility to ensure that the services provided to their plan are necessary and that the cost of those services is reasonable.

> * * *

> Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

> * * *

> By far the largest component of plan fees and expenses is associated with managing plan investments. Fees for investment management and other related services generally are assessed as a percentage of assets invested. Employers

should pay attention to these fees. They are paid in the form of an indirect charge  against the participant's account or the plan because they are deducted directly  from investment returns. Net total return is the return after these fees have been  deducted. For this reason, these fees, which are not specifically identified on  statements of investments, may not be immediately apparent to employers.

*Understanding Retirement Plan Fees and Expenses*, U.S. Dep't of Labor Employee Benefits

Security Admin. (Dec. 2011), http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.

67.     The general duties of loyalty and prudence imposed by ERISA §404, 29 U.S.C.

§1004, are supplemented by a detailed list of transactions that are expressly

prohibited by ERISA § 406, 29 U.S.C. §1006, and are considered "per se"

violations because they entail a high potential for abuse. Section 1106(a)(1)

states, in pertinent part, that:

[A] fiduciary with respect to a plan shall not cause the plan to engage in a

transaction, if he knows or should know that such transaction constitutes a direct or indirect —

(A)     sale or exchange… between the plan and a party in interest;

(C)     furnishing of goods, services, or facilities between the plan and a party in

interest;

(D)     transfer to, or use by or for the benefit of a party in interest, of any assets

of the plan

Section 1106(b) provides, in pertinent part, that:

[A] fiduciary with respect to the plan shall not —

(1)     deal with the asset of the plan in his own interest or for his own account,

(2)     in his individual or in any other capacity act in a transaction involving

the plan on behalf of a party (or represent a party) whose interests are adverse to the interest of

the plan or the interest of its participants or beneficiaries, or

                (3) receive any consideration for his own personal account from any party

dealing with such plan in connection with a transaction involving the assets of the plan.

68.     ERISA's prohibited transaction provisions thus prohibit fiduciaries, such as the Defendants here, from causing plans to engage in transaction with the plan sponsor, here Neuberger, including causing the plan to invest assets in the investment management products offered by a party in interest or plan fiduciary and the payment of investment management or other fees in connection with such investments.

69.     ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), provides a cause of action against a party in interest, such as Neuberger, for participating in the breach of a fiduciary.

70.     ERISA § 405(a), 29 U.S.C. §1105(a), provides a cause of action against a fiduciary, such as Neuberger, for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty.

71.     ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409, 29 U.S.C. § 1109, further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

## VII. CLASS ALLEGATIONS

72.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan fiduciary,

        participant, beneficiary, or the Secretary of Labor to bring a suit individually

        on behalf of the Plan to recover for the Plan the remedies provided under

        ERISA § 409, 29 U.S.C. § 1109(a).

73.     In acting in this representative capacity and to enhance the due process

        protections of unnamed participants and beneficiaries of the Plan, as an

        alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §

        1132(a)(2) and (3), Plaintiffs seek to certify this action as a class action on

        behalf of:

All participants in the Neuberger Berman Group 401(k) Plan from June 15, 2010 to the date
of judgment who invested any portion of their Plan accounts, at any time during the class
period, in the Neuberger Berman Value Equity Fund. Excluded from the class are
Defendants, Defendants' beneficiaries, and Defendants' immediate families.

74.     Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2),

        and/or (b)(3).

(a)     The class satisfies the numerosity requirement of Rule 23(a) because it is

        composed of over one thousand persons, in numerous locations. The number of

        class members is so large that joinder of all its members is impracticable.

(b)     The class satisfies the commonality requirement of Rule 23(a) because there are

        questions of law and fact common to the Class and these questions have common

        answers. Common legal and factual questions include, but are not limited to: (a)

        who are the fiduciaries liable for the remedies provided by ERISA § 409(a), 29

        U.S.C. §1109(a); whether the fiduciaries of the Plan breached their fiduciary

        duties to the Plan by causing the Plan to invest in the Fund and by failing to

prudently remove the Fund from the Plan; whether the decision to include and not to remove the Fund was made solely in the interests of Plan participants and beneficiaries; what are the losses to the Plan resulting from each breach of fiduciary duty; whether Defendants cause the Plan to engage in prohibited transactions; whether monies received and retained by a Defendant were plan assets; and what are the profits of any breaching fiduciary that were made through the use of Plan assets by the fiduciary.

(c)      The class satisfies the typicality requirement of Rule 23(a) because Plaintiffs' claims are typical of the claims of the members of the Class because  Plaintiffs' claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiff was and remains an investor in the Fund for the entirety of the Class Period.

(d)      The class satisfies the adequacy requirement of Rule 23(a). Plaintiff will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation.  Plaintiff has no interests antagonistic to those of other members of the Class.  Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

(e)      Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing  incompatible standards of conduct for Defendants. Class action status also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by

the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

(f)     In the alternative, certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

(g)     In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VIII.   CLAIMS FOR RELIEF

### a.  Disloyal Conduct in Connection with Investments

75.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

76.     Defendants are responsible for selecting, monitoring, and removing investment options in the Plan.

77.     Defendants caused the Plan to invest hundreds of millions of dollars in the Fund, favoring the proprietary investment options of the Neuberger organization.

78.     Defendants collected excessive and unnecessary fees from the Plan and

the Fund.

79.    Defendants failed to remove the Fund even though a prudent fiduciary would
       have done so given the Fund's high fees and overwhelmingly poor
       performance.

80.    By the conduct and omissions described above, Defendants failed to discharge
       their duties with respect to the Plan solely in the interest of the  participants and
       beneficiaries and for the exclusive purpose of providing benefits to participants
       and beneficiaries and defraying reasonable expenses of administering the Plan,
       in violation of   ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

81.    Defendants failed to discharge their duties with respect to the Plan with the
       care, skill, prudence, and diligence under the circumstances then prevailing that
       a prudent man acting in a like capacity and familiar with such matters would
       use in the  conduct of an enterprise of like character and with like aims, in
       violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

82.    As a direct and proximate result of these breaches of fiduciary duties, the Plan
       and its participants have paid Neuberger, directly and indirectly, substantial
       excess investment  management, trustee, and other fund-related fees during the
       Class Period, and suffered lost-opportunity costs which continue to accrue, for
       which Defendants are jointly and severally liable pursuant to ERISA § 409, 29
       U.S.C. § 1109, and ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

   **b.  Prohibited Transactions Between the Plan and Neuberger in Connection
       with Investments**

83.    Plaintiffs repeat and reallege each of the allegations set forth in the
       foregoing  paragraphs as if fully set forth herein.

84.     This Count alleges prohibited transactions against the Defendants.

85.     Defendants are fiduciaries and parties in interest to the Plan.

86.     Defendants caused the Plan to engage in a prohibited transaction under ERISA with each payment by the Plan of fees to Neuberger in connection with the Plan's investment in the Fund.

87.     By the conduct and omissions described above, the Defendants failed to discharge their duties with respect to the Plan.

88.     In Neuberger's collection of fees from the Plan as a result of the Plan's investment in the Fund, both before and after the Collective Trust Inception Date, Defendants caused the Plan to engage in transactions that they knew or should have known constitute direct or indirect sale or exchange of property between the plan and a party in interest, in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A); and

89.     In Neuberger's collection of fees from the Plan as a result of the Plan's investment in the Fund, both before and after the Collective Trust Inception Date, Defendants caused the Plan to engage in transactions that they knew or should have known constitute direct or indirect furnishing of goods or services between the plan and a party in interest, in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C); and

90.     In Neuberger's collection of fees from the Plan as a result of the Plan's investment in the Fund, including subsequent payments to Schwartz as a result of the Plan's investment in the Fund, both before and after the Collective Trust Inception Date, Defendants caused the Plan to engage

in transactions that they knew or should have known constitute direct
or indirect transfers of the Plan's assets to, or use of the Plan's assets by
or for the benefit of, parties in interest, in violation of ERISA §
406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

91.    In Committee and Neuberger Trust Company N.A.'s causing the Plan to
engage in the above conduct and omissions, in which a fiduciary to the
Plan dealt with the assets of the Plan in its own interest or for its own
account in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1);
and

92.    By causing the Plan to engage in the above conduct and omissions, in
which fiduciaries to the Plan Neuberger Trust Company N.A. and
Schwartz, in their individual or in any other capacity, acted on behalf
of a party whose interests were adverse to the interests of the Plan or
the interests of its participants or beneficiaries, in violation of ERISA §
406(b)(2), 29 U.S.C. § 1106(b)(2).

93.    By Defendants receiving consideration for his own personal account
from any party dealing with the Plan in connection with a transaction
involving the assets of the Plan, in violation of ERISA § 406(b)(3), 29
U.S.C. § 1106(b)(3).

94.    Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2)
and

29 U.S.C. § 1109(a), Defendants are liable to disgorge all fees received from the Plan, directly or

indirectly, and profits thereon, and restore all losses suffered by the Plan caused by their breaches

of duty.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.      A declaration that the Defendants breached their fiduciary duties under  ERISA § 404 and violated ERISA § 406 by causing the Plan to engage in prohibited transactions;

B.      An order compelling the disgorgement of all fees paid and incurred, directly or  indirectly, to Neuberger and its affiliates by the Plan, including disgorgement of profits thereon;

C.      An order compelling the Defendant to restore all losses to the Plan arising from Defendants' violations of ERISA, including lost-opportunity costs;

D.      An order granting equitable restitution and other appropriate equitable monetary  relief against Defendants;

E.      Such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the Plan, the appointment of independent fiduciaries to administer the Plan, and rescission of the Plan's investments in Neuberger and affiliated entities' funds;

F.      An order certifying this action as a class action, designating the Class to receive  the amounts restored or disgorged to the Plans, and imposing a constructive trust for distribution  of those amounts to the extent required by law;

G.      An order enjoining Defendants collectively from any further violations of their  ERISA fiduciary responsibilities, obligations, and duties;

H.      An order awarding Plaintiffs and the Class their attorneys' fees and costs pursuant   to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or the Common Fund doctrine, and

post-judgment interest; and

   I.  An order awarding such other and further relief as the Court deems equitable

and just.


 Dated: August 2, 2016    Respectfully submitted,


       /s/ Kevin W. Barrett_____
       Kevin W. Barrett (NY Bar# 2196343)
       Gregory Y. Porter, *pro hac vice* to be filed
       Mark G. Boyko, *pro hac vice* to be filed
       Bailey & Glasser LLP
       209 Capitol Street
       Charleston, WV  25301
       Telephone: (304) 345-6555
       Facsimile: (304) 342-1110
       kbarrett@baileyglasser.com
       gporter@baileyglasser.com
       mboyko@baileyglasser.com

       *Attorneys for Plaintiffs*