PROSKAUER ROSE LLP
Myron D. Rumeld
Deidre A. Grossman
Neil V. Shah
Eleven Times Square
New York, NY 10036
(212) 969-3000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ARTHUR BEKKER,

                           Plaintiff,           Docket No. 1:16-cv-06123-LTS-BCM

            v.

NEUBERGER BERMAN GROUP LLC,
NEUBERGER BERMAN LLC, NEUBERGER
BERMAN TRUST COMPANY N.A., MARVIN
SCHWARTZ, the NEUBERGER BERMAN
INVESTMENT COMMITTEE, and JANE AND
JOHN DOES 1–25,

                         Defendants.
-----------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION, RULE 12(B)(6) MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM, AND RULE 56 MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS .......................................................................................3

    A.    The Plan and Its Administration ...................................................................3

    B.    Investment Alternatives Offered by the Plan................................................4

    C.    Information Provided to Plan Participants About Their Investment
        Alternatives .................................................................................................4

    D.    The Value Equity Fund ...............................................................................5

    E.    Plaintiff Arthur Bekker ...............................................................................6

    F.    Allegations in the Complaint .......................................................................7

ARGUMENT .......................................................................................................8

    I.      BEKKER LACKS CONSTITUTIONAL STANDING ..................................8

    II.     BEKKER HAS FAILED TO PLEAD PLAUSIBLE ERISA CLAIMS....................10

        A.    The Pleading Standard for ERISA Fiduciary Breach Claims.........................10

        B.    The Complaint Fails to Plead a Plausible Fiduciary Breach Claim................11

            1.    Offering and Retaining VEF Was Neither Disloyal Nor
                 Imprudent .................................................................................11

            2.    VEF's Higher Fees Relative to the Vanguard Fund Do Not
                 Give Rise to an Inference of Imprudence or Disloyalty .................13

            3.    VEF's Alleged Underperformance Relative to a Passive Index
                 Fund Does Not Give Rise to an Inference of Imprudence or
                 Disloyalty .................................................................................15

        C.    Bekker Has Not Alleged a Plausible Prohibited Transaction Claim ...............16

    III.    ALTERNATIVELY, THE COURT SHOULD GRANT SUMMARY
         JUDGMENT BECAUSE THE COMPLAINT IS TIME-BARRED..........................18

        A.    The Fiduciary Breach Claim is Time-Barred.................................................20

        B.    The Prohibited Transaction Claim is Time-Barred.........................................22

    IV.    IF NOT DISMISSED ENTIRELY, THE COMPLAINT SHOULD BE
         DISMISSED AS TO ALL DEFENDANTS OTHER THAN THE
         INVESTMENT COMMITTEE ........................................................................24

CONCLUSION....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Agway, Inc. Emps.' 401(k) Thrift Inv. Plan v. Magnuson,*
   No. 03-CV-1060, 2006 WL 6903738 (N.D.N.Y. July 13, 2006) ..............................................3

*Amron v. Morgan Stanley Inv. Advisors, Inc.,*
   464 F.3d 338 (2d Cir. 2006)...................................................................................................14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................................................10

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................................................10

*Braden v. Wal-Mart Stores, Inc.,*
   588 F.3d 585 (8th Cir. 2009) ..................................................................................................17

*Brown v. Am. Life Holdings, Inc.,*
   190 F.3d 856 (8th Cir.1999) ...................................................................................................23

*Brown v. Medtronic, Inc.,*
   628 F.3d 451 (8th Cir. 2010) ....................................................................................................9

*Brown v. Owens Corning Inv. Review Comm.,*
   622 F.3d 564 (6th Cir. 2010) ..................................................................................................19

*Caputo v. Pfizer, Inc.,*
   267 F.3d 181 (2d Cir. 2001).............................................................................................18, 23

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
   Care, L.L.C.,*
   433 F.3d 181 (2d Cir. 2005)..................................................................................................8, 9

*David v. Alphin,*
   817 F. Supp. 2d 764 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013)...........................9

*Demopoulos v. Anchor Tank Lines, LLC,*
   117 F. Supp. 3d 499 (S.D.N.Y. 2015)......................................................................................19

*Dimond v. Darden Rests., Inc.,*
   No. 13 Civ. 5244, 2014 WL 3377105 (S.D.N.Y. July 9, 2014) ...............................................3

*Dupree v. Prudential Ins. Co. of Am.*,
   No. 99-8337-Civ., 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) .......................................12, 16

*Edes v. Verizon Commc'ns, Inc.*,
   417 F. 3d 133 (1st Cir. 2005) ...............................................................................................19

*Faircloth v. Lundy Packing Co.*,
   91 F.3d 648 (4th Cir. 1996) .................................................................................................3

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014) .........................................................................................................11

*Guo v. IBM 401(k) Plus Plan*,
   95 F. Supp. 3d 512 (S.D.N.Y. 2015) ...................................................................................19

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ...............................................................................................14

*Impress Commc'ns v. Unumprovident Corp.*,
   335 F. Supp. 2d 1053 (C.D. Cal. 2003) ...............................................................................9

*In re AIG, Inc. ERISA Litig. II*,
   No. 08 Civ. 5722, 2011 WL 1226459 (S.D.N.Y. Mar. 31, 2011) .........................................9

*In re Avon Prods., Inc. Sec. Litig.*,
   No. 05 Civ. 6803, 2009 WL 848083 (S.D.N.Y. Mar. 3, 2009) ........................................3, 19

*In re Franklin Mut. Funds Fee Litig.*,
   478 F. Supp. 2d 677 (D.N.J. 2007) .....................................................................................16

*In re Northrop Grumman Corp. ERISA Litig.*,
   No. CV 06-06213, 2015 WL 10433713 (C.D. Cal. Nov. 24, 2015)........................................19

*In re Pfizer Inc. ERISA Litig.*,
   No. 04 Civ. 10071, 2009 WL 749545 (S.D.N.Y. Mar. 20, 2009) ....................................24, 25

*In re Wilmington Trust Corp. ERISA Litig.*,
   943 F. Supp. 2d 478 (D. Del. 2013)......................................................................................9

*Jenkins v. Yager*,
   444 F.3d 916 (7th Cir. 2006) ...............................................................................................15

*Kendall v. Emps. Ret. Plan of Avon Prods., Inc.*,
   561 F.3d 112 (2d Cir. 2009).................................................................................................8

*Kirk v. Liberty Mut. Ins. Co.*,
   164 F.3d 618 (2d Cir. 1998).................................................................................................19

*Krueger v. Ameriprise Fin., Inc.*,
    No. 11-cv-02781, 2014 WL 1117018 (D. Minn. Mar. 20, 2014) ...........................................23

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
    513 F. App'x 78 (2d Cir. 2013) .................................................................................13, 15

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
    No. 11 Civ. 5127, 2012 WL 3191961 (Aug. 7, 2012), *aff'd*, 513 F. App'x 78
    (2d Cir. 2013)...............................................................................................................15

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
    129 F. Supp. 3d 4 (S.D.N.Y. 2015)........................................................................15, 16

*Leber v. Citigroup 401(k) Plan Inv. Committee*,
    No. 07-CV-9329, 2014 WL 4851816 (S.D.N.Y. Sept. 30, 2014)..........................................21

*Leber v. Citigroup, Inc.*,
    No. 07 Civ. 9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ..................................2, 17, 19

*Loren v. Blue Cross & Blue Shield of Mich.*,
    505 F.3d 598 (6th Cir. 2007) .........................................................................................9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................................................................8

*Matusovsky v. Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002)..............................................................................3

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
    811 F.3d 998 (8th Cir. 2016) .......................................................................................25

*Mehling v. N.Y. Life Ins. Co.*,
    163 F. Supp. 2d 502 (E.D. Pa. 2001) ............................................................................17

*Mid-South Iron Workers Welfare Plan v. Harmon*,
    645 F.App'x 661 (10th Cir. 2016) ................................................................................19

*Midgley v. Rayrock Mines, Inc.*,
    374 F. Supp. 2d 1039 (D.N.M. 2015) ...........................................................................19

*Morse v. Stanley*,
    732 F.2d 1139 (2d Cir. 1984).......................................................................................10

*Muehlgay v. Citigroup Inc.*,
    649 F. App'x 110 (2d Cir. May 23, 2016)..........................................................18, 21, 22, 23

*Oechsner v. Connell Ltd. P'Ship*,
    101 F. App'x 849 (2d Cir. 2004) ..................................................................................19

*Pegram v. Herdrich*,
   530 U.S. 211 (2000).................................................................24

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt Inc.*,
   712 F.3d 705 (2d Cir. 2013)...............................................10, 11, 15

*Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*,
   944 F.2d 509 (9th Cir. 1991) ...............................................21, 23

*Radford v. Gen. Dynamics Corp.*,
   151 F. 3d 396 (5th Cir. 1998) ...............................................19

*Ramnaraine v. Merrill Lynch & Co.*,
   613 F. App'x 83 (2d Cir. 2015) ...............................................19

*Reeves v. Airlite Plastics, Co.*,
   No. 8:04CV56, 2005 WL 2347242 (D. Neb. Sept. 26, 2005) ...............................................19

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011)...............................................13, 15

*Silverman v. Mut. Benefit Life Ins. Co.*,
   138 F.3d 98 (2d Cir. 1998)...............................................11

*Skin Pathology Assocs., Inc. v. Morgan Stanley & Co.*,
   27 F. Supp. 3d 371 (S.D.N.Y. 2014)...............................................17

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)...............................................8

*Taveras v. UBS AG*,
   612 F. App'x 27 (2d Cir. 2015) ...............................................9

*Taylor v. United Technologies Corp*,
   No. 3:06cv1494 (WWE), 2009 WL 535779 (D. Conn. March 3, 2009), *aff'd
   by summary order*, 354 F. App'x 525 (2d Cir. 2009)...............................................13

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
   550 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd on other grounds*, 325 F. App'x
   31 (2d Cir. 2009)...............................................19, 20, 22

*Young v. General Motors Investment Management Corp.*,
   325 F. App'x 31 (2d Cir. 2009) ...............................................13, 14, 20

*Zang v. Paychex, Inc.*,
   728 F. Supp. 2d 261 (W.D.N.Y. 2010) ...............................................23

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
  215 F.3d 247 (2d Cir. 2000)..............................................................................3

**STATUTES**

29 U.S.C. § 1002(21)(A)...................................................................................24

29 U.S.C. § 1104........................................................................................7, 24

29 U.S.C. § 1106........................................................................................7, 16

29 U.S.C. § 1106(a)..........................................................................................24

29 U.S.C § 1108(b)(2) .....................................................................................17

29 U.S.C. § 1108(b)(8)..............................................................................12, 16, 17

29 U.S.C. § 1109...............................................................................................24

29 U.S.C. § 1113(2)..................................................................................18, 21, 23

29 U.S.C. § 1132(a)(3).....................................................................................25

**OTHER AUTHORITIES**

42 Fed. Reg. 18734 (Apr. 8, 1977) ..................................................................12

56 Fed. Reg. 10724 (Mar. 13, 1991) ...............................................................12

H.R. Rep. No. 93-1280 (1974)..........................................................................12

U.S. Dep't of Labor Opinion Letter No. 96-15A.............................................16

U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, at 7 (Aug. 2013)..............14

U.S. Dep't of Labor, *Understanding Retirement Plan Fees and Expenses*
  (Dec. 2011) .................................................................................................14

Federal Rules of Civil Procedure 12(b)(1) & (b)(6) .......................................3

## PRELIMINARY STATEMENT

Arthur Bekker ("Plaintiff" or "Bekker"), a participant in the Neuberger Berman Group LLC 401(k) Plan (the "Plan"), commenced this lawsuit against various entities and persons having responsibilities relating to the investment options offered by the Plan to its participants. His Complaint targets only one investment option – a collective investment trust managed by Neuberger Berman Trust Company N.A. (together with its affiliates, "Neuberger"), known as the Value Equity Fund ("VEF"), in which Bekker was invested by virtue of having made contributions to the fund when it was a separately managed account available only to Neuberger employees participating in a predecessor plan.[1]  Bekker's investment in VEF generated substantial returns for him.  Nevertheless, Bekker contends that the decision to reopen VEF for additional investment in April 2011, and thereafter maintain it as a Plan option, breached ERISA's fiduciary duty and prohibited transaction rules because in recent years an S&P 500 index fund nearly identical to one offered in the Plan generated better returns for lower fees.

Bekker's claims are untimely and not viable, and should be dismissed.  As a threshold matter, Bekker cannot proceed with his claims because he has not suffered an injury that affords him constitutional standing.  It is settled law that, to satisfy Article III's standing requirements, a participant must allege injury to himself, not just to the Plan.  Bekker has failed to do so, and since his investment in VEF outperformed the S&P 500 index, he is unable to do so.

Bekker's Complaint should also be dismissed for failure to state a claim.  His causes of action proceed from the assumption that there is something pernicious about actively-managed proprietary funds like VEF because they generate fees for the plan sponsor.  But Congress rejected that assumption by expressly exempting proprietary fund investments from ERISA's

---

[1] For purposes of this Memorandum of Law, VEF's predecessor separate account and VEF itself shall be referred to together as "VEF."

prohibited transaction rules, in recognition of the benefits these funds offer to employee-participants in the financial services community. There is no basis in any event to infer an improper motive here because the Plan offers numerous non-proprietary alternatives, including lower priced index funds in which Bekker has invested.

There is also no basis for alleging a fiduciary breach claim based on VEF's fees or performance. Courts in this Circuit and elsewhere routinely dismiss fiduciary breach claims that purport to second-guess plan investment choices on the basis of their fees and performance. As those courts have recognized, ERISA's fiduciary rules are concerned with the adequacy of the *process* employed to select a plan investment, not the outcome. Here, Bekker has not even established that VEF's fees were excessive, or its performance poor, because he improperly compares VEF to a passive index fund with a completely different objective and investment style. Moreover, where, as here, a plan offers a menu of investment options – including passive index funds and a brokerage window – with a reasonable range of fees, there are no grounds for inferring imprudence merely because *one* fund charged higher fees than an index fund, and underperformed the index fund for a period of time.

Alternatively, the Court should dismiss Bekker's claims as time-barred under ERISA's three-year statute of limitations. Defendants have moved for summary judgment on this issue so as not to limit the documents the Court may consider in addressing their argument. But this procedural posture should not deter the Court from granting the motion at the outset. The documents cited remove any doubt that, well over three years before Bekker commenced this suit, he was fully aware of the basis for his current claims – specifically, how VEF compared to a Vanguard S&P 500 index fund and the fact that VEF was managed by Neuberger.

Finally, even if any claims survive these motions, they should be permitted only against

the Plan's Investment Committee.  The other defendants do not belong in this lawsuit because they did not exercise any fiduciary responsibilities with respect to the breaches alleged.

## STATEMENT OF FACTS

This Statement of Facts is based on the allegations in the Complaint, which are presumed true solely for purposes of this motion; Plan and publicly available documents, which may be considered on a Rule 12(b)(6) motion to dismiss;[2] and documents cited only in support of Defendants' Rule 12(b)(1) standing motion.[3]

### A.     The Plan and Its Administration

The Plan is a participant-directed, individual retirement account plan that is available to Neuberger employees.  (Compl. ¶¶ 28-29.)  It went into effect on January 1, 2010, after Neuberger separated from Lehman Brothers.  (Compl. ¶ 32.)  At that time, Neuberger employees' account balances in the Lehman Brothers Savings Plan (the "Lehman Plan") were transferred to the new Plan.  (*Id.*)  Bekker claims that Neuberger Berman Group LLC, as Plan Administrator, was responsible for selecting and reviewing the Plan's investment alternatives, but the Plan Document assigns that responsibility solely to the Investment Committee (the "Committee").  (Declaration of Wayne Klieger ("Klieger Decl.), Ex. A §§ 9.2-9.4.)[4]  No other defendants are alleged to have had that responsibility.  (*See* Compl. ¶¶ 19-21.)

---

[2] *See In re Avon Prods., Inc. Sec. Litig.*, No. 05 Civ. 6803, 2009 WL 848083, at *7 (S.D.N.Y. Mar. 3, 2009) ("We may refer to plan documents on a Rule 12(b)(6) motion"); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 656 (4th Cir. 1996) (holding that plan documents include investment policies); *Agway, Inc. Emps.' 401(k) Thrift Inv. Plan v. Magnuson*, No. 03-CV-1060, 2006 WL 6903738, at *6 & n.12 (N.D.N.Y. July 13, 2006) (considering contents of SPD), *report and recommendation adopted*, 2006 WL 2934391 (N.D.N.Y. Oct. 12, 2006).

[3] Where subject matter jurisdiction is contested, a district court may consider evidence outside the pleadings, such as affidavits and exhibits. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *Dimond v. Darden Rests., Inc.*, No. 13 Civ. 5244, 2014 WL 3377105, at *11 (S.D.N.Y. July 9, 2014).

[4] "If a plaintiff's allegations are contradicted by [documents referenced in the complaint], those allegations are insufficient to defeat a motion to dismiss."  *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).

**B.      Investment Alternatives Offered by the Plan**

The Plan allows participants to select from a large variety of investment funds, including: target-date lifecycle funds, which adjust the allocation mix based on the participant's proximity to retirement; passively-managed funds, which "provide participants with low cost options to track the performance and characteristics of market indices, foregoing the opportunity for outperformance relative to these indices"; and actively-managed funds, which offer "investment options that are expected to provide for returns higher than their respective market indices but with higher fees and higher risk of underperformance."  (Klieger Decl., Ex. B at 6.)

The investment options include several Neuberger-managed funds. (Klieger Decl., Ex. B, App'x A.)  For each Neuberger-managed fund, the Plan generally offers at least one other fund in the same asset class that is passively or actively managed by a third-party.  (*Id.*)  The options offered have different fee structures, ranging from as low as 0.04% for one of the index funds (*see infra* p.7) to over 1% for some of the actively-managed funds.  (*Id.*, Ex. D at 16.)[5] Participants also have access to thousands of other mutual funds and ETFs through a brokerage window.  (*Id.*, Ex. B at 7 & App'x A.)

**C.      Information Provided to Plan Participants About their Investment Alternatives**

The Plan's Trustee, Fidelity Management Trust Company ("Fidelity"), makes available to Plan participants an online platform called Fidelity NetBenefits (www.401k.com) ("NetBenefits"), through which participants can elect how to invest their Plan contributions. (Declaration of Jim Cropper ("Cropper Decl.") ¶ 5.)  NetBenefits allows participants to compare the characteristics, fees, and historical performance of all investment options available under the Plan.  (*Id.* ¶¶ 7-9 & Exs. B-D.)  For example, NetBenefits provides participants access to a

---

[5] *See, e.g.*, Virtus, *Virtus Emerging Markets Opportunities Fund*, Summary Prospectus  (May 10, 2016), https://www.sec.gov/Archives/edgar/data/1003859/000157104916017545/t1602029.htm.

screen showing, within each asset class (*e.g.*, large cap, small cap, international), each fund's fees and average annual performance over a one, three, five, and ten-year time horizon.  (*Id.* ¶¶ 7-8 & Exs. B-C.)   It also provides a screen describing each fund's performance relative to its benchmark over various time horizons.  (*Id.* ¶ 9 & Ex. D.)  Beginning on June 14, 2012, Fidelity also provided participants an annual disclosure that identified, for each investment option, its fee structure, average annual total return over several time horizons, and its benchmark.  (*Id.* ¶ 10 & Exs. E-F.)

**D.    The Value Equity Fund**

VEF is one of the funds in the Plan's diversified investment line-up.  (Compl. ¶ 40; Klieger Decl., Ex. B, App'x A.)  VEF is an actively-managed fund (Compl. ¶ 38), the purpose of which is to "provide capital return opportunities . . . based on a long-term strategy that is subject to normal stock market risk over any short-term time period" by "invest[ing] in companies that the portfolio manager believes are undervalued" (Klieger Decl., Ex. C at 20).  VEF was created in 1991 as a separate account available only to Neuberger employees who at that time participated in a Neuberger-sponsored 401(k) plan.  (Compl. ¶ 38; Declaration of Nicole Lamoureux ("Lamoureux Decl."), Ex. B at 1; Klieger Decl. ¶ 5.)  After Lehman Brothers acquired Neuberger in 2003, VEF was closed to new investments, but participants' holdings in VEF were eventually transferred to the Lehman Plan.  (Compl. ¶ 38; Lamoureux Decl., Ex. A at 1.)  In April 2011, after Neuberger had separated from Lehman Brothers and the Plan was created, VEF was converted to a collective investment trust that was available for investment by outside investors as well as Plan participants.  (Compl. ¶ 40; *see also* Klieger Decl., Ex. E at 3 (listing participating plans).)  As of that time, VEF's historical performance had been exemplary: since its inception in 1991, it had annualized returns of 15.05%, as compared to 8.12% for the

S&P 500 index.  (Lamoureux Decl., Ex. B at 1.)  It had also outperformed the S&P 500 index

over the preceding one, ten, and fifteen year time periods.  (*Id.*)

Participants like Bekker were advised of the changes to VEF in a separately mailed letter.

(*Id.* ¶¶ 3-6 & Ex. A.)   The letter advised that Neuberger would begin to charge a fee for

continued investment in VEF but that, like any other Plan investments, participants could elect to

transfer their VEF investments to another investment option.  (*Id.*, Ex. A at 1.)  The letter also

enclosed a copy of VEF's Fact Sheet.  (*Id.* ¶ 4 & Ex. B.)  The Fact Sheet, as well as subsequent

versions that were available through NetBenefits, showed VEF's performance, relative to the

S&P 500 index, for various time periods dating back to VEF's inception in 1991. (*Id.*, Ex. B at 1;

Cropper Decl. ¶ 11 & Ex. G at 1.)  Although the Complaint alleges poor performance by VEF in

the years preceding its reopening and thereafter, as late as June 30, 2014, VEF had outperformed

(net of fees) the S&P 500 index over all but one time horizon.  (Cropper Decl., Ex. G at 1.)

**E.    Plaintiff Arthur Bekker**

Bekker is a Plan participant.  (Compl. ¶ 17.)  Since the Plan's inception in 2010, he has

frequently accessed NetBenefits, which includes screens showing the relative performance and

fees of VEF and other Plan investment options over various time horizons.  (Cropper Decl. ¶¶ 6-

9 & Exs. A-D.)  He invested in VEF when it was a separately-managed account and before it was

frozen to new investment in 2003.  (Compl. ¶ 38; Klieger Decl. ¶ 5.)  After VEF was reopened

for new investments in April 2011, he withdrew some of his holdings in VEF on three occasions,

and then liquidated his remaining holdings after this suit was filed.  (Declaration of Francis

Rankin ("Rankin Decl.") ¶ 5.)   Bekker has also regularly invested in the Vanguard Institutional

Index Fund Institutional Shares ("VINIX"), an S&P 500 index fund, since the Plan's inception

on January 1, 2010.  (Klieger Decl. ¶ 11.)

6

Bekker's investments in VEF performed extremely well.  As of June 10, 2004, when the

assets of the Neuberger-managed Plan were transferred to the Lehman Plan (and the earliest date

for which the Plan has records), he had approximately $79,000 in VEF.  (*Id.* ¶¶ 5-6; Rankin

Decl. ¶ 5.)  Since then, his VEF holdings generated over $15,000 *more* than he would have

earned if he had invested the identical amounts in VINIX. (Rankin Decl. ¶¶ 6-8.)

**F.      Allegations in the Complaint**

The Complaint was filed on August 2, 2016.  Although it generally criticizes the offering

of all Neuberger-managed funds, as well as other actively-managed funds, for allegedly failing to

outperform lower fee index funds, the only specific allegations made are with respect to VEF.

There are two Claims for Relief: first, that Defendants breached their fiduciary duties, in

violation of ERISA § 404, by opening VEF in 2011 to new investments and maintaining VEF

"despite its high fees and persistent and increasing underperformance compared to readily

available alternatives" (Compl. ¶ 8; *see also id.* ¶¶ 78-79); and second, that each payment of fees

violated the prohibited transaction rules under ERISA § 406 (*id.* ¶¶ 86-93).

In support of the fiduciary breach claim, the Complaint compares the fees and

performance of VEF to the Vanguard Institutional Index Fund Institutional Plus Shares

("VIIIX").  (Compl. ¶ 48).  VIIIX is identical to VINIX, the S&P 500 index fund offered by the

Plan and in which Bekker invested, except that VINIX charges 0.04% rather than 0.02% in fees.

The Plan's investments in VINIX were insufficient to qualify for VIIIX's lower rates.[6]

The Complaint purports to be brought on behalf of a class consisting of "[a]ll participants

in the Neuberger Berman Group 401(k) Plan from June 15, 2010 to the date of judgment who

invested any portion of their Plan accounts, at any time during the class period, in the Neuberger

---

[6] VIIIX requires at least $200 million in assets (*see* Vanguard, *Product overview – Inst Index Fund Inst Plus*,
https://institutional.vanguard.com/VGApp/iip/site/institutional/investments/productoverview?fundId=0854), which
exceeded the Plan assets invested in VINIX (Klieger Decl., Ex. D at 16).

Berman Value Equity Fund." (Compl. ¶ 73.)  In addition to asking the Court to declare that

Defendants breached their fiduciary duties and engaged in prohibited transactions, Bekker seeks

"an order compelling the disgorgement of all fees paid and incurred, directly or indirectly, to

Neuberger and its affiliates by the Plan," as well as an order restoring losses to the Plan arising

from Defendants' alleged ERISA violations.  (*Id.*, Prayer for Relief ¶¶ A-C.)

## ARGUMENT

## I.   BEKKER LACKS CONSTITUTIONAL STANDING

Having suffered no injury, Bekker lacks Article III standing.  To have standing, a

plaintiff must establish an "injury in fact," a "causal connection between the injury and the

conduct complained of," and likelihood "that the injury will be redressed by a favorable

decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and

citations omitted).  Injury in fact exists when: (i) there is "an invasion of a legally protected

interest"; (ii) that is "concrete and particularized"; and (iii) is "actual or imminent, not

conjectural or hypothetical." *Id.*  Plaintiff bears the burden of proving standing.  *Spokeo, Inc. v.

Robins*, 136 S. Ct. 1540, 1547 (2016).  "Where, as here, a case is at the pleading stage, the

plaintiff must 'clearly ... allege facts demonstrating' each element." *Id.* (quotation omitted).

As the Supreme Court recently emphasized, "[f]or an injury to be 'particularized,'" it

"must affect the plaintiff in a personal and individual way." *Id*. at 1548.  The Second Circuit has

repeatedly translated this standard to require that participants demonstrate an individual loss

caused by an ERISA breach.  *Kendall v. Emps. Ret. Plan of Avon Prods., Inc.*, 561 F.3d 112, 118

(2d Cir. 2009); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed

Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005).  Injury to the plan or other participants is

insufficient.  *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) (summary order).[7]

Relatedly, the causal element of Article III standing requires a plaintiff to allege "facts

connecting her 'purported losses to the fiduciaries' alleged breaches." *Id*. (quotation omitted).

Bekker lacks standing because he has not alleged – nor can he allege – any personal loss

caused by the alleged breaches.  Having made no new investments in VEF during the putative

class period, he cannot claim to have suffered any losses caused by the decision to reopen the

fund.  *See David v. Alphin*, 817 F. Supp. 2d 764, 781-82 (W.D.N.C. 2011) (dismissing claim by

participant who did not invest in bank-affiliated funds at issue in lawsuit), *aff'd*, 704 F.3d 327

(4th Cir. 2013); *see also In re AIG, Inc. ERISA Litig. II*, No. 08 Civ. 5722, 2011 WL 1226459, at

*3 (S.D.N.Y. Mar. 31, 2011) (holding that plaintiffs lacked standing to sue where they did not

participate in the plan at issue).  He also cannot claim any losses attributable to the failure to

remove VEF because his earlier investments outperformed the S&P 500 index.  *See Brown v.

Medtronic, Inc.*, 628 F.3d 451, 458 (8th Cir. 2010) (concluding that plaintiff who netted a gain

during the entire period of investment lacked Article III injury); *In re Wilmington Trust Corp.

ERISA Litig.*, 943 F. Supp. 2d 478, 487-88 (D. Del. 2013) (dismissing ERISA claim where

plaintiff suffered no net loss from purchases and sales of employer stock).  In any event, the

Complaint fails to identify a point in time when it became imprudent to maintain VEF in the

Plan; and, as late as June 2014, VEF was still generally outperforming the S&P 500 index.

Absent more specific allegations, any claim of injury for an alleged failure to remove VEF from

the Plan would be entirely speculative.  *See Loren v. Blue Cross & Blue Shield of Mich.*, 505

F.3d 598 (6th Cir. 2007) (affirming dismissal of complaint where participant's allegation of harm

---

[7] Claims for injunctive relief need not satisfy the injury-in-fact requirement, *see, e.g., Cent. States*, 433 F.3d at 199-200, but Bekker, having liquidated his VEF holdings, has no viable claim for such relief.  *See Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053, 1060 (C.D. Cal. 2003) (dismissing ERISA claims for injunctive relief where plaintiffs no longer held challenged insurance policy and thus would gain no benefits from such relief).

was too speculative to confer standing).

Accordingly, Bekker's Complaint should be dismissed for lack of Article III standing.

## II.   BEKKER HAS FAILED TO PLEAD PLAUSIBLE ERISA CLAIMS

Even if Bekker had standing (which he does not), his Complaint should still be dismissed for failure to adequately plead plausible fiduciary breach and prohibited transaction claims.

### A.   The Pleading Standard for ERISA Fiduciary Breach Claims

Bekker alleges interrelated breaches of the duties of prudence and loyalty.  (Compl. ¶¶ 80-81.)  To state a claim of imprudence, a plaintiff must allege facts demonstrating that the fiduciary did not "act in a prudent manner 'under the circumstances then prevailing.'"  *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt Inc*. ("*PBGC*"), 712 F.3d 705, 716 (2d Cir. 2013) (quoting 29 U.S.C. § 1104(a)(1)(B)).  For a breach of the duty of loyalty, the fiduciaries must have elevated the company's interests over those of the participants.  *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In *PBGC*, the Second Circuit translated this standard into a heightened one for participants advancing ERISA fiduciary breach claims based on investment losses.  The court required participants to either: (1) allege facts referring *directly* to a fiduciary's deficient investigation of the investment in question; or, (2) if the complaint relies on inferences from circumstantial factual allegations to show a breach, "allege facts, accepted as true, showing that a prudent fiduciary in like circumstances would have acted differently."   *PBGC*, 712 F.3d at 718-19, 720. The court did not specify what facts would suffice to meet this standard, each case being "context-specific."  *Id*. at 719.  But it explained that neither poor performance of an investment

nor the availability of "better investment opportunities" would show that a prudent fiduciary would have made different choices, since ERISA does not permit investments to be evaluated based on hindsight, and "nothing in ERISA requires every fiduciary to scour the market to find and offer the [most optimum] fund." *Id*. at 718 (quotation omitted).

The court also stated that the cost of defending fiduciary breach claims in discovery, and the risk that these prospective costs will be used to extort settlements, require that participants include in their complaints "a *factual predicate* concrete enough to warrant further proceedings." *Id.* at 719 (quotation omitted).  The Supreme Court subsequently endorsed that view in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), when it devised a rigorous pleading standard for fiduciary breach claims, and stated that a motion to dismiss is an "important mechanism for weeding out meritless" ERISA claims.  *Id*. at 2471.  That standard also furthers Congress's objective in enacting ERISA: "to create a system that is not so complex that . . . litigation expenses[] unduly discourage employers from offering . . . benefit plans." *Id.* at 2470.

### B.      The Complaint Fails to Plead a Plausible Fiduciary Breach Claim

Under the applicable pleading standards, Bekker's fiduciary breach claims must be dismissed.[8] The Complaint alleges no facts concerning the process employed in selecting and retaining VEF, and the facts alleged concerning the fees and performance of VEF, and its proprietary status, are insufficient under *PBGC* to show that a prudent fiduciary would have acted differently.  *See PBGC*, 712 F.3d at 720-24 (dismissing ERISA claim because decline in price of securities was insufficient to create reasonable inference of imprudent investment).

### 1.      Offering and Retaining VEF Was Neither Disloyal Nor Imprudent

The fact that VEF is a proprietary fund is insufficient to support Bekker's claim.  *See*

---

[8] To state a claim for breach of fiduciary duty, a plaintiff must also allege damages caused by the breach.  *Silverman v. Mut. Benefit Life Ins. Co*., 138 F.3d 98, 104 (2d Cir. 1998).  Because, for the reasons discussed in Point I, Bekker cannot plead harm or causation, his fiduciary breach claim should be dismissed for this reason as well.

*Leber v. Citigroup, Inc.*, No. 07 Civ. 9329, 2010 WL 935442, at *14 (S.D.N.Y. Mar. 16, 2010) (dismissing prudence and disloyalty claims based on selection of allegedly underperforming affiliated funds).  Because Neuberger also offered numerous non-proprietary funds, it is completely implausible to infer that the proprietary funds were offered merely to generate fees. Moreover, ERISA specifically contemplates and encourages precisely this practice, through the prohibited transaction exemption set forth in ERISA § 408(b)(8).

When enacting this exemption, Congress recognized that it was "common practice" for banks and trust companies to invest their plans' assets in their own investment funds.  *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337-Civ., 2007 WL 2263892, at *41 (S.D. Fla. Aug. 7, 2007) (quoting H.R. Rep. No. 93-1280, at 5096 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 5038, 5096)).  The U.S. Department of Labor ("DOL") has similarly acknowledged that it is "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor."  Participant Directed Individual Account Plans, 56 Fed. Reg. 10724, 10730 (proposed Mar. 13, 1991) (to be codified at 29 C.R.F. pt. 2550) (cited in *Dupree*, 2007 WL 2263892, at *41).  Specifically, in Prohibited Transaction Exemption 77-3, which allows plans to invest in affiliated mutual funds, DOL recognized that offering proprietary funds is "in the interests of plans and of their participants and beneficiaries" and "protective of the rights of participants and beneficiaries of Plans."  42 Fed. Reg. 18734, 18735 (Apr. 8, 1977).  Courts have also acknowledged the advantages of proprietary investments, including that fiduciaries "[are] familiar with the investment managers personally, and [are] confident in their abilities and responsiveness." *Dupree*, 2007 WL 2263892, at *10.

In short, the congressional, administrative, and judicial recognition of the benefits of offering proprietary funds, coupled with the fact that here Plan participants were able to invest in

12

numerous non-proprietary funds, both as Plan choices and through a brokerage window, prevents any negative inference from being drawn from the Plan's offering of Neuberger-managed funds.

### 2.    VEF's Higher Fees Relative to the Vanguard Fund Do Not Give Rise to an Inference of Imprudence or Disloyalty

Bekker's effort to establish a fiduciary breach claim based on allegedly excessive fees is misplaced from the start.  Rather than evaluate fees in isolation as a measure of imprudence, courts have evaluated a fund's relative performance, *net* of fees.  *See Taylor v. United Technologies Corp*, No. 3:06cv1494 (WWE), 2009 WL 535779, at *10 (D. Conn. March 3, 2009), *aff'd by summary order*, 354 F. App'x 525 (2d Cir. 2009).  And, for the reasons stated below (*see infra* pp.14-15), Bekker has failed to make out a claim based on underperformance.  But even if a fiduciary breach claim could be stated based on excessive fees alone, Bekker cannot state a viable claim simply by comparing VEF's fees to the fees charged by a Vanguard S&P 500 index fund.  Actively-managed funds and passive funds have completely different functions and characteristics, and any attempt to establish a claim by comparing their fees fails.

In *Young v. General Motors Investment Management Corp.*, 325 F. App'x 31 (2d Cir. 2009) (summary order), the Second Circuit held that mere allegations of excessive fees without regard to the services rendered for those fees, or other relevant factors, does not create a plausible inference of a fiduciary breach.  *Id.* at 33.  The court therefore dismissed a claim based on the allegation that Fidelity fund fees were excessive compared to "similar investment products" because the plaintiff failed to compare the services rendered by Fidelity to those of the other products.  *Id.*; *see also Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, 513 F. App'x 78, 80 n. 4 (2d Cir. 2013) (summary order) (holding that "high management fees" did not create plausible inference of breach and "fees charged [did] not appear disproportionate to the services rendered" in any event); *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011) (emphasizing

that courts must evaluate the "risk profiles, investment strategies, and associated fees" of
investment alternatives).

Here, although the Complaint is silent about the relative services performed by VEF and
the Vanguard fund, there can be no disputing that these services are incomparable.  VEF is an
actively-managed fund that is designed to identify stocks within the S&P 500 index that are
undervalued.  (Klieger Decl., Ex. C at 20.)  In contrast, VINIX, VIIIX, and other passively-
managed funds "seek to obtain the investment results of an established market index by
duplicating the holdings included in the index." U.S. Dep't of Labor, *Understanding Retirement
Plan Fees and Expenses* (Dec. 2011) (cited in Compl. ¶ 66.)  As the DOL recognizes, those
funds generally have lower management fees because they "require little research or trading
activity." U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, at 7 (Aug. 2013), available at
http://www.dol.gov/ebsa/pdf/ 401kFeesEmployee.pdf.  The fact that the fund is a Vanguard
product renders the comparison even more improper since, as the Second Circuit noted in
rejecting a similar comparison to a Vanguard passively-managed fund, this provider is "known
for its emphasis on keeping costs low." *Amron v. Morgan Stanley Inv. Advisors, Inc*., 464 F.3d
338, 345 (2d Cir. 2006);[9] *see also Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)
(recognizing that "nothing in ERISA requires every fiduciary to scour the market to find and
offer the cheapest possible fund").

Stripped of the improper comparison to VIIIX, the Complaint identifies no other basis for
inferring anything imprudent about VEF's fee structure.  As such, it is indistinguishable from
other dismissed excessive fee complaints in which the plan offered a variety of funds with a wide
range of expense ratios.  *See*, *e.g*., *Hecker*, 556 F.3d at 583-86 (affirming dismissal of excessive

---

[9] *Amron* applied the standard for excessive fee claims under the Investment Company Act, which the Second Circuit
in *Young* found "useful for reviewing plaintiffs' claim that excessive fees violated ERISA." 325 F. App'x at 33.

fee claim where expense ratios ranged from .07% to just over 1%); *Renfro*, 671 F.3d at 319, 326-28 (affirming dismissal where fees "ranged from 0.10% to 1.21%").  Accordingly, there is no basis for inferring imprudence from the Complaint's allegations regarding VEF's fees.

### 3.    VEF's Alleged Underperformance Relative to a Passive Index Fund Does Not Give Rise to an Inference of Imprudence or Disloyalty

Bekker's attempt to build his claim on VEF's alleged underperformance vis-à-vis VIIIX is equally futile.  As noted, ERISA's fiduciary standard "focuses on a fiduciary's conduct in arriving at an investment decision, not on its results."  *PBGC,* 712 F.3d at 716; *see also Laboy*, 513 F. App'x at 80 (summary order) (observing that "allegations of poor results alone do not constitute allegations sufficient to state a claim for [a fiduciary] breach"); *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) (recognizing that investment losses are not proof of a violation of a fiduciary's duty of care); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 9 (S.D.N.Y. 2015) ("ERISA's duty of prudence is one of conduct and not of performance.").  That is why the court in *PBGC* stated that poor results do *not* create a reasonable inference of wrongdoing.  (*See supra* pp.10-11.)

But even if underperformance was a relevant factor, VEF's alleged underperformance relative to benchmark indices creates no inference of imprudence here.  Bekker has alleged that VEF underperformed the Vanguard fund by between 4.4% (for the 10 year period) to 14.2 % (in the last year).  (Compl. ¶ 52.)  As such, the allegations of underperformance are comparable to those in *Laboy*, which the Second Circuit found insufficient to sustain a claim of imprudence. *Laboy,* 513 F. App'x at 79-80 (affirming dismissal of complaint where fund in question allegedly underperformed comparable funds by 6.6-21.8%).[10]  As in *Laboy,* the alleged underperformance

---

[10] *See Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, No. 11 Civ. 5127, 2012 WL 3191961, at *2 (Aug. 7, 2012), *aff'd*, 513 F. App'x 78 (2d Cir. 2013).

here is not so pronounced as to render the investment "so plainly risky . . . that an adequate investigation would have revealed [the investment's] imprudence." *Leber*, 129 F. Supp. 3d at 14, 23 (quoting *PBGC,* 712 F.3d at 719-20) (citation omitted) (ruling that "underperformance in average annual returns as compared to certain benchmark indices or alleged insufficient performance history" was insufficient to give rise to plausible claim of imprudence).

In any event, for the reasons stated above, the index fund does not provide a suitable basis for comparison.  Passive index funds are designed to replicate a market index – in this case the S&P 500 index.  Actively-managed funds are designed to outperform the index.  A necessary corollary to such active management is that the fund will be more volatile, and will sometimes underperform relative to the index.  Such periods of underperformance are not evidence of a fiduciary breach because performance is "cyclical[; a]n underachieving fund one year may be an overachieving fund the next." *In re Franklin Mut. Funds Fee Litig*., 478 F. Supp. 2d 677, 687-88 (D.N.J. 2007) (dismissing excessive fee claim under Investment Company Act).

Accordingly, the Complaint has failed to assert a viable claim for fiduciary breach based on alleged underperformance.

### C.      Bekker Has Not Alleged a Plausible Prohibited Transaction Claim

Like his fiduciary breach claim, Bekker's prohibited transaction claim should be dismissed because it fails to take into account ERISA § 408(b)(8), which provides a broad statutory exemption for plan investments in a fiduciary trust company's proprietary collective investment trusts. 29 U.S.C. § 1108(b)(8); *see also* U.S. Dep't of Labor Opinion Letter No. 96-15A (E.R.I.S.A.), 1996 WL 453859 (Aug. 7, 1996) (expressing the view that Section 408(b)(8) provides relief from Section 406(a) and 406(b) transactions); *Dupree*, 2007 WL 2263892, at *41 ("ERISA § 408(b)(8) provides a safe harbor from § 406 for the investment by a plan in collective

trusts maintained by an affiliated trust company.").  Courts have relied on statutory exemptions to dismiss Section 406 claims where, as here, the plaintiff has failed to plausibly allege why the exemption is inapplicable.  *See*, *e.g.*, *Leber v. Citigroup, Inc.*, No. 07 Civ. 9329(SHS), 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) ("[W]here the complaint does not allege any basis for presuming that a defendant's conduct fell outside a statutory exemption . . . it is deficient."); *Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510-11 (E.D. Pa. 2001) (dismissing challenge to plan investment in proprietary mutual funds where plaintiffs failed to allege facts establishing that fees paid and terms applied to plan were not in compliance with exemption); *see also Skin Pathology Assocs., Inc. v. Morgan Stanley & Co.*, 27 F. Supp. 3d 371, 374-78 (S.D.N.Y. 2014) (dismissing claim under Section 406(a) based on ERISA § 408(b)(2) exemption and applicable regulations).[11]

ERISA § 408(b)(8) exempts from ERISA's prohibited transaction rules:

> Any transaction between a plan and (i) a common or collective trust fund or pooled investment fund maintained by a party in interest which is a bank or trust company supervised by a State or Federal agency or (ii) a pooled investment fund of an insurance company qualified to do business in a State, if — (A) the transaction is a sale or purchase of an interest in the fund, (B) the bank, trust company, or insurance company receives not more than reasonable compensation, and (C) such transaction is expressly permitted by the instrument under which the plan is maintained, or by a fiduciary (other than the bank, trust company, or insurance company, or an affiliate thereof) who has authority to manage and control the assets of the plan.

29 U.S.C. § 1108(b)(8).  The conditions for the exemption are satisfied because: Bekker alleges that VEF is a collective investment trust maintained by Neuberger Berman Trust Company N.A.,

---

[11] Although some courts have treated the availability of an exemption as an affirmative defense to be established by defendants, *see Leber*, 2010 WL 935442, at *9 (discussing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 600-01 (8th Cir. 2009)), those cases are distinguishable because plaintiffs there affirmatively alleged that prohibited payments did not comply with the applicable exemption.  *Braden*, 588 F.3d at 600 (noting that plaintiff argued that alleged "kickback" payments to trustee were prohibited by Section 406(a)(1)(C) and not exempted by Section 408(b)(2)).  Bekker's Complaint does not even mention Section 408.

a party in interest, which is a national trust bank supervised by the Office of the Controller of the

Currency (*see* Compl. ¶¶ 21, 37; Office of the Comptroller of the Currency, *Trust Banks Active*

*as of 8/31/2016*, https://occ.gov/topics/licensing/national-bank-lists/trust-by-name.pdf); the Plan

document expressly permits collective investment trusts as an investment option (Klieger Decl.,

Ex. A § 10.1; *see also id.*, Ex. D at 16); and Bekker has not alleged that Plan participants were

charged more than the participants of other plans participating in the collective trust, or any other

facts that plausibly challenge the reasonableness of the fees generated to compensate Neuberger

Berman Trust Company (*see supra* pp.14-15; Klieger Decl., Ex. E at 3; Compl. ¶ 40.)

     In short, as the Complaint alleges no basis for challenging the applicability of the

prohibited transaction exemption, there is no basis for asserting a prohibited transaction claim.

## III.   ALTERNATIVELY, THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE THE COMPLAINT IS TIME-BARRED

     More than three years before he commenced this lawsuit, Bekker was provided with the

very same information on which he purports to rely in support of his claims.  As such, his claims

are barred by ERISA's statute of limitations.

     ERISA § 413(2) provides in pertinent part that no action may be commenced "with

respect to a fiduciary's breach of any responsibility, duty, or obligation under this part" more

than "three years after the earliest date on which the plaintiff had actual knowledge of the breach

or violation."  29 U.S.C. § 1113(2).  The three-year limitations period is triggered when the

participant had knowledge of the facts comprising the claim.  *Caputo v. Pfizer, Inc.*, 267 F.3d

181, 193 (2d Cir. 2001).  Thus, where, as here, the factual information giving rise to fiduciary

breach claims was made known to the plaintiff more than three years before the complaint was

filed, courts in this and other Circuits have readily found the claims time-barred.[12]

A participant is charged with the requisite knowledge if the documents provided to her "sufficiently disclosed the alleged breach of fiduciary duty." *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2008), *aff'd on other grounds*, 325 F. App'x 31 (2d Cir. 2009) (summary order).  It does not matter "whether individual plaintiffs actually saw or read the documents."  *Id.*; *see In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213, 2015 WL 10433713, at *21-22 (C.D. Cal. Nov. 24, 2015) (holding that plan participants had actual knowledge of facts contained in plan documents that were mailed to them and were on plan's website, whether or not they reviewed those materials); *Reeves v. Airlite Plastics, Co.*, No. 8:04CV56, 2005 WL 2347242, at *5-6 (D. Neb. Sept. 26, 2005) (holding that plaintiff who refused to look at his account statements could not disavow actual knowledge of a fiduciary breach that was apparent from the statements; *see also Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010) (there is "no material distinction between being directly handed plan documents and being given instructions on how to access them"); *Citigroup ERISA Litig.*, 104 F. Supp. 3d at 611 ("Congress did not intend the actual knowledge requirement to excuse willful blindness by a plaintiff.") (internal quotation marks omitted) (citing *Young*, 550 F. Supp. 2d at 419 n.3; and *Edes*, 417 F. 3d at 142).

Applying these principles here, Bekker's claims are time-barred because he was provided the information comprising his claims more than three years before he commenced this suit.

---

[12] *See, e.g., Muehlgay v. Citigroup Inc.*, 649 F. App'x 110 (2d Cir. May 23, 2016) (summary order) (affirming *In re Citigroup Erisa Litig.*, 104 F. Supp. 3d 599 (S.D.N.Y. 2015), *reconsideration denied sub nom. In re Citigroup ERISA Litig.*, 112 F. Supp. 3d 156 (S.D.N.Y. 2015)); *Ramnaraine v. Merrill Lynch & Co.*, 613 F. App'x 83 (2d Cir. 2015) (summary order); *Oechsner v. Connell Ltd. P'Ship*, 101 F. App'x 849 (2d Cir. 2004) (summary order); *Kirk v. Liberty Mut. Ins. Co.*, 164 F.3d 618 (2d Cir. 1998) (summary order); *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 528-29 (S.D.N.Y. 2015); *Demopoulos v. Anchor Tank Lines, LLC*, 117 F. Supp. 3d 499, 508-09 (S.D.N.Y. 2015); *Mid-South Iron Workers Welfare Plan v. Harmon*, 645 F.App'x 661, 665 (10th Cir. 2016) (summary order); *Edes v. Verizon Commc'ns, Inc.*, 417 F. 3d 133, 142 (1st Cir. 2005); *Radford v. Gen. Dynamics Corp.*, 151 F. 3d 396, 399 (5th Cir. 1998); *Midgley v. Rayrock Mines, Inc.*, 374 F. Supp. 2d 1039, 1048-50 (D.N.M. 2015).

### A.    The Fiduciary Breach Claim is Time-Barred

More than three years before this suit was commenced, Bekker had actual knowledge of the specific facts supporting his fiduciary breach claims; namely: that VEF was charging fees that inured to Neuberger's benefit and that were higher than the fees charged by VINIX; and that VEF's performance – though exemplary over a longer time period – was poorer than VINIX's in certain of the more recent time periods.[13]  As such, his claim is time-barred.

In *Young*, the plaintiffs alleged that defendant breached its fiduciary duty by (i) investing in undiversified funds, and (ii) investing in funds with excessive fees relative to the fees charged by similar available investment products.  *Young*, 550 Supp. 2d at 418.  The court concluded that the claims were time-barred because plaintiffs had "actual knowledge of all of the facts that they now allege establish a breach of fiduciary duty by Defendants more than three years prior to filing this lawsuit."  *Id.* at 419.  Specifically, the court found that the plan documents, provided to the plaintiffs more than three years before suit was commenced, "accurately described each of the [funds] as an undiversified fund"; and made "readily apparent" the facts supporting the excessive fee claim, since they "disclosed the fees and expenses associated with the [relevant funds], including the fact that the expense ratios for some of the [funds] were higher than those for alternative investment options."  *Id.* at 419-20.

Similarly, here, Bekker's fiduciary breach claims are time-barred because, more than three years before he commenced this suit, he was provided with the information that forms the basis for these claims.  Specifically, when VEF was reopened for investment, Bekker was told the fees to be charged by VEF, and provided information regarding the performance of this fund since its inception in 1991, as well as in the more recent time periods that Bekker considers

---

[13] For the reasons explained above, the index fund cited in the Complaint, VIIIX, was not available to the Plan, and thus the appropriate comparison was to VINIX, which had the same performance as VIIIX.  (*See supra* p.7 & n.6).

relevant to his claims. (Lamoureux Decl. ¶¶ 3-6, Exs. A & B.)  The information contained on

NetBenefits, which Bekker regularly accessed, and the annual disclosures that were transmitted

to Bekker on June 14, 2012 and May 29, 2013, compared VEF's performance and fees to those

of other large cap equity funds, including VINIX. (Cropper Decl. ¶¶ 6-10, Ex. E at 8-9 & Ex. F

at 8-11.)  Bekker thus was aware of how VEF's performance and fees compared to these other

investment options that were available to him.[14]  Indeed, Bekker has been invested in VINIX

during the entire class period.  (Klieger Decl. ¶ 11.)

Bekker was also specifically made aware of the relative performance of VEF and VINIX

in the years preceding the reopening of VEF in 2011 and thereafter.  Specifically, NetBenefits

provided performance information from the time the fund was reopened as a collective trust, and

the VEF Fact Sheet provided performance information dating back to the inception of the

predecessor account. (Lamoureux Decl., Ex. B at 1; Cropper Decl. ¶ 11 & Ex. G at 1.)  Thus,

insofar as Bekker's claim is based on the allegation that VEF should not have been reopened for

new investments in April 2011, or should thereafter have been closed, because the fees charged

were excessive, relative to VINIX, or because VEF had "dramatically underperformed the S&P

500 Index and similar investible products such as VIIIX" (Compl. ¶ 51), Bekker knew these

alleged facts more than three years before he commenced suit.[15]

In his Complaint, Bekker contends that he was not aware of his claims earlier because he

---

[14] This case is accordingly distinguishable from *Leber v. Citigroup 401(k) Plan Inv. Committee*, No. 07-CV-9329, 2014 WL 4851816 (S.D.N.Y. Sept. 30, 2014), in which the court declined to find a claim time-barred where plaintiffs were not "aware of comparable funds with smaller fees." *Leber*, 2014 WL 4851816 at *2.

[15] Bekker cannot revive his claims by alleging that the underperformance, or the payment of allegedly excessive fees, continued. *See Muehlgay*, 649 F. App'x at 2 ("Appellants posit that the breaches were 'continuing in nature,' and thus constituted a continuing violation that tolled or extended the statute of limitations. We agree with the district court that applying the continuing-violation theory to § 1113(2) would improperly supplant the plain language of the statute.") (citing *Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991) (reasoning that "application of the continuing violation theory founders on the plain language" of § 1113(2), and that "[o]nce a plaintiff knew of one breach, an awareness of later breaches would impart nothing materially new")).

was unaware of the Plan's internal deliberations concerning its decision to reopen and retain VEF.  (Compl. ¶ 18).  In *Citigroup/Muehlgay*, the Second Circuit specifically rejected this contention as a basis for withstanding a statute of limitations defense.  Like Bekker, the plaintiffs in *Citigroup/Muehlgay* did not base their claim on allegations concerning the deliberations of the plan fiduciaries, but rather relied on allegations of poor performance that they contended supported an inference of an imprudent process.  Because these facts and circumstances were known to plaintiffs more than three years prior to filing suit, the district court concluded that the claims were barred by the three-year statute of limitations.  On appeal, the Second Circuit agreed that plaintiffs' knowledge of the allegedly poor performance of the investment was sufficient to trigger the statute of limitations.  *Muehlgay*, 649 F. App'x at 1 (summary order); *see also Young*, 550 F. Supp. 2d at 419-20.  In rejecting plaintiff's contention that the statute had not run because plaintiff was unaware of the plan's deliberations, the court stated that "the allegations regarding the lack of a prudent process were redundant and circular: they assumed that any breach must have resulted from the lack of a prudent process."  *Muehlgay*, 649 F. App'x at 1.  Similarly, here, if Bekker has a viable claim based solely on the fact that VEF is a proprietary fund and how its fees and performance compared to an index fund, then he had that same claim in 2011.

In short, because Bekker had knowledge of the facts giving rise to his fiduciary breach claim more than three years before he commenced this suit, this claim is time-barred.

### B.    The Prohibited Transaction Claim is Time-Barred

Bekker's prohibited transaction claim fares no better.  That claim is based on nothing more than the allegations that the Plan paid fees to a Neuberger-managed investment.  For the reasons stated above, that information was made known to Bekker back in March and April 2011, in several different forms.  Knowledge of this information, "standing alone," is "sufficient

to trigger the obligation to file suit."  *Young*, 550 F. Supp. 2d at 419 (citing *Caputo*, 267 F.3d at

193) (knowledge of a transaction that is inherently a breach is sufficient to start the running of

the three year statute of limitations); *see also Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 266–67

(W.D.N.Y. 2010) ("disclosure of the fact of such [prohibited] transactions alone is enough to

give actual notice of the alleged ERISA violation"); *Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-

02781, 2014 WL 1117018, at *6 (D. Minn. Mar. 20, 2014) ("when a prohibited transaction claim

is alleged under § 1106, knowledge of the transaction constitutes actual knowledge of the

violation and starts the running of the limitations period") (*citing Brown v. Am. Life Holdings,*

*Inc.*, 190 F.3d 856 (8th Cir.1999)).

Bekker's contention that the prohibited transactions continued "with each payment by the

Plan of fees to Neuberger" cannot serve as a basis for reviving his claim.  (Compl. ¶¶ 10, 86.)

The Second Circuit has specifically rejected such a "continuing-violation" theory as a means of

extending the three-year statute of limitations.  *See Muehlgay,* 649 F. App'x at 2 ("applying the

continuing-violation theory to § 1113(2) would improperly supplant the plain language of the

statute").  In so ruling, the Court cited to *Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*,

944 F.2d 509 (9th Cir. 1991), which held that "if the breaches are of the same kind and nature

and the plaintiff had actual knowledge of one of them more than three years before commencing

suit, § 1113(a)(2) bars the action."  *Id.* at 521; *see also Zang*, 728 F. Supp. 2d at 267 (holding

that prohibited transaction claim arising from revenue sharing arrangement that was fully

disclosed more than three years prior to commencement of lawsuit was time-barred, and not

revived by any subsequent payments that derived from the revenue-sharing arrangement).

Similarly, here, Bekker's knowledge of the fee arrangement between the Plan and the Neuberger

Berman Trust Company, standing alone, triggered the start of the three-year statute of

limitations, and the ensuing fee payments do nothing to restart the three-year limitations period.

## IV.   IF NOT DISMISSED ENTIRELY, THE COMPLAINT SHOULD BE DISMISSED AS TO ALL DEFENDANTS OTHER THAN THE INVESTMENT COMMITTEE

Even if the Court were to allow Bekker's claims to proceed (which it should not), it should dismiss from the case all Defendants other than the Committee because none were fiduciaries with authority over Plan investments, *i.e.*, the conduct Bekker challenges.

As this Court explained in *In re Pfizer Inc. ERISA Litig.*, No. 04 Civ. 10071, 2009 WL 749545 (S.D.N.Y. Mar. 20, 2009), "[t]o state a claim under ERISA Section 404 for breach of fiduciary duty, plaintiffs must allege that (1) defendants were fiduciaries of the plan who, (2) acting within their capacities as plan fiduciaries, (3) engaged in conduct constituting a breach of an ERISA fiduciary duty." *Id.* at *6 (citing 29 U.S.C. § 1109; *Pegram v. Herdrich*, 530 U.S. 211, 222–24 (2000)).  ERISA § 3(21)(A) provides that a person is a fiduciary only "to the extent" that he or she exercises a fiduciary function, such as exercising "discretionary authority or discretionary control respecting management of [a] plan." 29 U.S.C. § 1002(21)(A).  Thus, "[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is  . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *Pegram*, 530 U.S. at 226.  The same holds true for ERISA's prohibited transaction provisions, all of which address conduct in which a fiduciary may not engage.  *See* 29 U.S.C. § 1106(a) (barring a fiduciary from causing the plan to engage in enumerated transactions with a party in interest); *id.* § 406(b) (barring a fiduciary from dealing with plan assets in his or her own interests or in the interests of an adverse party).

Here, Bekker's fiduciary breach and prohibited transaction claims target the decisions to select and retain VEF and pay allegedly excessive fees to those managing VEF. Under the governing Plan document, the only entity with discretion to choose plan investments and pay

24

fees from Plan assets was the Committee.  (*See supra* p.3; *see also* Compl. ¶ 23.)   None of the other defendants had such discretion.

To the extent Bekker seeks to target any of the defendants as *recipients* of fees (*e.g.*, Neuberger Berman Trust Company N.A.), that claim also fails because investment managers do not owe any fiduciary duty to participants to ensure the reasonableness of their fees when they initially negotiate them or when they later carry out their services and adhere to the terms of their previously agreed-upon fee agreements.  *See, e.g., McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016) ("a service provider's adherence to its agreement with a plan administrator does not implicate any fiduciary duty where the parties negotiated and agreed to the terms of that agreement in an arm's-length bargaining process").[16]

## CONCLUSION

For the aforementioned reasons, the Complaint should be dismissed.


Dated:   October 3, 2016                               **PROSKAUER ROSE LLP**
         New York, NY

                                                       By:  ___*/s/ Myron D. Rumeld*___
                                                              Myron D. Rumeld

                                                       Eleven Times Square
                                                       New York, NY 10036
                                                       (212) 969-3021
                                                       mrumeld@proskauer.com

                                                       *Counsel for Defendants*

---

[16] Any claim against a non-fiduciary defendant is barred because the relief Bekker seeks is not equitable relief available under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3),since it does not seek the return of an identifiable *res* in any defendant's possession that is traceable to the Plan.  *In re Pfizer Inc. ERISA Litig.*, 2009 WL 749545, at *16 (dismissing claims against non-fiduciaries for funds obtained through sale of company stock because plaintiffs did not seek restoration of funds traceable to the plans).