UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ARTHUR BEKKER, individually, on behalf
of a class of all other persons similarly
situated, and on behalf of the Neuberger
Berman 401(k) Plan,

       Plaintiff,

  -v-                                    No.  16 CV 6123-LTS-BCM

NEUBERGER BERMAN GROUP LLC,
NEUBERGER BERMAN LLC,
NEUBERGER BERMAN TRUST
COMPANY N.A., MARVIN SCHWARTZ,
the NEUBERGER BERMAN INVESTMENT
COMMITTEE, and Jane and John Does 1-25,

       Defendants.

--------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

       In this action brought pursuant to the Employee Retirement Income Security Act

of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"),[1] plaintiff Arthur Bekker ("Plaintiff"), individually,

on behalf of a putative class, and on behalf of the Neuberger Berman 401(k) Plan, alleges that

defendants Neuberger Berman Group LLC, Neuberger Berman LLC, Neuberger Berman Trust

Company N.A., the Neuberger Berman Investment Committee (the "Committee"), and Marvin

Schwartz (collectively "Defendants") breached their fiduciary duties and engaged in transactions

prohibited by ERISA during a class period between June 15, 2010, and August 2, 2016, the date

the Complaint was filed.  (Compl., Docket Entry No. 1, ¶ 13.)   Plaintiff alleges that Defendants

---

[1]    ERISA is codified at 29 U.S.C. § 1001 et seq.  References to "ERISA" sections in the
Memorandum Opinion and Order are to the uncodified version of the legislation.

breached fiduciary duties imposed by ERISA by maintaining a particular investment fund that was managed by Neuberger Berman affiliates, performed poorly, and charged an excessive management fees, as one of the investment options under a defined contribution plan for employees of Neuberger Berman Group LLC and affiliated companies.  Plaintiff further alleges that the management fee payments constituted transactions prohibited by ERISA.

Defendants move to dismiss the Complaint for lack of standing and for failure to state a claim, and move for summary judgment dismissing Plaintiff's claims as time barred. (Docket Entry No. 20.)  Plaintiff responded to Defendants' motion for summary judgment with a motion under Federal Rule of Civil Procedure 56(d) ("Rule 56(d)"), requesting that the Court either deny Defendants' motion for summary judgment or defer consideration of the motion to allow limited discovery.  (Docket Entry No. 31.)

The Court has subject matter jurisdiction of this action under 28 U.S.C. section 1331 and 29 U.S.C. section 1132(e)(1).

The Court has carefully considered the submissions of both parties and, for the following reasons, grants Defendants' motion to dismiss the Complaint as against all Defendants except the Investment Committee.  The Court also grants Defendants' motion to dismiss Plaintiff's breach of fiduciary duty claim, Compl. subdivision VIII.a, and denies Defendants' motion to dismiss the prohibited transaction claim, Compl. subdivision VIII.b.  Plaintiff's Rule 56(d) motion is granted insofar as a brief targeted period of discovery will be allowed, and Defendant's summary judgment motion is denied without prejudice to renewal after the completion of that discovery.

The following facts are drawn from the Complaint except as otherwise indicated.

Plaintiff participated in the Neuberger Berman Group 401(k) Plan (the "Plan"), an ERISA pension benefit plan for employees of Neuberger Berman Group LLC and its domestic subsidiaries. (Compl. ¶¶ 27-29.) The Plan was created on January 1, 2010, after Defendants separated from Lehman Brothers. (Id. ¶ 32.) Under the Plan, participating employees may use an individual account through which they may choose to invest in any of 29 different investment options, eight of which are managed by Defendants. (Id. ¶¶ 30, 34.) The Plan's investment options include both actively-managed and index funds. (Id. ¶ 46.)

Plaintiff alleges that Neuberger Berman Group LLC is the Plan administrator, "responsible for selecting, monitoring, and removing the investment options in the Plan." (Id. ¶ 35.) Plaintiff further alleges that Neuberger Berman Group LLC delegated these duties and their associated fiduciary responsibility to the Committee through the Plan Document.[2] (Id. ¶¶ 23, 35; Neuberger Berman Group 401(k) Plan (the "Plan Document"), Docket Entry No. 24-1, at ¶¶ 9.2-9.4.) However, although the Plan Document designates Neuberger Berman Group LLC as the Plan Administrator, it specifically provides that the Plan Administrator does not have authority "with respect to control and management of the assets of the Plan and appointment of an investment manager or managers." (Plan Document ¶ 9.2.) The Plan Document further provides

---

[2]     In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court may consider extrinsic materials, such as an ERISA employee benefit plan document, that are referenced and relied upon in a plaintiff's complaint. In re Avon Prod., Inc. Sec. Litig., No. 05 CV 6803 LAK MHD, 2009 WL 848083, at *7 n. 12 (S.D.N.Y. Mar. 3, 2009), Report and Recommendation adopted, 2009 WL 884687 (S.D.N.Y. Mar. 30, 2009). (Compl. ¶ 23.) Plaintiff referenced and relied upon the Plan document to allege Neuberger Berman Group LLC's delegation of authority to the Committee, and the Court accordingly considers the Plan document. See id.

that the Investment Committee is the Named Fiduciary for such functions.  (<u>Id.</u>)  Plaintiff's allegation that Neuberger Berman Group LLC is responsible for Plan investment options and delegated that authority to the Investment Committee is thus facially inconsistent with the governing Plan Document.

The Investment Committee is appointed by the Board of Neuberger Berman Group LLC.  (<u>Id.</u> ¶ 9.1.)  Neuberger Berman Group LLC has been owned by senior employees of Defendants, including Schwartz, since December 2014.  (Compl. ¶¶ 36, 57-58.)

Among the investment options that have been made available to Plan participants is the Neuberger Berman Value Equity Fund (the "VEF").  (<u>Id.</u> ¶ 26.)  Neuberger Berman Trust Company N.A., a wholly owned subsidiary of Neuberger Berman Group LLC, is the trustee of the Fund and maintains fiduciary authority over the management of and investments made in the VEF.  (<u>Id.</u> ¶ 37.)  The VEF predated the establishment of the Plan and Neuberger's 2003 merger with Lehman Brothers.  (<u>Id.</u> ¶ 38.)  The VEF, which was a separately managed account, was closed to new investments after Neuberger Berman merged with Lehman Brothers.  (<u>Id.</u>)  In 2011, following the separation of Defendants from Lehman Brothers, the VEF's assets were transferred into a collective trust, and the fund was reopened to new investments from Plan participants in addition to outside investments.  (<u>Id.</u> ¶ 40.)  The Plan, however, "continues to represent well over 90% of the assets in [the VEF]."  (<u>Id.</u> ¶ 40.)

The VEF is an actively-managed fund supervised by the Straus Group, a Neuberger Berman team led by Schwartz.  (<u>Id.</u> ¶ 56.)  Plaintiff alleges that a VEF fact sheet

represents that Neuberger Berman Trust Company N.A. "maintains ultimate fiduciary authority over the management of, and investments made, in the [VEF]."[3] (See id. ¶ 21.)

The VEF's performance benchmark is the S&P 500 Index and, between December 31, 2010, and June 30, 2016, at least 51%, and at some points almost all, of the VEF's stock holdings were in S&P 500 stocks. (Id. ¶¶ 41-45.) The VEF charges a management fee of 80 basis points and provided an annualized return of 2.97% during the 10-year period ending on June 30, 2016, a period whose commencement preceded the class period by approximately four years and which closed approximately one month before the close of the class period. (Id. ¶¶ 13, 49, 51, 52.) Plaintiff compares this performance with that of Vanguard's Institutional Index Fund Institutional Plus Shares fund (the "VIIIX"), an index fund that is designed to track the performance of the S&P 500. (Id. ¶ 48.) The VIIIX charged a management fee of 2 basis points and had an annualized return of 7.42% during the same period; the VEF's underperformance relative to the VIIIX accelerated in recent years. (Id. ¶ 48-52.) Out of approximately 515,000 401(k) plans in the United States in 2012, only four outside employee benefit plans invested in the VEF during the class period. (Id. ¶ 59.)

Plaintiff is a Plan participant who invested in the VEF prior to June 10, 2004[4] and remains an investor in that fund. (Compl. ¶ 38; Decl. of Wayne Klieger, Document Entry No. 24, ¶ 5.)

---

[3]     The quoted language is taken directly from Plaintiff's Complaint. Plaintiff asserts in his opposition brief that the language is drawn from a VEF disclosure statement, a copy of which was attached to Plaintiff's opposition. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, Docket Entry No. 32, at 20; VEF Disclosure Statement (as of 6/30/16), Docket Entry No. 32-1, at 2).

[4]     The Court only considers Defendants' proffer that Plaintiff invested in the VEF prior to the class period in connection with its evaluation of the parties' arguments concerning Plaintiff's standing to maintain this action. See Dimond v. Darden Rests., Inc., No. 13

Neuberger Berman LLC "is an indirect wholly owned subsidiary of Neuberger Berman Group LLC," providing "investment advisory services." (Compl. ¶ 20.) Plaintiff does not allege that Neuberger Berman LLC engaged any specific activities relevant to his claims. (See generally Compl.)

DISCUSSION

In determining whether a plaintiff has set forth the "short and plain statement of the claim showing that [she is] entitled to relief" required by the Federal Rules (see Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in the complaint establish the "facial plausibility" of the plaintiff's claims. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Such a showing "must be enough to raise a right to relief above the speculative level," requiring "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal quotation marks omitted). In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." In

---

CV 5244(KPF), 2014 WL 3377105, at *11 (S.D.N.Y. July 9, 2014) (a court may consider extrinsic evidence of standing when deciding a motion to dismiss).

re Thelen LLP, 736 F.3d 213, 219 (2d Cir.), certified question accepted sub nom. Thelen LLP. v. Seyfarth Shaw LLP, 22 N.Y.3d 1017, (2013), and certified question answered, 24 N.Y.3d 16 (2014) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)).  When considering a motion to dismiss for lack of subject matter jurisdiction, such as one for lack of standing, the Court may consider extrinsic evidence proffered by the parties in addition to facts alleged in the pleadings.  Dimond v. Darden Rests., Inc., No. 13 CV 5244(KPF), 2014 WL 3377105, at *11 (S.D.N.Y. July 9, 2014).

Here, Defendants argue that the Complaint should be dismissed because Plaintiff lacks Article III standing, has failed to state a claim for either breach of fiduciary duty or a prohibited transaction, and has failed to state a claim against several named Defendants because he has failed to allege facts demonstrating that those Defendants were fiduciaries with respect to matters relevant to his claims.  Defendants also move for summary judgment dismissing Plaintiff's claims as time barred.

Motion to Dismiss — Standing

Article III of the Constitution of the United States requires that a plaintiff in a case brought in federal court demonstrate three things in order to establish standing: (1) an "injury in fact" that is "concrete and particularized," (2) a "causal connection between the injury and the conduct complained of," and (3) the ability of a "favorable decision" by the court to redress the plaintiff's injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  An injury is particularized if it "affect[s] the plaintiff in a personal and individual way" and concrete if it is real and not merely abstract.  Id. 504 U.S. at 560 n.1; Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016).

Defendants argue that Plaintiff lacks standing because he has suffered no concrete injury, incurring no personal financial loss, but rather received a positive return (even if less than that of the VIIIX), and because he does not allege that the VEF's fees were excessive in comparison to those of other actively-managed funds. Defendants further argue that an injury to the Plan is not particularized enough to confer standing upon Plaintiff, as an individual Plan participant.

The Court first examines whether the VEF's alleged underperformance relative to the VIIX and allegedly excessive fees can suffice to demonstrate a cognizable injury if traceable to an alleged breach of fiduciary duty. The Court finds Plaintiff's allegations sufficient in this regard. Diminished returns relative to available alternative investments and high fees represent concrete injuries, implicating a financial loss in comparison to what a plaintiff might have received but for the defendant's alleged breach of duty, which can support a cognizable injury regardless of whether the plaintiff suffered an actual loss on his investment or simply realized a more modest gain. See Lorenz v. Safeway, Inc., 241 F. Supp. 3d 1005, 1014-15 (N.D. Cal. 2017) (plaintiff sufficiently alleged a concrete injury in fact by claiming that high fees caused lower investment returns, resulting in diminished profit.) Defendants rely on inapposite decisions to support their argument that a plaintiff who realizes a net gain suffers no cognizable injury. [5] See Brown v. Medtronic, Inc., 628 F 3d 451, 458 (8th Cir. 2010) (rejecting comparative

---

[5]    Defendants also argue that Plaintiff did not suffer a concrete injury because the VEF performed well at some points during the class period. Defendants cite to the fact that, as of December 31, 2010, the VEF had performed well in comparison to the S&P 500 in the periods beginning 1, 5, and 10 years prior to that date and as measured since the VEF's inception in 1991. Dimond, 2014 WL 3377105, at *11 (extrinsic evidence may be examined on a motion to dismiss in order to determine standing); (Lamoureux Decl., Ex B, Docket Entry No. 25-2, at 1). These positive results only overlap slightly with the class period and are insufficient to foreclose Plaintiff's assertion that Defendants' alleged ERISA violations were the cause of Plaintiff's claimed injury.

investment return theory where plaintiff did not demonstrate that the differential was fairly traceable to the alleged wrong); cf. Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F. 3d 561, 567-569 (2d Cir. 2016) (finding no concrete injury where plaintiff received such high returns that the plaintiff could not plausibly allege that it would have received higher returns if it had chosen to invest its assets elsewhere).

Defendants also argue that high management fees do not represent a concrete injury unless they are excessive when compared to those charged by similar investment funds. This argument is also unavailing, because the reasonableness of the management fees goes to the merits of Plaintiff's ERISA claims rather than the existence of an injury.

Here, Plaintiff's allegations that he received lower returns on his investments in the VEF than he would have received on an S&P 500-indexed investment had the actively-managed fund had not been kept available to Plan participants, and that he paid excessive fees in transactions that were prohibited by ERISA, suffice to support the requisite inference of a concrete injury.

The Court next turns to Defendants' argument that Plaintiff's injury was not particularized to him. Injury to an employee benefit plan is, alone, insufficient to establish a particularized individual injury, as Defendant correctly points out. However, injury to a plan does not preclude standing if a plaintiff can establish that he suffered individual harm. Cf. Taveras v. UBS AG, 612 F. App'x 27, 29 (2d Cir. 2015). In Taveras, particularized injury to a plan participant was not found despite harm to the plan as a whole, because the plaintiff was empowered to select individual investments and there were no allegations that the harm to the plan caused a loss to his selected investments. Id. In this case, however, Plaintiff has alleged that the VEF, a fund in which he personally invested, underperformed and was charged improper

fees, establishing an injury particularized to him, not merely an injury to the plan.  Plaintiff has

therefore alleged a sufficiently particularized injury in fact.  See Lujan, 504 U.S. at 560-61.

        In their reply submission, Defendants also argue that Plaintiff's injury is not fairly

traceable to Defendants' alleged ERISA breaches because the VEF's underperformance existed

before the class period and allegedly extended beyond it.[6]  The VEF's underperformance outside

of Plaintiff's chosen class period does not, however, suggest a break in the causal link between

Defendants' alleged ERISA breaches and the resultant damage alleged by Plaintiff because

Plaintiff claims injury from the existence of what he claims was an imprudent investment option,

and the assessment of allegedly improper fees, during the class period.  Plaintiff's standing claim

does not turn on a lack of impropriety outside of the designated class period.

        Plaintiff has, therefore, alleged sufficient facts to establish that he has standing to

bring his ERISA claims.

Motion to Dismiss — Sufficiency of Pleading to State Claims

    Breach of Fiduciary Duty Claims

        To state a claim under ERISA section 404 for breach of fiduciary duty, a plaintiff

must allege facts demonstrating that "(1) defendants were fiduciaries of a plan who, (2) acting

within their capacities as plan fiduciaries, (3) engaged in conduct constituting a breach of an

ERISA fiduciary duty."  29 U.S.C. § 1109; see In re Pfizer, Inc. ERISA Litigation, No. 05 CV

10071, 2009 WL 749545 at *6 (S.D.N.Y. Mar. 20, 2009).  Fiduciary status under ERISA arises

from being named as a fiduciary in plan documents or through the performance of fiduciary

functions.  ERISA defines the parameters of fiduciary status in terms of particular functions,

authority, and responsibilities, as follows:

---

[6]    Defendants cite no factual evidence or allegations showing that the VEF underperformed
subsequent to the end of the class period.

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such
> plan or exercises any authority or control respecting management or disposition of
> its assets, (ii) he renders investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.

29 U.S.C.S. § 1002(21)(A) (LexisNexis 2011).  ERISA requires that a fiduciary "discharge his

duties with respect to a Plan . . . with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

matters would use."  29 U.S.C.S. §§ 1104(a)(1), (a)(1)(B) (LexisNexis 2011).  ERISA also

imposes a duty of loyalty on a fiduciary to "discharge his duties . . . solely in the interest of the

participants and beneficiaries and . . . for the exclusive purpose of[] . . . providing benefits to

participants and their beneficiaries."  29 U.S.C.S. §§ 1104(a)(1), (a)(1)(A), (a)(1)(A)(i)

(LexisNexis 2011).

　　　　A plaintiff may satisfy the burden of pleading a breach of fiduciary duty by

alleging a combination of circumstantial facts that are suggestive of, "rather than merely

consistent with," a breach of fiduciary duty.  Pension Benefit Guar. Corp. v. Morgan Stanley Inv.

Mgmt., 712 F.3d 705, 718-19 (2d Cir. 2013) (quoting N.J. Carpenters Health Fund v. Royal

Bank of Scot. Grp., PLC, 709 F.3d 109, 121 (2d Cir. 2013)) (internal quotation marks omitted).

Thus while sponsor-affiliated funds are permitted under ERISA and do not, standing alone,

support an inference that a defendant breached its fiduciary duties by including such a fund as an

investment option, an allegation of such an affiliation can be coupled with other circumstantial

factual allegations to suggest plausibly that a fiduciary acted imprudently or disloyally.  See 29

U.S.C. §§ 1106, 1108(b)(8); see Dupree v. Prudential Ins. Co. of Am., No. 99-8337-Civ., 2007

WL 2263892, at *41 (S.D. Fla. Aug. 7, 2007) (stating that financial services companies

frequently manage employee benefit investment options through affiliated entities); cf. Leber v. Citigroup 401(k) Plan Investment Committee, 129 F. Supp. 3d 4, 11-13 (S.D.N.Y. 2015) (finding that a plaintiff plausibly plead an ERISA breach of fiduciary duty claim by alleging that defendants continued to offer an affiliated fund that charged high fees relative to comparable funds and withdrew the fund from the plan when the plan was sold and thus no longer affiliated with the plan sponsor).

Plaintiff contends, in subdivision VIII.a of the Complaint (¶¶ 75-82), that Defendants did not exercise the requisite care, prudence, and loyalty required of an ERISA fiduciary in their monitoring of the VEF's performance and/or their decisions to retain the VEF as an investment option throughout the class period. Lacking any direct evidence of Defendants' decision-making process, Plaintiff argues that his allegations that the VEF was a fund operated by a corporate affiliate with a very high proportion of its investments provided through the fund sponsor's employee benefit plan, combined with the VEF's alleged underperformance and high fees, plausibly supports the inference that Defendants did not decide to retain the VEF as an investment option through the exercise of the level of "care, skill, prudence, and diligence" mandated by ERISA. 29 U.S.C.S. § 1104(a)(1)(B) (LexisNexis 2011). Plaintiff contends that Defendants acted in their own self-interest by continuing to offer the VEF as an investment option in order to collect management fees and avoid the collapse of the VEF, which Plaintiff predicts would have occurred if the Plan, representing over 90% of the VEF's investments, withdrew from the fund.

Plaintiff cites several cases for the proposition that the use of sponsor-affiliated funds supports an inference of self-interested motivation or lack of care when combined with excessive fees and poor performance. See, e.g., Moreno v. Deutsche Bank Americas Holding

Corp., No. 15 CV 9936 (LGS), 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016).

Significantly, the decisions cited by Plaintiff overwhelmingly rely on specific allegations that the

fund in question charged high fees in relation to a comparable fund in support of their

conclusions that excessive fees were incurred.[7]  See, e.g., id. at *1, 6 (finding a plausible breach

of fiduciary duty claim where a proprietary index fund charged fees much greater than a similar

Vanguard index fund).

Here, Plaintiff compares the VEF's fees unfavorably to those charged by the

VIIIX, but does not allege that the two funds employed similar operations or investment

strategies, nor does Plaintiff proffer any other facts to make the comparison of the funds' fees

meaningful and plausibly suggestive of a fiduciary breach.  (See Compl. ¶¶ 49-51.)  Plaintiff's

allegation that the VEF, an actively-managed fund, was benchmarked to the S&P 500, which the

VIIIX, an index fund, tracked, does not demonstrate the requisite comparability.  S&P 500

returns are merely the performance metric to which both funds point while employing distinct

investment methodologies and strategies.

The balance of the allegations, that Defendants offered a poorly performing

affiliated fund with assets overwhelmingly invested by the sponsoring plan, are insufficient to

plausibly support an inference that an objectively prudent and loyal fiduciary would have acted

differently and ceased offering the VEF.[8]  See Leber v. Citigroup, Inc., No. 07 CIV. 9329 SHS,

---

[7]     Excessive fees may also be shown through allegations that the fees were out of
        proportion to the services rendered.  See Young v. GM Inv. Mgmt. Corp., 325 F. App'x
        31, 33 (2d Cir. 2009).

[8]     Plaintiff also argues that, because the Plan's investments represent over 90% of the VEF
        assets and only four other plans have decided to invest in the VEF, the market has
        rejected the fund and that an inference can thus be drawn that Defendants only caused the
        Plan to invest in the VEF in order to accrue management fees.  This allegation, however,

2011 WL 5428784, at *3, 3 n.4 (S.D.N.Y. Nov. 8, 2011) (dismissing a breach of fiduciary duty claim where the defendant continued to offer affiliated funds that failed to meet their benchmarks). Plaintiff's factual allegations are merely consistent with a possible breach of Defendants' fiduciary duties, but are not sufficiently suggestive of wrongdoing to cross the plausibility threshold, and thus are inadequate to survive a motion to dismiss. See Pension Benefit Guar. Corp., 712 F.3d at 719. Plaintiff's claim for breach of fiduciary duty, subdivision VIII.a of the Complaint, is therefore dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Prohibited Transaction Claim

In subdivision VIII.b of the Complaint (¶¶ 83-94), Plaintiff alleges that Defendants were fiduciaries and parties in interest to the Plan, and violated the statute by causing the Plan to enter into certain transactions that ERISA prohibits. Defendants move to dismiss Plaintiff's prohibited transaction claim, arguing that Plaintiff has failed to plead that a statutory exemption to this prohibition is not applicable. Section 406 of ERISA, 29 U.S.C. § 1106, prohibits certain transactions between an employee benefit plan and a party in interest, 29 U.S.C. § 1106(a), and between an employee benefit plan and a fiduciary, 29 U.S.C. § 1106(b). Defendants do not argue that Plaintiff has failed to sufficiently allege that, by remitting management fees to an affiliated fund, Defendants engaged in a transaction prohibited by section 406, but instead assert that Plaintiff's Complaint is insufficient to state a claim because it fails to demonstrate that none of the several statutory exemptions from the section 406 prohibitions is

---

leads only to the inference that the VEF was performing poorly, a fact that Plaintiff has already alleged.

applicable here.  <u>See</u> 29 U.S.C. § 1108(b).  Defendants specifically point to section 408(b)(8) of

ERISA, which exempts from section 406

> [a]ny transaction between a plan and (i) a common or collective trust fund or
> pooled investment fund maintained by a party in interest which is a bank or trust
> company supervised by a State or Federal agency or (ii) a pooled investment fund
> of an insurance company qualified to do business in a State, if--
>> **(A)**  the transaction is a sale or purchase of an interest in the fund,
>> **(B)**  the bank, trust company, or insurance company receives not more
>> than reasonable compensation, and
>> **(C)**  such transaction is expressly permitted by the instrument under which
>> the plan is maintained, or by a fiduciary (other than the bank, trust
>> company, or insurance company[,] or an affiliate thereof) who has
>> authority to manage and control the assets of the plan.

29 U.S.C.S. § 1108(b)(8) (LexisNexis 2011).  Defendant argues that Plaintiff, by failing to

specifically allege facts demonstrating the inapplicability of this exemption, has failed to state a

claim for relief insofar as Plaintiff's claims are premised on liability for or in connection with a

prohibited transaction.

Plaintiff contends that the exemptions established by section 408(b) constitute

affirmative defenses, and that he has no duty to plead facts negating the availability of such

defenses.  <u>See</u> <u>Abbaas v. Dixon</u>, 480 F.3d 636, 640 (2d Cir. 2007) (finding that a plaintiff is not

required to "anticipate potential affirmative defenses").  In considering a motion for summary

judgment on a prohibited transaction claim, the Second Circuit held, in <u>Lowen v. Tower Asset</u>

<u>Mgmt., Inc.</u>, that "a fiduciary charged with a  violation of Section 406(b)(3) . . . must prove by a

preponderance of evidence that the transaction in question fell within an exemption."  829 F.2d

1209, 1215 (2d Cir. 1988).  Although <u>Lowen</u> does not explicitly characterize section 408(b)

exemptions as affirmative defenses, which a plaintiff need not negate in its pleading, a court in

this district, applying reasoning consistent with the more explicit decisions of several courts of

appeal for other circuits, has come to that conclusion.  <u>See</u> <u>Moreno</u>, 2016 WL 5957307 at *6; <u>see</u>

also, e.g., Allen v. GreatBanc Trust Co., 835 F.3d 670, 676 (7th Cir. 2016) ("Five of our sister circuits agree with the position that section 408 exemptions are affirmative defenses, or that the defendant bears the burden of proof, or both.").

This Court concurs with the Moreno court and the weight of opinion from other circuit courts of appeal that section 408(b)(8) constitutes an affirmative defense because such treatment rightly places the burden on the party with access to the necessary information to demonstrate that the allegedly prohibited transaction is indeed permitted by the exemption.  See Lowen, 829 F.2d at 1215 ("[B]ecause the fiduciary has a virtual monopoly of information concerning the transaction in question, it is in the best position to demonstrate the absence of self-dealing."); see also Braden v. Wal-Mart Store, Inc., 588 F.3d 585, 600-603 (8th  Cir. 2009) ("It would be perverse to require plaintiffs bringing prohibited transaction claims to plead facts that remain in the sole control of the parties who stand accused of wrongdoing.").  Moreover, recognizing section 408(b)(8) as an affirmative defense avoids imposing a burden shifting regime that is not contemplated by the statute.  See Braden, 588 F.3d at 601 n.10 ("Even if [the plaintiff's] allegation of unreasonableness were seen as raising the exemption for pleading purposes, that does not mean he thereby assumes the burden of proof on the issue."); see also Lowen, 829 F.2d at 1215 (imposing the burden of demonstrating the exemption on the defendant without discussion of a burden shifting paradigm).

Although Plaintiff has no duty to negate the availability of the section 408(b)(8) affirmative defense, the Court must still consider whether the facts alleged in the Complaint plainly establish the exemption's applicability.  See Pani v. Empire Blue Cross Blue Shield, 152

F.3d 67, 74-75 (2d Cir. 1989) (stating that an affirmative defense may be resolved on a motion to dismiss if its applicability is clearly established by the facts alleged in the complaint).

The section 408(b) exemption requires that any compensation paid to an affiliated bank or trust company be reasonable. 29 U.S.C. § 1108(b)(8)(B). While, as noted earlier, Plaintiff failed to properly allege that the management fees charged by the VEF were excessive, the Complaint is equally devoid of any factual allegations tending to show that the fees were reasonable. Contrary to Defendants' argument, Plaintiff's mere failure to allege unreasonableness is insufficient to satisfy Defendants' burden of proving that the fees charged were in fact reasonable and paid to an entity covered by the exemption. Accordingly, Defendants' motion to dismiss Plaintiff's prohibited transaction claim is denied and Defendant will have the burden of establishing the applicability of one or more section 408(b) exemptions in an appropriate procedural context.

Defendants' motion to dismiss Plaintiff's prohibited transaction claim, subdivision VIII.b of the Complaint, is denied insofar as it is premised upon an exemption of the challenged transaction.

Fiduciary Status

Defendants also seek the dismissal of the Complaint as against all Defendants other than the Committee, arguing that Plaintiff fails to allege facts demonstrating that the other Defendants are fiduciaries. Defendants contend that, absent such fiduciary status in connection with the challenged transactions, the other Defendants cannot be held liable under ERISA section 406 for causing the Plan to enter into the allegedly prohibited transactions.[9] See 29 U.S.C. §§

---

[9] Plaintiff's claims for Defendants' alleged breach of general fiduciary duties (Compl. subdivision VIII.a) are also predicated on Defendants' status as fiduciaries. 29 U.S.C. §§ 1104(a)(1), 1109. The analysis that follows is equally applicable to the claims of breach of duties under section 404 of ERISA.

1106(a)(1), 1106(b), 1109; see also In re Pfizer, Inc. ERISA Litigation, 2009 WL 749545 at *6-8

(analyzing fiduciary status as a prerequisite for ERISA liability).  Specifically, "in every case

charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person

was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action

subject to the complaint."  Pegram v. Herdrich, 530 U.S. 211, 226 (2000).  Fiduciary status may

arise from designation as a fiduciary in a plan document or arise from a person or entity's

functional relationship to a plan.  Under ERISA, a person or entity is a fiduciary only to the

extent that the alleged fiduciary

> (i) . . . exercises any discretionary authority or discretionary control respecting
> management of such plan or exercises any authority or control respecting
> management or disposition of its assets, (ii) . . . renders investment advice for a
> fee or other compensation, direct or indirect, with respect to any moneys or other
> property of such plan, or has any authority or responsibility to do so, or (iii) . . .
> has any discretionary authority or discretionary responsibility in the
> administration of such plan.

29 U.S.C.S. 1002(21)(A) (LexisNexis 2011); Walker v. Merrill Lynch & Co., Inc., 181 F. Supp.

3d 223, 233-34 (S.D.N.Y. 2016).  A party "only falls within sub[divisions] (i) and (iii) if they

possess final authority to make decisions for the plan or if they have control over plan assets."

Apogee Enterprises, Inc. v. State St. Bank & Tr. Co., No. 09 CV 1899 RJH, 2010 WL 3632697,

at *2 (S.D.N.Y. Sept. 17, 2010).  As to subdisvion (ii),

> to plead that a defendant is a fiduciary because it provided 'investment advice for
> a fee,' a plaintiff must plead that (1) the defendant provided individualized
> investment advice; (2) on a regular basis; (3) pursuant to a mutual agreement,
> arrangement, or understanding that (4) the advice would serve as a primary basis
> for the plan's investment decisions; and (5) the advice was rendered for a fee.

F.W. Webb Co. v. State St. Bank & Tr. Co., No. 09 CV 1241 RJH, 2010 WL 3219284, at *8

(S.D.N.Y. Aug. 12, 2010) (citing 29 C.F.R. § 2510.3-21 (2010)).   The Court will now examine

Plaintiff's allegations with respect to the fiduciary status of each relevant Defendant.

Plaintiff alleges, based on a VEF disclosure, that Neuberger Berman Trust Company N.A. "maintains ultimate fiduciary authority over the management of, and investments made, in the [VEF]," and was, therefore, a functional fiduciary. (Compl. ¶ 21.) This allegation, however, only supports the proposition that Neuberger Berman Trust Company N.A. acts as a fiduciary in connection with the VEF's investment and management decisions. Plaintiff proffers no fact that would support an inference that Neuberger Berman Trust Company N.A. played any role or had any responsibility in designating the VEF as an investment choice or otherwise caused the Plan to pay fees to any party in interest. See Apogee Enterprises, 2010 WL 3632697 at *2. Because Plaintiff's claims are premised on the selection and maintenance of the VEF as a Plan investment option and the authorization of the investment management fee structure for the VEF, rather than on the investment activity within the VEF, the claims asserted against Neuberger Berman Trust Company N.A. pursuant to sections 404, 406, 409, and 502(a)(2) of ERISA are dismissed.[10]

Plaintiff next argues that Schwartz, as the lead manager of the VEF, was also a fiduciary. Even if that is true as to the VEF's investment choices, it does not provide a basis for a finding that Schwartz had any authority or responsibly for choosing the VEF as a Plan investment option or authorizing the payment of fees to any fiduciary or party in interest. Accordingly Plaintiff's claims against Schwartz pursuant to ERISA sections 404, 406, 409, and 502(a)(2) are dismissed as well.

---

[10]    Plaintiff asserts in his opposition brief, but does not allege in his Complaint, that Neuberger Berman Trust Co. N.A. unilaterally determined and paid fees to Neuberger Berman. The Court does not address the assertion because it is not included in the Complaint.

Plaintiff makes no factual allegations specific to Neuberger Berman LLC from which a factfinder could reasonably infer that it was a fiduciary with respect to the decision to cause the Plan to pay management fees to the VEF.  The Complaint merely alleges that Neuberger Berman LLC is indirectly owned by Neuberger Berman Group LLC and that it provides financial advisory services.  The claims against Neuberger Berman LLC pursuant to ERISA sections 404, 406, 409, and 502(a)(2) are also dismissed.

Finally, Plaintiff argues that Neuberger Berman Group LLC, as the Plan sponsor, is also a fiduciary.  Plaintiff cites Leigh v. Engle for the proposition that a fiduciary cannot abdicate its fiduciary responsibilities even if discrete fiduciary duties are delegated.  727 F.2d 113, 135 (7th Cir. 1984).  "In this Circuit, [however,] an employer [or sponsor] cannot be a de facto plan administrator where it has named an administrator," and is not liable for any breaches except to the extent that it retained fiduciary responsibility for the allegedly breach.  See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., 763 F. Supp. 2d 423, 569-70 (S.D.N.Y. 2011).  Here, the Plan Document specifically excludes responsibility for "control and management of the assets of the Plan and appointment of an investment manager or managers" from Neuberger Berman Group LLC's fiduciary responsibilities as Plan Administrator, assigning those responsibilities to the Investment Committee instead.  See id.; (Plan Document ¶ 9.2).  In light of this provision, any allegation that Neuberger Berman Group LLC retained residual responsibility for investment decisions is implausible and there are no factual allegations supporting an inference of functional fiduciary status on the part of Neuberger Berman Group LLC in connection with the claims asserted by Plaintiff.  Accordingly Plaintiffs' claims against Neuberger Berman Group LLC brought pursuant to sections 404, 406, 409, and 502(a)(2) of ERISA are dismissed.

Plaintiff also asserts that dismissal of the claims as against the non-committee Defendants is unwarranted even if they were not fiduciaries in any relevant respect because, as parties in interest to the Plan, they may be subjected to equitable restitution of proceeds of prohibited transactions pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), citing Harris Trust & Sav. Bank v. Solomon Smith Barney Inc., 530 U.S. 238, 244-46 (2000). However, restitution, as an equitable remedy, requires that "the money or property identified as belonging in good conscience to the plaintiff [can] be clearly traced to particular funds or property in the defendant's possession." Great-W Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002). Because Plaintiff fails to trace the fees paid in violation of section 406 to any particular property or funds held by Defendants, or articulate why traceability is not required, Plaintiff's equitable restitution claim is not sustainable against the non-fiduciary Defendants. See Moreno, 2016 WL 5957307, at *9. Accordingly, Plaintiff's claims asserted pursuant to ERISA section 502(a)(3) are dismissed against all Defendants other than the Investment Committee.

Motion for Summary Judgment — Statute of Limitations

Defendants move for summary judgment on statute of limitations grounds. ERISA claims must be brought within six years of the date of the last breach or, if "the plaintiff had actual knowledge of the breach or violation," within three years of the last breach. 29 U.S.C.S. § 1113 (LexisNexis 2011). Defendants contend that Plaintiff had actual knowledge of the grounds for his breach of fiduciary duty and prohibited transaction claims more than three years before the Complaint was filed and is thus subject to the shorter statute of limitations period, under which his claims are untimely. A Plaintiff acquires actual knowledge when he ascertains "all material facts necessary to understand that an ERISA fiduciary has breached his or

her duty or has otherwise violated the Act." <u>Caputo v. Pfizer, Inc.</u>, 267 F.3d 181, 193 (2d Cir. 2001).

At the request of the parties, the Court endorsed a joint letter, stipulating, in pertinent part, that Plaintiff's response to the motion for summary judgment would take the form of a motion for discovery pursuant to Federal Rule of Civil Procedure 56(d).  (Order, Docket Entry No. 29.)  Rule 56(d) "was designed to afford a non-moving party with a fair opportunity to engage in discovery before having to oppose a summary judgment motion."  <u>Waters v. Prack</u>, No. 9:13-CV-1437 (LEK/DEP), 2015 WL 1506126, at *4 (N.D.N.Y. Mar. 31, 2015).  The party requesting additional discovery should submit an affidavit explaining "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."  <u>Meloff v. N.Y. Life Ins. Co.</u>, 51 F.3d 372, 375 (2d Cir. 1995).  The decision to grant a rule 56(d) motion is discretionary and a court may grant such a motion notwithstanding the failure to adequately justify additional discovery if it is clear that the nonmoving party has not had an adequate opportunity to conduct any discovery.  <u>Klyczek v. Shannon</u>, No. 15CV 0963 (GTS), 2016 WL 7012650, at *8 (W.D.N.Y. Dec. 1, 2016); <u>Hellstrom v. U.S. Dep't of Veterans Affairs</u>, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").

Defendants proffer extrinsic evidence of Plan-related correspondence sent to Plaintiff and the content of a Plan internet site to which he had access, to demonstrate that Plaintiff had the requisite actual knowledge of Defendants' alleged ERISA violation more than three years before this action was filed and that his claims are accordingly time barred.  (<u>See</u>

generally Cropper Decl., Docket Entry No. 23; see also Lamoureux Decl., Docket Entry No. 25.)

To establish actual knowledge of the prohibited transaction, Defendants specifically point to a

March 4, 2011, letter sent to all VEF investors, advising them that the VEF would thereafter be

managed by the Straus Group, and a VEF Disclosure Statement that notes that Neuberger

Berman Trust Company N.A. was the VEF's trustee and would receive a management fee of one

percent of the VEF's net assets.  (Docket Entry Nos. 25-1 and 25-2.)  Both documents were

mailed to Plaintiff's home address.  (Lamoureux Decl. ¶¶ 5-6.)

  In the affidavit submitted in support of Plaintiff's Rule 56(d) motion, Plaintiff's

attorney avers that he will seek communications between Defendants and Plaintiff and other Plan

participants that undermine Defendants' contention that Plaintiff had actual knowledge of the

circumstances which form the basis of his claims.  (Boyko Decl., Docket Entry No. 33, ¶¶ 10-

11.)  Specifically, Plaintiff seeks all of the correspondence between Defendants and Plaintiff,

anticipating the discovery of correspondence that would have contradicted or obscured the

information set forth in the limited correspondence proffered by Defendants and thus create a

genuine issue of material fact as to when Plaintiff came to actually know of the facts animating

his current complaint.  (Id. ¶ 11(a).)

  No discovery at all has as yet been conducted in this case.  As noted above, the

Second Circuit has stated that "[o]nly in the rarest of cases may summary judgment be granted

against a plaintiff who has not been afforded the opportunity to conduct discovery."  Hellstrom,

201 F.3d at 97; see also Irving v. Philips, No. 15-CV-6413-FPG, 2017 WL 85427, at *1

(W.D.N.Y. Jan. 10, 2017) (describing the "rare" cases in which summary judgment was

appropriate without discovery, such as when discovery would be futile).  The Court is not

persuaded that this is such a rare case in which pre-discovery summary judgment is warranted.

Because Defendants have not firmly established that discovery would be futile, the Court will exercise its discretion to permit limited targeted discovery on the issue of communications to Plaintiff concerning his Plan investments and the fees charged in connection therewith.

Accordingly, Plaintiff's Rule 56(d) motion is granted to the extent that Plaintiff will be permitted to conduct such limited targeted discovery. Defendants' summary judgment motion is denied without prejudice to renewal following the completion of the discovery.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the Complaint is granted as to all Defendants with respect to Plaintiff's breach of fiduciary duty claim, Compl. subdivision VIII.a, and granted as to all Defendants other than the Investment Committee and its members with respect to Plaintiff's prohibited transaction claims, Compl. subdivision VIII.b. The Complaint is accordingly dismissed as to Neuberger Berman Group LLC, Neuberger Berman LLC, Neuberger Berman Trust Company N.A., and Marvin Schwartz. The Clerk of Court is directed to amend the caption of this case accordingly.

Plaintiff's motion for discovery pursuant to Federal Rule of Civil Procedure 56(d) with respect to his prohibited transaction claim is granted to the extent that Plaintiff is permitted to conduct limited, targeted discovery of communications to him regarding his Plan investments and the fees charged in connection therewith. Defendants' motion for summary judgment is denied without prejudice to renewal after the completion of the discovery.

This case is now referred for general pretrial management to Magistrate Judge Moses. Any disputes concerning the discovery should be directed to Judge Moses.

This Memorandum Opinion and Order resolves Docket Entry Nos. 20 and 31.

SO ORDERED.

Dated: New York, New York
September 27, 2018

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge