UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ARTHUR BEKKER, individually, on behalf
of a class of all other persons similarly
situated, and on behalf of the Neuberger
Berman 401(k) Plan,

        Plaintiffs,

    -v-                         No.  16 CV 6123-LTS-BCM

The NEUBERGER BERMAN
INVESTMENT COMMITTEE and Jane and
John Does 1-25,

        Defendants.

-----------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiff Arthur Bekker ("Plaintiff"), individually, on behalf of a putative class,

and on behalf of the Neuberger Berman 401(k) Plan, filed his original Complaint (Docket Entry

No. 1) alleging that defendants, the Neuberger Berman Investment Committee (the

"Committee") and its individual members named as Jane and John Does 1-25 (collectively,

"Committee Defendants"), Neuberger Berman Group LLC, Neuberger Berman LLC, Neuberger

Berman Trust Company N.A, (collectively, "Neuberger") and Marvin Schwartz (collectively,

"Defendants") breached their fiduciary duties under the Employee Retirement Income Security

Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"),[1]  and engaged in transactions prohibited by

ERISA during a class period between June 15, 2010, and the present.  (Compl., Docket Entry

No. 1; Proposed First Amended Compl. ("PFAC"), Docket Entry No. 82-1, ¶ 17.)  In his first

---

[1]     ERISA is codified at 29 U.S.C. § 1001 et seq.  References to "ERISA" sections in the
Memorandum Opinion and Order are to the uncodified version of the legislation.

Complaint, Plaintiff alleged that Defendants breached fiduciary duties imposed by ERISA by maintaining a particular investment fund that was managed by Neuberger affiliates, performed poorly, and charged excessive management fees, as one of the investment options under a defined contribution plan for employees of Neuberger Berman Group LLC and affiliated companies. Plaintiff further alleged that the management fee payments constituted transactions prohibited by ERISA.

In its September 27, 2018, Memorandum Opinion and Order, Bekker v. Neuberger Berman Grp. LLC, No. 16 CV 6123-LTS-BCM, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) (the "September Opinion"), the Court denied Defendants' motion to dismiss the prohibited transaction claim pursuant to Section 406 of ERISA, granted Defendants' motion to dismiss Plaintiff's breach of fiduciary duty claim pursuant to Section 404 of ERISA, denied summary judgment with respect to the statute of limitations pending further targeted discovery pursuant to Federal Rule of Civil Procedure 56(d), and dismissed the Complaint as against all Defendants except the Committee Defendants. Specifically, the Court found that Plaintiff's allegations that the Neuberger Berman Value Equity Fund (the "VEF"), an actively-managed Neuberger-affiliated fund available to members of the Neuberger Berman Group 401(k) Plan (the "Plan"), failed to meet its S&P 500 benchmark, were insufficient to support plausibly an inference that Defendants had breached their fiduciary duties. Id. at *5-7. The Court found that Plaintiff's proffered comparison of the VEF to a passive Vanguard-managed index fund that tracked the S&P 500 but charged a fraction of the VEF's fees was inapt because of the vastly different investment strategies involved. Id. at *7.

Plaintiff has moved for leave to amend his Complaint to provide further detailed factual allegations against which to compare the VEF's performance and fees as circumstantial

support for Plaintiff's claims of breach of fiduciary duty, and to add a demand for a jury trial. (Docket Entry No. 82; PFAC.)

The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. section 1331 and 29 U.S.C. section 1132(e)(1).

The Court has considered carefully the submissions of both parties and, for the following reasons, grants Plaintiff's motion for leave to amend his Complaint.

BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of the case, which are set forth in detail in the Court's September Opinion. The following additional facts are drawn from the PFAC.

Marvin Schwartz, a Neuberger managing director and significant shareholder, directed the Straus Group, a division within Neuberger that, among other things, managed the VEF. (PFAC ¶ 10.)

The Fund charged a management fee of 80 basis points during the relevant period. (Id. ¶ 12.) In the five-year period ending on June 30, 2016, the VEF had an annualized return of 4.7%. (Id. ¶ 63.) During that same five-year period, the S&P 500, against which the VEF was benchmarked, had an annualized return of 12.1%. (Id.) For the five-year period ending on June 30, 2017, the VEF underperformed its benchmark by over 4% per year. (Id. ¶ 83.)

In the PFAC Plaintiff identifies two actively-managed comparator groups of investment funds: large-cap blend funds (typically benchmarked against the S&P 500) and large-cap value funds (typically benchmarked against the Russell 1000 Value Index). (Id. ¶ 57.) According to Plaintiff, both groups share some relevant attributes with the VEF: the VEF was benchmarked against the S&P 500 and had a stated objective to "provide capital return

opportunities afforded by the equity market" like large-cap blend funds but, like the large-cap value funds, "applied principles of value investing to select investments." (Id. ¶¶ 53, 55-56 (internal quotation marks omitted).) As compared to the eleven largest large-cap value funds, the VEF charged fees that were, on average, 139% higher as measured against the highest net expense ratio charged during the class period. (Id. ¶ 57; Pl. Mem. in Supp., Docket Entry No. 83, at 6.) The VEF's fees ranged from 26.98% to 370.59% higher than those charged by these eleven comparator value funds. (PFAC ¶¶ 56-57.) As compared to the ten largest large-cap blend funds, VEF's fees were on average 75% greater during the class period, ranging from 6.67% to 247.83% more. (Id. ¶¶ 55, 57.)

For the five-year period ending on June 30, 2016, the median actively-managed large-cap blend mutual fund had annualized returns of 10.92%, whereas the median actively-managed large-cap domestic equity value fund had annualized returns of 10.10%. (Id. ¶ 63.)

"The Plan's [Investment Policy Statement ('IPS')] noted that actively managed options included in the Plan must be 'expected to provide for returns higher than their market indices.'" (Id. ¶ 77.) The IPS also directed the Committee "to review performance using three-year histories and remove underperforming funds." (Id. (citation omitted).) During the class period, the Committee removed two funds from the Plan. The PIMCO Total Return Fund (the "PIMCO Fund") was removed in 2014 after having underperformed its Morningstar peer group thrice in the preceding five-year period, although it performed better than the average for its category over the aggregate five-year period. (Id. ¶¶ 78-79.) The PIMCO Fund had $70 billion in assets. (Id. ¶ 80.) The Virtus Emerging Markets Opportunities Fund (the "Virtus Fund") was removed in 2016 after underperforming its benchmark by 304 basis points and its Morningstar peer group by 704 basis points in 2016, despite having performed favorably with respect to its

peer group in 2014 and 2015, exceeding its benchmark by 941 basis points and its peer group by 855 basis points in 2014, and outperforming its category average for the preceding five-year period.  (Id. ¶ 78, 81.)  The Virtus Fund had a $7.3 billion market capitalization.  (Id. ¶ 82.)

DISCUSSION

Federal Rule of Civil Procedure 15 provides that the court may permit a party to amend its pleading when justice so requires.  Fed. R. Civ. P. 15(a)(2).  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.'"  Foman v. Davis, 371 U.S. 178, 182 (1962).  However, such leave may be denied on grounds of futility if the proposed amended pleading could not withstand a motion to dismiss, such as a motion under Rule 12(b)(6) to dismiss the complaint for failure to state a claim.  Griffith-Fenton v. Coldwell Banker Mortg., No. 13 CV 7449, 2014 WL 6642715, at *1 (S.D.N.Y. Oct. 17, 2014); Oneida Indian Nation of N.Y. v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citation omitted).[2]  In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Under the Rule 12(b)(6) standard, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] reasonable inferences in favor of the nonmoving party."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

---

[2]     The party opposing the motion to amend bears the burden of establishing that the amendment would be futile.  Ballard v. Parkstone Energy, LLC, No. 06 CV 13099, 2008 WL 4298572, at *3 (S.D.N.Y. Sep. 19, 2008).

In subdivision VIII.a of the original Complaint (corresponding to Count I of the

PFAC), Plaintiff alleged that Defendants breached their fiduciary duties of prudence and loyalty

by retaining the VEF in spite of its high fees and poor performance because it was affiliated with

Neuberger, which would profit from the fees and could also use Plan participants to "seed" the

fund and make it attractive to other, public, investors.  The Court, after rejecting Plaintiff's

proffer of Vanguard's Institutional Index Fund Institutional Plus Shares fund ("VIIIX"), a

passive index fund, as a relevant comparator, found that Plaintiff's allegation that the VEF was

an affiliated fund that failed to meet its benchmark was not sufficiently suggestive circumstantial

evidence to support plausible inferences that Defendants breached their duties of prudence and

loyalty.  September Opinion, 2018 WL 4636841, at *5-7; see 29 U.S.C.S. §§ 1104(a)(1),

(a)(1)(A), (a)(1)(A)(i), (a)(1)(B).

In the PFAC, Plaintiff identifies two different comparator groups of investment

funds that he alleges best correspond to the VEF's structure and philosophy.  Plaintiff proffers

data showing that, on average, both of these groups charged significantly less in fees during the

class period than did the VEF.  See Leber v. Citigroup, Inc., No. 07 CIV. 9329 SHS, 2011 WL

5428784, at *4-5 (S.D.N.Y. Nov. 8, 2011) (finding allegations of affiliated fund fees 36-228%

higher than those of unaffiliated funds sufficient to support a breach by omission claim premised

on retention of the affiliated fund and that fees 60-140% higher than those of comparable funds

supported a breach of fiduciary duty claim, where the fiduciaries allegedly automatically

transferred participants' investments from unaffiliated funds into affiliated funds charging such

higher fees).[3]  Plaintiff has also alleged that the VEF generated an annualized return of 4.7%

---

[3]     The VEF allegedly exceeded the expense ratios of the 10 proffered large-cap blend
        actively managed funds by 6.67%, 17.65%, 19.4%, 25%, 25%, 26.98%, 48.15%,
        166.67%, 166.67%, and 247.83%.  (PFAC ¶ 55.)  Where there are plausible allegations of

during the five-year period ending in June 2016, while the median actively-managed large-cap

blend fund and the median actively-managed large-cap value fund produced annualized returns

of 10.92% and 10.10%, respectively, over the same period. These allegations show significant

underperformance at inflated fee levels by the Neuberger-affiliated VEF. The PFAC also

includes specific allegations that Committee Defendants violated the Plan's investment policy

regarding review and removal of underperforming funds by retaining the VEF, while Committee

Defendants terminated two other unaffiliated Plan investment options—the Virtus and PIMCO

Funds—despite their arguably better performance over the five-year period prior to their

respective terminations. The VEF did not meet its benchmark for the five years ending in 2017

before its termination, whereas Virtus, with the exception of one year, performed well, by some

metrics, during the five years proceeding its termination, and PIMCO only failed to meet its

benchmark in three of the five years and performed better than average among its peers during

the five-year period preceding its termination.[4] (PFAC ¶¶ 77-81, 84-85.) These allegations

plausibly suggest that Committee Defendants, despite higher fees and lower performance,

retained the VEF where they would have terminated an unaffiliated fund.

---

self-interest, such disparities can support proper inferences of breach of fiduciary duties. Cf. Laboy v. Bd. of Trustees of Bldg. Serv. 32 BJ SRSP, No. 11 CIV. 5127 HB, 2012 WL 3191961, at *2-3 (S.D.N.Y. Aug. 7, 2012), aff'd, 513 F. App'x 78 (2d Cir. 2013) (rejecting general prudence claims based on performance and fee disparities in the absence of allegations of self-interest.).

[4] Committee Defendants assert that many customers were divesting from PIMCO and Virtus due to unique managerial developments in those funds. While Committee Defendants may have been motivated by such concerns, it is inappropriate for the Court to consider such extrinsic evidence or forgo drawing all reasonable inferences in Plaintiff's favor for the purposes of this motion practice.

Committee Defendants argue that Plaintiff has cherry-picked statistics to ignore

the positive performance of the VEF in different time periods, dispute the appropriateness of

some the comparator funds chosen by Plaintiff, identify other funds that charged similar or

greater fees than the VEF, and otherwise provide competing statistical measurements.  Even if

the Court were to take notice of the documents proffered by Committee Defendants for the truth

of their contents, it would not be appropriate for the Court to weigh evidence to determine which

comparisons are the most probative in the context of this motion practice.  See Sacerdote v. New

York Univ., No. 16-CV-6284 (KBF), 2017 WL 3701482, at *10 (S.D.N.Y. Aug. 25,

2017), reconsideration denied, No. 16-CV-6284 (KBF), 2017 WL 4736740 (S.D.N.Y. Oct. 19,

2017) (assertions that a plaintiff used inappropriate benchmarks against which to measure

performance was not appropriate at the motion to dismiss stage).

Committee Defendants further argue that they are immunized from breach of

fiduciary duty claims based on their retention of the VEF in the Plan because Plan participants

are free to choose to invest in any of a number of different funds, including actively-managed

accounts or passive index funds offering a variety of fees and strategies, both affiliated with

Neuberger and independent.   The cases upon which Committee Defendants rely for this

proposition are inapposite and stand principally for the proposition that, where a breach of

fiduciary duty claim is premised on the provision of an allegedly imprudent range or mix of

investment options, the defendant will not breach its fiduciary duty if it offers plan members a

sufficient choice of other investment options that do not share the alleged infirmity.  See

Cunningham v. Cornell Univ., No. 16-CV-6525 (PKC), 2017 WL 4358769, at *7-8 (S.D.N.Y.

Sept. 29, 2017) (distinguishing substantially all of Committee Defendants' precedent cited in

support of this proposition).  Where, as here, a breach of fiduciary duty claim is based upon the

inclusion of a particular investment option that is allegedly imprudent or maintained for the

benefit of the fiduciary rather than for the benefit of plan participants, a plaintiff may state a

viable claim despite a defendant offering other, non-objectionable investment options.[5] Id.

The PFAC proffers sufficient specific factual allegations regarding the cost and

performance of the VEF relative to comparators, and the context of its retention as a fund option,

to support Plaintiff's claim of breach of the duty of loyalty. This claim that maintance of the

overly expensive, underperforming option was imprudent under the circumstances is pleaded

sufficiently as well. Accordingly, Plaintiff's breach of fiduciary duty claim is not futile and, at

this early stage of litigation, reinstating this claim would not be prejudicial. Plaintiff is therefore

granted leave to amend the Complaint with respect to this claim.

Committee Defendants also indicate that they believe that Plaintiff's breach of

fiduciary duty claim is barred by the shorter three-year statute of limitations that applies when a

plaintiff has "actual knowledge" of an ERISA violation. 29 U.S.C.S. § 1113 (LexisNexis 2011).

In conjunction with their original motion to dismiss, Defendants moved for summary judgment

based on Plaintiff's alleged actual knowledge of both the breach of fiduciary duty claim and the

surviving prohibited transaction claim. The Court denied summary judgment and granted

---

[5]    Committee Defendants' reliance on Judge Forrest's reconsideration decision in Sacerdote
       v. New York Univ., No. 16-CV-6284 (KBF), 2017 WL 4736740 (S.D.N.Y. Oct. 19,
       2017), is also misplaced. Although Judge Forrest dismissed and refused to reinstate a
       prudence claim as it related to defendants offering a mix of options including more
       expensive retail shares of funds that could have been offered as less expensive
       institutional shares because the plan contained a broad mix of retail and institutional
       options, her original decision also found that, as here, the plaintiffs stated a viable
       prudence claim based on the defendants' inclusion of particular funds that charged high
       fees and performed poorly. Sacerdote, 2017 WL 3701482, at *10.

Plaintiff's Rule 56(d) motion for targeted discovery as to when Plaintiff had actual notice of the prohibited transaction claim, stating that "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." September Order, 2018 WL 4636841, at *11 (quoting Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000)).  Pursuant to Magistrate Judge Moses's November 18, 2018, Order, such discovery will commence after the Court's decision on this motion for leave to amend.  (Docket Entry No. 93.)   As Committee Defendants appear to concede, resolution of the question of Plaintiff's actual knowledge of the basis of his breach of fiduciary duty claim also requires discovery similarly narrowly targeted to that issue.

Plaintiff also seeks to amend his Complaint to include a demand for a jury trial, which Committee Defendants oppose.  Because the issue of whether a jury trial is available in an ERISA breach of fiduciary duty claim is currently pending on an appeal to the Second Circuit and parties may move to strike a demand for a jury trial up until the eve of trial, the Court will permit Plaintiff to amend his Complaint to demand a jury trial without prejudice to a motion by Committee Defendants to strike the demand at a later date.  See Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 226-27 (3d Cir. 2007); see also Notice of Appeal, Sacerdote v. New York Univ., No. 16-CV-6284 (RWS) (S.D.N.Y.), Docket Entry No. 355, ¶ 7.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion to amend his Complaint is granted. This case remains referred to Magistrate Judge Moses for general pretrial management.  The parties may commence discovery narrowly targeted to the issue of when Plaintiff had actual knowledge of the alleged ERISA violations that form the basis of his claims.  Any disputes concerning the discovery should be directed to Judge Moses.

This Memorandum Opinion and Order resolves Docket Entry No. 82.


SO ORDERED.

Dated: New York, New York
        May 9, 2019

                                         /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        United States District Judge