UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ARTHUR BEKKER, *individually, on behalf of a*
*class of all other persons similarly situated, and on*
*behalf of the Neuberger Berman 401(k) plan*,                    No. 16-cv-06123-LTS-BCM

                                        Plaintiff,

                v.

NEUBERGER BERMAN GROUP 401(K) PLAN
INVESTMENT COMMITTEE,

                                        Defendant.

-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

STATEMENT OF FACTS ..............................................................................................................3

    A.    The Plan ...........................................................................................................3

    B.    Investment Alternatives Offered by the Plan.................................................3

    C.    Information Provided to Plan Participants Regarding Their Investment
           Options ............................................................................................................4

    D.    The Value Equity Fund ...................................................................................5

    E.    Plaintiff Arthur Bekker's Participation in the Plan.......................................6

    F.    Bekker's Investments in VEF ........................................................................7

    G.    Allegations in the Complaint and Procedural History ...................................9

    H.    Allegations in the First Amended Complaint ...............................................11

ARGUMENT ................................................................................................................................12

    A.    Standard of Review.......................................................................................13

    B.    Applicable Legal Framework ........................................................................13

          1.    "Actual Knowledge" Means Knowledge of the Facts Comprising
               the Claim.............................................................................................14

          2.    "Actual Knowledge" Means Possession of the Information
               Comprising the Claim, Not Subjective Knowledge of That
               Information .........................................................................................16

    C.    The Fiduciary Breach Claim is Time-Barred.........................................19

    D.    The Prohibited Transaction Claim is Time-Barred................................22

CONCLUSION .............................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Bernaola v. Checksmart Fin. LLC*,
    322 F. Supp. 3d 830 (S.D. Ohio 2018) ....................................................................14, 16, 21

*Brock v. Nellis*,
    809 F.2d 753 (11th Cir. 1987) ............................................................................................19

*Brotherston v. Putnam Invs., LLC*,
    No. 15-13825, 2017 WL 1196648 (D. Mass. Mar. 30, 2017), *vacated on other
    grounds*, 907 F.3d 17 (1st Cir. 2018)..................................................................................23

*Caputo v. Pfizer, Inc.*,
    267 F.3d 181 (2d Cir. 2001)................................................................................................14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................................13

*Conkright v. Frommert*,
    559 U.S. 506 (2010)............................................................................................................18

*Figas v. Wells Fargo & Co.*,
    No. 08-4546, 2010 WL 2943155 (D. Minn. Apr. 6, 2010)..................................................23

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)............................................................................................................19

*In re Citigroup ERISA Litig.*,
    104 F. Supp. 3d 599 (S.D.N.Y. 2015), *aff'd by summary order*, 649 F. App'x
    110 (2d Cir. 2016)..................................................................................................16, 19, 21

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
    139 S. Ct. 2692 (2019)........................................................................................................17

*Leber v. Citigroup 401(k) Plan Inv. Committee*,
    No. 07-9329, 2014 WL 4851816 (S.D.N.Y. Sept. 30, 2014) ..............................................21

*Muehlgay v. Citigroup Inc.*,
    649 F. App'x 110 (2d Cir. 2016) ..............................................................................15, 16, 24

*Nat'l Integrated Grp. Pension Plan v. Dunhill Food Equip. Corp.*,
    938 F. Supp. 2d 361 (E.D.N.Y. 2013) ................................................................................13

*Patterson v. Capital Grp. Cos.*,
    No. 17-4399, 2018 WL 748104 (C.D. Cal. Jan. 23, 2018)..................................................23

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
    712 F.3d 705 (2d Cir. 2013)........................................................................14, 18

*Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*,
    944 F.2d 509 (9th Cir. 1991) ............................................................................24

*Ramnaraine v. Merrill Lynch & Co.*,
    No. 1:13–7889, 2014 WL 4386733 (S.D.N.Y. Sept. 5, 2014), *aff'd by
    summary order*, 613 F. App'x 83 (2d Cir. 2015)................................................17

*Reeves v. Airlite Plastics, Co.*,
    No. 8:04-56, 2005 WL 2347242 (D. Neb. Sept. 26, 2005)..............................16, 19

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
    718 F. App'x 3 (2d Cir. 2017) ...........................................................................16

*White v. Chevron Corp.*,
    No. 16-0793, 2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd by summary
    order*, 752 F. App'x 453 (9th Cir. 2018) ...........................................................16

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd on other grounds*, 325 F. App'x
    31 (2d Cir. 2009)............................................................................... passim

*Young v. General Motors Investment Management Corp.*,
    325 F. App'x 31 (2d Cir. 2009) ......................................................................14, 17

*Zang v. Paychex*,
    728 F. Supp. 2d 261 (W.D.N.Y. 2010)............................................................22, 24

STATUTES

29 U.S.C. § 1106(a)(1)(D) ............................................................................................9

29 U.S.C. § 1108(b)(8) ...............................................................................................10

29 U.S.C. § 1113 .........................................................................................................13

29 U.S.C. § 1113(2) .....................................................................................................12

ERISA § 404 ..................................................................................................................9

ERISA § 406 ..............................................................................................................9, 11

ERISA § 408(b)(8)........................................................................................................10

ERISA § 413 ..................................................................................................................13

ERISA § 502 ..................................................................................................................18

**OTHER AUTHORITIES**

29 C.F.R. § 2520.104b-1(b)(1) ...........................................................................................18

29 C.F.R. § 2550.404a-5(c)-(e)...................................................................................4, 5, 18

Fed. R. Civ. P. 8..............................................................................................................14

Fed. R. Civ. P. 56(a) .......................................................................................................13

Fed. R. Civ. P. 56(d) .......................................................................................................10

## PRELIMINARY STATEMENT

Plaintiff Arthur Bekker ("Bekker"), a former employee of Neuberger Berman Group LLC

("Neuberger"), claims that the committee responsible for the investment options in Neuberger's

401(k) plan (the "Plan") breached ERISA's fiduciary duty and prohibited transaction rules by

maintaining in the Plan's investment line-up a Neuberger-affiliated fund, known as the Value

Equity Fund ("VEF"). This Court previously dismissed Bekker's fiduciary breach claim because

he improperly sought to draw an inference of imprudence and disloyalty from a comparison of

VEF's fees and performance to those of a passive index fund, rather than actively managed funds

with investment strategies comparable to VEF's. In response, Bekker amended his complaint to

include comparisons of VEF's fees and performance to those of a virtual laundry list of actively

managed funds, including one offered by the Plan. Although the Court concluded that, with

those amendments, Bekker's First Amended Complaint (the "Complaint") stated a plausible

fiduciary breach claim, the Complaint still must be dismissed, on this motion for summary

judgment, because both the fiduciary breach and prohibited transaction claims are time-barred.

Under ERISA, fiduciary breach and prohibited transaction claims are time-barred if the

plaintiff "had actual knowledge" of the claims more than three years prior to commencement of

the suit. Here, there is no dispute that the Plan consistently provided Bekker with the

information that constitutes the basis for his claims, namely that: (i) VEF was managed by a

Neuberger affiliate; (ii) when VEF was reopened for new investments in 2011, it charged a

1.00% fee (which fee was subsequently reduced to 0.80%); and (iii) despite its historically strong

performance in certain of the years prior to and shortly after its reopening, VEF substantially

underperformed its peers. Bekker concedes that he was provided with, and knew how to access,

the Plan materials containing that information, but claims that, instead of reading them carefully,

he merely glossed over them. As a result, he claims to have first become aware that VEF had

been charging a fee, or of the extent of VEF's underperformance, only after he happened to come across a posting on his attorney's website trolling for a potential plaintiff to bring claims against Neuberger.

Bekker cannot escape the application of the statute of limitations by neglecting to give attention to the information provided to him.  It is settled law in this Circuit that a plaintiff cannot avoid being charged with actual knowledge by failing to read plan materials addressing investment performance and fees.  Nor can Bekker circumvent the statute of limitations by contending that he lacked actual knowledge of each and every comparable investment that is now cited in the Complaint.  If that were an acceptable theory, then the three-year statute of limitations would never be available because a plaintiff could simply avoid it by listing every possible comparable fund in the complaint and claim not to have been aware of the fees and performance of each and every one of those comparators.  It is sufficient that Bekker was provided with information from which to compare VEF's fees and performance to those of comparable investments, not *all* comparable investments available on the market.  Moreover, as far as Bekker was concerned, VEF's underperformance was evident from a comparison of its performance to the S&P 500 Index – information that was readily available to him from the Plan materials duly provided to him that he neglected to read or read without careful review.

Finally, Bekker cannot dodge the statute of limitations bar by contending that he was unaware of the Committee's internal deliberations concerning VEF.  Although liability for breach of fiduciary duty may ultimately hinge on an evaluation of those deliberations, Bekker's fiduciary breach claim is based entirely on circumstantial evidence of how VEF's fees and performance compared to those of other non-proprietary alternatives.  Having chosen to premise his claims on such circumstantial evidence, he cannot be heard to complain that he lacked

2

information that he did not even rely on to assert the claims in his Complaint.  His prohibited transaction claim is likewise barred because it is based on readily available information concerning the payment of fees to a Neuberger-affiliated fund, and not on any internal deliberations concerning that fund.

In summary, because it is undisputed that Bekker was in possession of the information that forms the basis of his claims more than three years prior to the commencement of his lawsuit, this Court should grant summary judgment and dismiss his claims as time-barred.

## STATEMENT OF FACTS

The following statement of facts is based on the Committee's Rule 56.1 Statement of Undisputed Material Facts ("56.1"), as well as certain declarations and exhibits cited below. Unless otherwise indicated, the facts pertain to the period prior to June 26, 2013, *i.e.*, three years before Bekker filed his original complaint.[1]

### A.    The Plan

The Plan is a defined contribution, individual account plan that is available to Neuberger employees.  (56.1 ¶ 1.)  It went into effect on January 1, 2010, after Neuberger separated from Lehman Brothers.  (*Id.* ¶ 2.)  At that time, Neuberger employees' account balances in the Lehman Brothers Savings Plan (the "Lehman Plan") were transferred to the Plan.  (*Id.* ¶ 3.)

### B.    Investment Alternatives Offered by the Plan

The Plan is participant-directed, meaning that participants direct the Plan's trustee, Fidelity Management Trust Company ("Fidelity"), where to invest their contributions among the Plan's menu of investments.  (*Id.* ¶¶ 1, 4.)  Throughout the putative class period, the Plan allowed participants to select from a large variety of investment funds, including: target-date

---

[1] Although Bekker filed his original complaint on August 2, 2016, the parties had entered into an agreement before then tolling the limitations period from June 20 to July 25, 2019.

lifecycle funds, passively-managed index funds, and actively-managed funds. (*Id.* ¶ 4.) The investment alternatives included several Neuberger-managed funds. (Declaration of Wayne Klieger ("Klieger Decl."), Ex. B, App. A.) For each Neuberger-managed fund, the Plan generally offered at least one other fund in the same asset class that was passively or actively managed by a third party. (*Id.*) The options offered had different fee structures, ranging from as low as 0.04% for one of the index funds to over 1.00% for some of the actively-managed funds. (Declaration of James A. Cropper ("Cropper Decl."), Ex. E at 7-13, Ex. F. at 7-15.) When an investment option was added or removed from the Plan's investment lineup, affected participants were promptly notified of the change. (56.1 ¶ 5.)

### C.   Information Provided to Plan Participants Regarding Their Investment Options

Through Fidelity, the Plan regularly distributed to Plan participants, including Bekker, information regarding the performance and fees of the Plan's investment options, including annual participant disclosures (the "Annual Disclosures") that were published (among other dates) on June 15, 2012 and May 30, 2013.[2] (*Id.* ¶¶ 6-7.) The U.S. Department of Labor requires that those disclosures convey, in a "manner calculated to be understood by the average plan participant," information about the past performance of all plan investments, in addition to "an explanation of any fees and expenses" associated with those investments. *See* 29 C.F.R. § 2550.404a-5(c)-(e). Consistent with those requirements, the Annual Disclosures distributed by the Plan provided the one-, five-, and ten-year performance of each Plan investment option (net of fees) and its corresponding benchmark, as well as the investment option's fees. (*Id.* ¶¶ 7-8.)

---

[2] Fidelity emailed participants to notify them of the availability of the Plan's annual disclosures for the preceding year. (56.1 ¶ 10.)

For a number of the investments, the benchmarks were the S&P 500 Index or the Russell 1000 Index.  (*Id.*)

Bekker and other participants also received information concerning their investments and other available investment options through Fidelity NetBenefits (www.401k.com) ("NetBenefits"), an online platform made available by Fidelity through which participants elected how to invest their Plan contributions.  (*Id.* ¶ 9.)   NetBenefits allowed participants to compare the characteristics, fees, and historical performance of all investment options available under the Plan.  (*Id.* ¶¶ 10-11.)  For example, NetBenefits provided participants access to a screen showing, within each asset class (*e.g.*, large cap, small cap, international), each fund's fees and average annual performance over one-, three-, five-, and ten-year time horizons.  (*Id.* ¶ 10.)  It also provided a screen describing each fund's performance relative to its benchmark over various time horizons.  (*Id.* ¶ 11.)

### D.    The Value Equity Fund

VEF is one of the funds in the Plan's diversified investment line-up.  (*Id.* ¶ 13.)  VEF is an actively-managed fund, the purpose of which is to "provide capital return opportunities . . . based on a long-term strategy that is subject to normal stock market risk over any short-term time period" by investing in companies that the "manager believes are undervalued."  (*Id.* ¶ 12.)  Prior to April 2011, VEF was a separate account available only to employees of Neuberger Berman LLC ("NB LLC") who at that time participated in the Neuberger Berman LLC Profit Sharing Plan (the "NB Plan").[3]  (*Id.* ¶ 13.)  Following Lehman Brothers' acquisition of NB LLC, VEF was closed to new investments in 2003, and participants' holdings in VEF were transferred to the

---

[3] A "separate account" is not, in and of itself, an investment vehicle, but rather is an investment strategy whereby participants' monies are invested in individual securities selected by a discretionary investment manager.

Lehman Plan.  (*Id*. ¶ 14.)  In April 2011, after Neuberger had separated from Lehman Brothers and created the Plan, VEF was converted to a collective investment trust that was available for investment by outside investors as well as Plan participants, and began to charge a fee of 1.00% of assets under management.  (*Id*. ¶ 15.)

In advance of the conversion, on March 4, 2011, Bekker and other Plan participants who at that time were invested in the VEF separate account were mailed a letter advising them of the conversion and the new fee, along with a copy of VEF's most recent "fact sheet."  (*Id*. ¶¶ 16-17.) The fact sheet, as well as subsequent versions that were available through NetBenefits, showed VEF's performance, relative to the S&P 500 Index and the Russell 1000 Value Index, for various time periods dating back to VEF's inception in 1991.  (*Id*. ¶ 18.)  It further stated that Neuberger Berman Trust Company N.A. ("Neuberger Trust") would serve as the trustee of VEF and that it would collect an annual 1.00% fee.  (*Id*. ¶ 19.)

### E.      Plaintiff Arthur Bekker's Participation in the Plan

Bekker was an employee of Neuberger (either directly or through its predecessor companies NB LLC and Lehman Brothers) from 2001 to 2015.  (*Id*. ¶ 20.)  During that time, his responsibilities included creating investment risk reports and trade reconciliations for mutual funds.  (Declaration of Myron D. Rumeld ("Rumeld Decl."), Ex. A at 19:25-20:20, 23:5-8, 23:11-23.)

Bekker has been a participant in the Plan since its inception in 2010, and was previously a participant in the NB Plan and the Lehman Plan.  (56.1 ¶ 21.)  At his deposition, Bekker professed to paying relatively little attention to his Plan investments, despite regularly receiving "a whole bunch of documents" regarding them via mail and email.  (Rumeld Decl., Ex. A at 63:9-24, 71:3-72:4.)  Although he recalls receiving the June 2012 and May 2013 annual fee disclosures, for example, he claims to have only "flipp[ed] through them."  (56.1 ¶ 22; Rumeld

Decl., Ex. A at 107:17-108:10.)  But Bekker knew quite well how to access information on his Plan investments because the same NetBenefits website housing information on his Plan investments also housed information on his personal non-Plan investments, and he frequently accessed the website to review and make changes to those investments.[4]  (56.1 ¶¶ 23-25.) Moreover, Bekker admitted that he reviewed and considered changes to his Plan investment elections from time to time, particularly when the Plan changed the investment options.  (*Id.* ¶ 24.)  When doing so, he would compare the net performance of an investment fund over the previous six to twelve months to that of an index like the S&P 500 Index.  (*Id.* ¶ 25.)

### F.    Bekker's Investments in VEF

In 2003, Bekker transferred all of his existing NB Plan holdings into VEF because of the reputation of VEF's manager, Marvin Schwartz, and because Bekker had learned that VEF would soon be closed to new investments as a result of NB LLC's acquisition by Lehman Brothers.  (*Id.* ¶ 26.)  Bekker had heard that Mr. Schwartz had a "strong track record of good performance," that he was "the head investor . . . within Neuberger," and that "high net worth clients sought him to have their accounts with him."  (*Id.*; Rumeld Decl, Ex. A at 67:21-68:8.) Because of Mr. Schwartz's reputation and VEF's historically strong performance, Bekker elected to retain his holdings in 2011, even though he was aware that VEF had performed poorly in 2008 and 2009.  (56.1 ¶ 27.)

Bekker did subsequently liquidate portions of his Plan investments in VEF on three separate occasions: April 13, 2012, February 9, 2015, and his remaining holdings on September

---

[4] Although Bekker could not recall the instances in which he accessed Plan-related information on NetBenefits, a log maintained by Fidelity showing Bekker's activity confirms that, before June 26, 2013, Bekker likely accessed: (i) webpages that contained Plan-related information on at least seventy (70) separate dates; and (ii) performance information for the Plan's investments on six (6) separate dates.  (*See* Supplemental Declaration of James A. Cropper ¶¶ 6-8.)

8, 2016.  (*Id.* ¶ 28.)  Apparently, he reviewed his Plan investments enough to see some weaknesses in VEF's performance.  He admitted, however, that he might well have liquidated his holdings in VEF sooner if he had paid closer attention to the information provided to him about VEF's performance.  (Rumeld Decl., Ex. A at 125:6-126:12, 128:5-14, 174:2-176:21.)  When shown at his deposition the VEF fact sheet as of December 31, 2012, for example, he acknowledged that it confirmed that VEF had substantially underperformed the S&P 500 Index and the Russell 1000 Value Index over the most recent quarter, the past year, and the previous two-, three-, and five-year time horizons, and that this was precisely the type of information that would normally have caused him to liquidate his holdings.   (56.1 ¶ 29.)

Bekker also admitted at this deposition that he would have been inclined to liquidate his holdings in VEF sooner if he had been aware of the imposition of a 1.00% fee in 2011 (later reduced to 0.80%).  (Rumeld Decl., Ex. A at 125:6-126:12, 128:5-14, 174:2-176:21.)  Although Bekker claimed that he had no recollection of reading the information about VEF that was mailed to his home and that, among other things, disclosed the fee, he did not dispute receiving that information.  (*Id.*)  Nor did he dispute knowing how to access the Annual Disclosures or website information, which among other things would have enabled him to contrast VEF's performance and fees to those of other funds offered by the Plan, including those that, like VEF, were benchmarked against the S&P 500 Index and/or the Russell 100 Value Index.  (56.1 ¶¶ 9-11; Cropper Decl., Exs. B-C.)  But Bekker asserted that he first learned that VEF was charging any fees only after he left Neuberger and came across a posting on his current counsel's website that was trolling for a potential plaintiff to bring an action against the Plan's fiduciaries. (Rumeld Decl., Ex. A at 127:3-14.)

### G.    Allegations in the Complaint and Procedural History

Bekker filed his original complaint on August 2, 2016 against the Neuberger Berman

Group LLC 401(k) Plan Investment Committee (the "Committee"), as well as Neuberger Trust,

Mr. Schwartz, and additional Neuberger affiliates.  The complaint asserted two claims for relief:

first, that the Committee breached its fiduciary duty, in violation of ERISA § 404, by opening

VEF in 2011 to new investments and maintaining VEF "despite its high fees and persistent and

increasing underperformance compared to readily available alternatives" (Dkt. 1 ¶¶ 8, 77-79);

and second, that, in light of Neuberger's relationship to Neuberger Trust and Mr. Schwartz, each

payment of fees violated the prohibited transaction rules under ERISA § 406 (*id.* ¶¶ 84-93).[5]

The complaint sought to create an inference of imprudence by comparing VEF's performance

and fees to those of the Vanguard Institutional Index Fund Institutional Plus Shares ("VIIIX"),

an index fund that charges fees of 0.02%, because like VEF, it was benchmarked against the

S&P 500 Index.  (*Id.* ¶¶ 48-52.)  VIIIX is identical to the Vanguard Institutional Index Fund

Institutional Shares offered by the Plan, except that the latter charges 0.04% in fees because it

requires a smaller minimum investment.  (Klieger Decl., Ex. B, App. A at 1; Vanguard Prod.

Overview, *Institutional Index Fund Institutional Plus Shares (VIIIX)*,

https://institutional.vanguard.com/VGApp/iip/site/institutional/investments/productoverview?fun

dId=0854.)

On October 3, 2016, the defendants moved to dismiss the complaint on the grounds that:

(i) in light of the aggregate gains Bekker realized on his investment in VEF, he lacked standing

to seek the requested relief; (ii) the complaint failed to state a plausible claim for fiduciary

---

[5] ERISA § 406 prohibits various party-in-interest transactions, including "transfer to, or use by or for the
benefit of a party in interest, of any assets of the plan."  29 U.S.C. §1106(a)(1)(D).

breach, including because VIIIX was not a suitable comparator to VEF for purposes of creating an inference of a fiduciary breach; (iii) the complaint failed to state a viable prohibited transaction claim because the fees paid to VEF were subject to a prohibited transaction exemption, which the complaint did not negate;[6] and (iv) there were no viable claims stated in any event against any party other than the Committee because the other parties were not fiduciaries and the relief sought against them as parties in interest was not available under ERISA.  (Dkt. 21.)  Defendants also moved for summary judgment, arguing that Bekker's claims were time-barred because, by virtue of the information underlying his claims that was provided to him through Plan disclosures, he had actual knowledge of his claims more than three years before the Complaint was filed.  (*Id.*)  In addition to opposing the motion to dismiss, Bekker cross-moved under Rule 56(d) for an order denying defendants' summary judgment motion or, in the alternative, deferring consideration of the motion until after Bekker had an opportunity to engage in discovery (Dkt. 34).  On September 27, 2018, the Court granted defendants' motion to dismiss with respect to all claims other than his prohibited transaction claim against the Committee and, with respect to that claim, granted Bekker's Rule 56(d) motion for discovery on the statute of limitations issue.  (Dkt. 76.)

The Court held that Bekker had failed to state a plausible claim for breach of fiduciary duty against any of the defendants because his allegations were "merely consistent with a possible breach of Defendants' fiduciary duties, but are not sufficiently suggestive of wrongdoing to cross the plausibility threshold."  (*Id.* at 14.)  The Court rejected Bekker's attempt to create an inference of imprudence by comparing VEF's performance and fees to those of

---

[6] ERISA § 408(b)(8) exempts from the statute's prohibited transaction rules investments in a collective investment trust maintained by an affiliated bank or trust company provided the compensation paid to the bank or trust is reasonable.  29 U.S.C. § 1108(b)(8).

VIIIX, holding that the two were not comparable since VEF, as an actively managed fund, employed a different investment strategy than the passively managed VIIIX fund.  (*Id.* at 13.)

The Court concluded that Bekker had stated a prohibited transaction claim under ERISA § 406 by alleging that defendants remitted management fees to an affiliated fund, and that the Committee's reliance on a prohibited transaction exemption could not be considered on a motion to dismiss.  (*Id.* at 17.) The Court permitted that claim to proceed only against the Committee, however, as it agreed with defendants that the relief Bekker sought was not available against the other, non-fiduciary defendants.  (*Id.* at 19-21.)

Despite its ruling, the Court did not discount the prospects of the prohibited transaction claim being dismissed on statute of limitations grounds following the completion of discovery on that issue.  It therefore directed the parties to engage in "limited targeted discovery on the issue of communications to [Bekker] concerning his Plan investments and the fees charged in connection therewith," following which the Court would entertain address the Committee's motion for summary judgment.  (*Id.* at 24.)

**H.     Allegations in the First Amended Complaint**

On October 17, 2018, Bekker moved to amend the complaint (Dkt. 82) to correct the deficiencies in his breach of fiduciary duty claim that had previously resulted in the claim's dismissal.  Although the proposed pleading once again purported to assemble a fiduciary breach claim based on a comparison of VEF's performance and fees to those of VIIIX, it also compared VEF's performance and fees to those of the ten largest actively managed large cap funds and eleven funds that Plaintiff characterized as "large cap value funds," including the MFS Value Fund that the Plan already offered and other funds that had the S&P 500 Index as their benchmark.  (*Id.*, Ex. A ¶¶ 55-62, Tables 2-3.)  Four of the funds Bekker identified were not

even in existence at the beginning of the class period.  (*See* Dkt. 94 at 6, 16 (identifying funds that were only established after 2010).)

On May 9, 2019, the Court granted Bekker leave to file his First Amended Complaint. (Dkt. 99.)  The Court held that the Complaint, as amended, resolved the deficiencies originally identified by the Court, including by comparing VEF's performance and fees to those of non-affiliated actively managed funds with comparable investment strategies. (*Id.* at 9.)  The Court nevertheless ordered, as a pre-condition to any further proceedings, that the parties engage in "discovery narrowly targeted to the issue of when Plaintiff had actual knowledge of the alleged ERISA violations that form the basis of his claims," with such discovery to be followed by a renewed motion for summary judgment on statute of limitations grounds.  (*Id.* at 10.)  The parties subsequently reached an agreement on the scope of discovery relating to the statute of limitations issue, which was approved by the Court, and that discovery was completed before this renewed motion was filed.  (Dkt. 101.)

## ARGUMENT

### THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE THE UNDISPUTED FACTS ESTABLISH THAT BEKKER'S CLAIMS ARE BARRED BY ERISA'S THREE-YEAR STATUTE OF LIMITATIONS

The targeted discovery ordered by the Court confirms, beyond any dispute, that Bekker was provided the information on which he purports to ground both his fiduciary breach and prohibited transaction claims more than three years before he filed this lawsuit.  His claims are therefore time-barred under ERISA's statute of limitations, which requires participants to bring suit within three years of the date on which they "had actual knowledge of the breach or violation."  29 U.S.C. § 1113(2).  Bekker's contention that he did not study carefully or appreciate all of the information provided to him concerning the performance and fees of VEF until years later does not prevent application of the time bar to his claims.  It is sufficient that the

relevant information about VEF, including its prior performance, the fees charged, and the fact that a Neuberger entity received fees for managing the fund, was provided to him in Plan disclosures – which Bekker concedes.

### A.    Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "[A] scintilla of evidence is not sufficient to defeat summary judgment." *Nat'l Integrated Grp. Pension Plan v. Dunhill Food Equip. Corp.*, 938 F. Supp. 2d 361, 365 (E.D.N.Y. 2013) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Rather, to defeat a motion for summary judgment, the non-moving party must come forward with evidence on which a fact-finder could reasonably find for that party. *Id*. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (citation omitted).

### B.    Applicable Legal Framework

Actions brought to challenge a fiduciary breach or prohibited transaction claim under ERISA are subject to the statute of limitations set forth in Section 413 of ERISA, which runs from the earlier of two dates: six-years from "the last action which constituted a part of the breach or violation," or three years "after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113.[7]  The Committee has moved for

---

[7] The limitations period is extended in cases of "fraud or concealment," but no such assertion has been made here.

summary judgment based on application of the three-year rule.  There are several aspects of the "actual knowledge" standard that are relevant to Bekker's claims, which are discussed below.

### 1. *"Actual Knowledge" Means Knowledge of the Facts Comprising the Claim*

To have actual knowledge, a plaintiff need not possess knowledge of the legal basis for the claim.  *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 418-19 (S.D.N.Y. 2008) (citing *Caputo v. Pfizer, Inc*., 267 F.3d 181, 193 (2d Cir. 2001)), *aff'd on other grounds by summary order*, 325 F. App'x 31 (2d Cir. 2009).  Rather, it is sufficient that the plaintiff have "actual knowledge" of the material facts comprising the claim.  *Caputo*, 267 F.3d at 193; *see also Young*, 550 F. Supp. 2d at 419 (explaining that a participant is charged with the requisite knowledge if the documents provided to him or her "sufficiently disclosed the alleged breach of fiduciary duty").  Simply stated, the facts that trigger the limitations period are the facts on which the claims in the complaint are premised.

Even though the plaintiff must ultimately prove that the decision-making process was imprudent in order to prevail on a fiduciary breach claim, the plaintiff need not possess knowledge of that internal process to plead such a claim under Rule 8.  *See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 718-19 (2d Cir. 2013) (explaining that, in the absence of direct evidence of an imprudent process, a plaintiff may meet his or her pleading obligation through inferences created from circumstantial evidence).  Rather, as this Court recognized in allowing Bekker's claims to proceed, the complaint can infer the existence of an imprudent process from objective facts, such as the availability of better performing and lower cost alternatives on the market.  Since knowledge of the internal fiduciary deliberations is not a pre-requisite for the claim, it is not a pre-requisite for commencing the limitations period either.  *See Bernaola v. Checksmart Fin. LLC*, 322 F. Supp. 3d 830, 837-39 (S.D. Ohio 2018)

(dismissing fiduciary breach claims as time-barred, reasoning that knowledge of internal deliberations was not required where plaintiff sought to make out his claim of excessive fees by comparing challenged fund's fees with those of cheaper index fund, and noting that a contrary conclusion would "essentially erase the statute of limitations for all breach-of-fiduciary-duty plaintiffs—none would be likely to have insider knowledge of their plan's decision-making process").

In *Muehlgay v. Citigroup Inc.*, 649 F. App'x 110 (2d Cir. 2016) (summary order), the Second Circuit specifically rejected the argument that a participant's ignorance of the fiduciaries' processes for evaluating an investment defeated a statute of limitations defense.  The plaintiffs in that case commenced an action for fiduciary breach, claiming that their plan's fiduciaries acted imprudently by retaining as a plan investment option Citigroup stock, which was exposed to risky subprime mortgages.  As in most cases, the plaintiffs did not base their claim on allegations concerning the deliberations of the plan fiduciaries, but rather sought to create an inference of imprudence by virtue of the fact that, during the class period, the investment's value declined, analysts recommended selling the stock, and the stock ultimately plummeted in value with the failure of subprime mortgages in 2007.  Because those facts and circumstances were public and known to plaintiffs more than three years prior to filing suit, the district court concluded that the claims were barred by the three-year statute of limitations.  In its affirmance, the Second Circuit rejected plaintiffs' contention that the statute of limitations had not run because plaintiffs were unaware of the process employed by the fiduciaries in evaluating the investment.  The Court noted that, although in their complaint, plaintiffs alleged what a prudent process would look like, they did not purport to ground their claims on the actual process followed by the defendants.  Rather, "the allegations regarding the lack of a prudent process were redundant and circular: they

assumed that any breach must have resulted from the lack of a prudent process." *Id.* at 111;  *see also White v. Chevron Corp.,* No. 16-0793, 2017 WL 2352137 (N.D. Cal. May 31, 2017) (rejecting argument that "actual knowledge" required knowledge of fiduciary deliberations regarding retention of investment, where plaintiff pled no facts regarding this alleged failure to monitor and rested claim on amount of fees paid to record-keeper), *aff'd by summary order*, 752 F. App'x 453 (9th Cir. 2018); *Bernaola*, 322 F. Supp. 3d at 838 (concluding that no knowledge of deliberations was required where plaintiff sought to create inference of tainted process by pleading availability of cheaper comparator funds).

### 2. *"Actual Knowledge" Means Possession of the Information Comprising the Claim, Not Subjective Knowledge of That Information*

In cases involving participant challenges to investment performance and fees, courts have held that the three-year time-bar runs from receipt of plan materials showing fees charged and fund performance. *Young*, 550 F. Supp. 2d at 419 n.3. Significantly, the courts have found it irrelevant "whether individual [p]laintiffs actually saw or read the[se] documents." *Id.*; *see also In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 611 (S.D.N.Y. 2015) (rejecting plaintiffs' contention that they were not aware of, or did not understand, publicly available information indicating that their plan investments in employer stock were exposed to risky subprime mortgages), *aff'd by summary order*, 649 F. App'x 110 (2d Cir. 2016); *Reeves v. Airlite Plastics, Co.*, No. 8:04CV56, 2005 WL 2347242, at *5-6 (D. Neb. Sept. 26, 2005) (holding that plaintiff who refused to look at his account statements could not disavow actual knowledge of a fiduciary breach that was apparent from the statements); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 F. App'x 3, 7 (2d Cir. 2017) (summary order) (quoting *Brown v. Owns Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010)) (dismissing as implausible claim of fiduciary breach based on allegedly concealed fee practices that were disclosed to participants and rejecting

argument that disclosures were confusing, and noting that "[a]ctual knowledge does not require proof that the individual Plaintiffs actually saw or read the documents that disclosed the allegedly harmful investments").[8]

Young is instructive on this point. In Young, the plaintiffs alleged that the defendant breached its fiduciary duty by: (i) investing in undiversified funds, and (ii) investing in funds with excessive fees relative to the fees charged by similar available investment products. Young, 550 Supp. 2d at 418. The court concluded that the claims were time-barred because plaintiffs had "actual knowledge of all of the facts that they now allege establish a breach of fiduciary duty by Defendants more than three years prior to filing this lawsuit." Id. at 419. Specifically, the court found that the plan documents provided to the plaintiffs more than three years before suit was commenced "accurately described each of the [funds] as an undiversified fund"; and made "readily apparent" the facts supporting the excessive fee claim, since they "disclosed the fees and expenses associated with the [relevant funds], including the fact that the expense ratios for some of the [funds] were higher than those for alternative investment options." Id. at 419-20. The court rejected the plaintiffs' argument that they did not have actual knowledge because there was no proof that plaintiffs saw or read the documents. Rather, it was sufficient that the relevant information was disclosed to them. Id. at 419 n.3. The court emphasized that "[a]ny interpretation of the term 'actual knowledge' that would allow a participant to disregard information clearly provided to him/her would effectively provide an end run around ERISA's limitations requirement." Id.; see also Ramnaraine v. Merrill Lynch & Co., No. 1:13–7889, 2014 WL 4386733, at *4 (S.D.N.Y. Sep. 5, 2014) (citing Young and echoing principle that

_____

[8] The Supreme Court recently granted certiorari to review a Ninth Circuit ruling that the limitations period does not run until the participant reads and understood the information. Intel Corp. Inv. Policy Comm. v. Sulyma, 139 S. Ct. 2692 (2019).

limitations bar turns on whether information was provided to plaintiff, not whether he read it),

*aff'd by summary order*, 613 F. App'x 83 (2d Cir. 2015).

The construction of actual knowledge that turns on receipt of plan materials is consistent

with a literal reading of the statute.  The requirement of "having" actual knowledge clearly

connotes possession of the relevant information, not subjective awareness of it.  If Congress

intended to require subjective knowledge, then the statute would have provided that the three-

year limitations period runs from when a participant "knew" the claim.

Construction of "actual knowledge" to mean possession – rather than subjective

awareness or understanding – of the relevant information is also consistent with a contextual

reading of the statute.  ERISA's disclosure and civil enforcement provisions reflect Congress's

desire to strike a "careful balanc[e]" between ensuring that participants have the information they

require to protect their rights and avoiding the imposition of administrative burdens that may

discourage employers from sponsoring these plans.[9]  *Conkright v. Frommert*, 559 U.S. 506, 517

(2010).  On the one hand, ERISA's disclosure rules require plan administrators to: (i) distribute,

among other information, annual investment performance and fee information, (ii) ensure the

information is written in a manner calculated to be understood by the average participant, and

(iii) publish the information in a form that is reasonably calculated to ensure "actual receipt." *See*

29 C.F.R. §§ 2520.104b-1(b)(1); 2550.404a-5(c)-(e).  On the other hand, once in receipt of these

mandated disclosures, participants are charged with "actual knowledge" of the contents of the

---

[9] ERISA § 502 allows participants and beneficiaries – alongside fiduciaries and the Secretary of Labor – to sue for breaches of fiduciary duty and prohibited transactions that cause losses to their plans.  As the Court of Appeals recognized in *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 720 (2d Cir. 2013) when imposing a demanding pleading standard for ERISA fiduciary breach claims, ERISA's disclosure rules afford ERISA plaintiffs the unique opportunity to learn the factual basis of their claims before commencing litigation.

disclosures, regardless of whether or not they have read them.[10]  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (noting that ERISA's disclosure rules "ensur[e] that 'the individual participant *knows* exactly where he stands with respect to the plan'" (emphasis added quotation omitted)).

To conclude otherwise would effectively undermine the application of the time bar because, in every ERISA case, a participant could create a factual issue as to whether he or she actually read and understood the information provided by the plan.  *See Reeves*, 2005 WL 2347242, at *5 ("A plaintiff can always disavow actual knowledge, and the inner workings of the plaintiff's mind are impossible for a defendant to prove.").  Indeed, participants would effectively be rewarded for ignoring the plan information provided to them, if doing so would enable them (or class action attorneys trolling for a suitable class representative) to later bring dated claims that would otherwise be deemed time-barred.  As courts have repeatedly recognized, "Congress did not intend the actual knowledge requirement to excuse willful blindness by a plaintiff."  *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 611 (S.D.N.Y. 2015) (internal quotation marks omitted) (citing *Young*, 550 F. Supp. 2d at 419 n.3).

Applying the correct standard, and for the reasons shown below, Bekker's claims are time-barred because he was in possession – including through statutorily mandated disclosures – of all of the information on which he has grounded his claims more than three years before he commenced this suit.

---

[10] This is different from the "constructive knowledge" standard that the Second Circuit has rejected, which affords the participant the knowledge of facts she did not possess, but which she could reasonably have been expected to learn from further investigation.  *See*, *e.g.*, *Brock v. Nellis*, 809 F.2d 753, 754 (11th Cir. 1987) (explaining that constructive knowledge means "knowledge of facts sufficient to prompt an inquiry which, if properly carried out, would have revealed appellees' misdeed").

C.      **The Fiduciary Breach Claim is Time-Barred**

The undisputed facts establish that Bekker was provided with, and thus had actual knowledge of, the information giving rise to his fiduciary breach claim.  At his deposition, Bekker admitted that he received the Annual Disclosures that were distributed to Plan participants in 2012 and 2013, more than three years before he commenced this lawsuit.  Those disclosures showed the fees and performance – over several different time periods – of VEF and the performance of VEF's benchmark.  The Annual Disclosures also showed the fees and performance of all of the other investment alternatives offered by the Plan, including the MFS Value Fund, which the Complaint identifies as a comparable fund to VEF, and various other actively managed funds that were benchmarked against the indexes that Bekker himself used as a basis for assessing underperformance.  (56.1 ¶¶ 10-11.)

Bekker thus had all the information he needed, and that his attorneys ultimately relied upon, to draw an inference of a fiduciary breach; namely, that despite strong historic returns, in recent years VEF had substantially underperformed its peers, and that its fees were higher than those of many of its peers.  Bekker, in fact, conceded that this was precisely the information that he routinely considered when evaluating his own non-Plan investments and that, if fully considered when first distributed to him, would have led him to conclude that VEF was underperforming – so much so that he should have discontinued investment in the fund sooner. He also admitted to knowing how to access additional information concerning VEF and his Plan investments on the Fidelity website, because he routinely accessed the same information for purposes of evaluating his non-Plan investments.

The fact that Bekker chose to devote less attention to his Plan investments than to his other investments, and thus to review in only cursory fashion the information provided to him concerning these investments, does not prevent application of the time bar.  As discussed *supra*

20

at 16-19, courts have endorsed the view that "actual knowledge" does not turn on whether or not a participant reads and understands the information afforded to him, and that it is sufficient that the participant possesses the information in question.  Moreover, since, in this case, Bekker admitted to accessing repeatedly the same Fidelity website to review and act on information pertaining to his non-Plan investments, his failure to review and understand the information provided by the Plan can be attributed only to willful blindness, which the case law explicitly holds cannot be used to prevent application of the limitations period.  *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d at 611; *Young*, 550 F. Supp. 2d at 419 n.3.

Application of the time bar also cannot be circumvented by Bekker's effort to load up his Complaint with performance and fee information on a whole slew of allegedly comparable funds, not all of which were even in existence during the entire putative class period.  The case law in this Circuit holds that, to have actual knowledge, a plaintiff must have knowledge of how an affiliated fund's performance and fees compared to non-affiliated alternatives available to the plan, not *all* of the non-affiliated alternatives.  *Cf. Leber v. Citigroup 401(k) Plan Inv. Committee*, No. 07-9329, 2014 WL 4851816, at *5 (S.D.N.Y. Sept. 30, 2014)  (declining to find a claim time-barred where undisputed facts established that plaintiffs were not afforded any information about comparable unaffiliated funds with lower fees).  *See also Bernaola*, 322 F. Supp. 3d at 830, 840-41 (concluding that plaintiff had actual knowledge of comparator fund data by virtue of plan offering mix of affiliated and non-affiliated funds).  Here, Bekker was in possession of information about the MFS Value Fund, *i.e.*, a fund he himself now claims was a better option than VEF, and that is all that the law requires.

A contrary conclusion would render the statute of limitations meaningless, since a plaintiff can always identify – after the fact and in anticipation of a limitations defense – some

other fund or funds of which he or she was not previously aware.  Moreover, in this case, the argument rings hollow because Bekker admitted that he possessed the information from which he himself would have determined that VEF had substantially underperformed its peers – if only he had taken the time to read it carefully.

Finally, for the reasons discussed *supra*, Bekker cannot resist application of the statute of limitations bar by contending that he was unaware of the Committee's internal deliberations concerning its decision to reopen and retain VEF as a Plan investment.  (Dkt. 102 ¶ 18.)  In this case, Bekker has elected to meet his pleading burden through circumstantial evidence, *i.e*., by comparing VEF to better performing and cheaper non-affiliated alternatives – all information he had more than three years before commencing this action.  Having opted for this approach, he cannot now invoke his ignorance of the Committee's deliberations in order to avert dismissal.

In short, because Bekker had knowledge of the facts giving rise to his fiduciary breach claim more than three years before he commenced this suit, this claim is time-barred.

### D.      The Prohibited Transaction Claim is Time-Barred

The application of the time bar is even more straightforward with respect to Bekker's prohibited transaction claim, because knowledge of the alleged prohibited transaction, standing alone, is knowledge of the claim.  *See Zang v. Paychex*, 728 F. Supp. 2d 261, 267 (W.D.N.Y. 2010) (quotations omitted) ("where the transaction is facially illegal, awareness of the occurrence of the transaction itself does constitute knowledge of facts necessary to understand that breach of a fiduciary duty occurred").

Here, the "transaction" that is alleged to be prohibited is the collection of fees for VEF, a fund affiliated with the Plan's sponsor.  There is no question that Bekker possessed the information concerning this "transaction."  At his deposition, Bekker admitted to always knowing that VEF was a fund affiliated with Neuberger, and managed by Marvin Schwartz.  In

fact, it was his awareness of Mr. Schwartz's role with VEF that influenced his decision to invest in VEF in the first place.  And although he claims not to have been aware of the fee charged by VEF, there is no question that this information was set forth in Plan communications that he admits to having read and received.  His claim is therefore untimely.  *See Patterson v. Capital Grp. Cos.*, No. 17-4399, 2018 WL 748104, at *3 (C.D. Cal. Jan. 23, 2018) (prohibited transaction claims in suit involving affiliated funds held time-barred under three-year statute of limitations because participant disclosures showed that the plan's investment options were affiliated and that the plan sponsor received fees for the funds); *Brotherston v. Putnam Invs., LLC*, No. 15-13825, 2017 WL 1196648, at *11 (D. Mass. Mar. 30, 2017) (holding prohibited transaction claims involving affiliated funds time-barred under three-year statute of limitations because the plan's enrollment kit showed that the plan's investment options were affiliated and that the plan sponsor extracted fees for the funds), *vacated on other grounds*, 907 F.3d 17 (1st Cir. 2018); *Figas v. Wells Fargo & Co.*, No. 08-4546, 2010 WL 2943155, at *2 (D. Minn. Apr. 6, 2010) (holding prohibited transaction claims time-barred because plaintiff admitted that she knew the plan's investment options were affiliated and that investment management fees were paid as a result of the investments).

In his response to defendants' first motion for summary judgment, Bekker raised two arguments as to why the statute of limitations defense was not viable: first, the prohibited transactions continued "with each payment by the Plan of fees to Neuberger"; and second, under the facts of this case, knowledge of the "transaction" was insufficient to constitute "actual knowledge" for statute of limitations purposes because the fee payments for VEF were not "inherent breaches" that would have put Bekker on notice of his claims, without some concomitant knowledge of how or why the decision was made to retain the fund as an investment

option.  Both of Bekker's arguments are legally meritless.

Bekker's first argument fails because the Second Circuit in *Muehlgay v. Citigroup Inc.*, 649 F. App'x 110, 112 (2d Cir. 2016) specifically rejected a "continuing-violation" theory as a means of extending the three-year statute of limitations.  In so ruling, the Court cited to *Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 521 (9th Cir. 1991), which held that "if the breaches are of the same kind and nature and the plaintiff had actual knowledge of one of them more than three years before commencing suit, § 1113(a)(2) bars the action."  *See also Zang*, 728 F. Supp. 2d at 267 (holding that prohibited transaction claim arising from revenue sharing arrangement that was fully disclosed more than three years prior to commencement of lawsuit was time-barred, and not revived by any subsequent payments that derived from the revenue-sharing arrangement).  Similarly, here, Bekker's knowledge that VEF was an affiliated fund and that fees were paid for its management, standing alone, triggered the start of the three-year statute of limitations, and the ensuing fee payments do not restart the three-year limitations period.

Bekker's second argument fails for the simple reason that a prohibited transaction claim is not predicated on any allegations regarding the process pursuant to which the decision was made to engage in the challenged transaction.  It is the transaction itself that gives rise to the claim.  *Young*, 550 F. Supp. 2d at 419 (knowledge of a transaction that is inherently a breach is sufficient to start the running of the three year statute of limitations) (citing *Caputo*, 267 F.3d at 193).  In any event, Bekker could not assert lack of knowledge of the internal deliberations as a reason for evading the statute of limitations because, as previously stated, his Complaint makes no allegations regarding that process, and instead infers an imprudent process from the fee and performance information of which he was made aware.

## <u>CONCLUSION</u>

For the reasons discussed above, this Court should grant summary judgment for the

Committee and dismiss the First Amended Complaint.

Dated:   September 13, 2019
         New York, NY

**PROSKAUER ROSE LLP**

By:      */s/ Myron D. Rumeld*
         Myron D. Rumeld

Deidre A. Grossman
Neil V. Shah
Eleven Times Square
New York, NY 10036
(212) 969-3021
mrumeld@proskauer.com

*Counsel for the Committee*

25