UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

ARTHUR BEKKER, *individually, on behalf of a*
*class of all other persons similarly situated, and on*
*behalf of the Neuberger Berman 401(k) plan,*

No. 16-cv-06123-LTS-BCM

Plaintiff,

v.

NEUBERGER BERMAN GROUP 401(K) PLAN
INVESTMENT COMMITTEE,

Defendant.

----------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

## I.  INTRODUCTION

This Settlement is the culmination of nearly four years of litigation, resulting in a $17

million Settlement Fund for the benefit of participants in the Neuberger Berman 401(k) Plan (the

"Plan"). Plaintiff filed his action in 2016, at a time when nearly half of the Plan's assets were

invested in a single investment — the Value Equity Fund ("VEF").

Plaintiff's complaint alleges, among other things, that the fiduciary committee ("the

Committee" or "Defendant") responsible for overseeing the Plan breached its duties under the

Employee Retirement Income Security Act of 1974 ("ERISA") by allowing the Plan to pay

excessive fees to a Neuberger affiliate and by keeping the VEF in the Plan despite deteriorating

performance and high fees. Defendant denies any breaches or ERISA violations.

The proposed settlement provides meaningful monetary relief to class members.[1] Plan participants will receive robust compensation.[2] Under the Plan of Allocation, the Class will share the $17 million Settlement Fund, after deductions for court approved attorneys' fees and costs and administrative costs, based on a formula that takes into account the alleged injury to each class member. Because class members are readily identifiable from the Plan's records (maintained by Fidelity, the Plan's recordkeeper), they will receive their monetary distribution without the need to complete or submit a claim form to prove eligibility. Because these records show approximately 1,500 VEF investors, per-participant recoveries will be meaningful compensation toward securing Class Members' retirement savings. Because the settlement can be direct-deposited or rolled into the Plan or another qualified retirement account, these payments will receive the same tax-favored treatment as other assets in such accounts (for those Class Members who so elect), providing even more value to the Class.

The Settlement was the product of extensive arms-length negotiation with the assistance of Judge Morton Denlow (Ret.) of JAMS. During the Parties' September 26, 2019 all-day mediation, no resolution was reached. However, the parties engaged in a series of continuing conversations before and after the removal of the VEF from the Plan and before and after the U.S. Supreme Court's decision in *Intel v. Suylma*, the outcome of which the parties agreed would figure significantly in resolving this lawsuit. On March 23, 2020, the Parties reached an agreement in principle and, on May 27, 2020, finally agreed to and executed the Settlement

---

[1] Because the VEF was removed from the Plan after Plaintiff sued, there is no need for injunctive or prospective relief.

[2] The fully executed settlement agreement, dated June 10, 2020, ("Settlement") is attached to Plaintiff's Motion as Exhibit A. The Declaration of Class Counsel, Gregory Porter ("Porter Decl."), is attached hereto as Exhibit A to Plaintiff's Memorandum in Support.

before the Court. In light of all of the relevant factors, including the litigation risks and delay further prosecution of this action would inevitably entail, the proposed Settlement warrants preliminary approval.

Plaintiff requests that the Court: (1) preliminarily certify the Class for settlement purposes; (2) appoint Plaintiff's counsel as Class Counsel; (3) preliminarily approve the proposed Settlement; (4) approve the proposed form and method of notice to the Class; and (5) schedule a hearing at which the Court will consider final approval of the Settlement, including Class Counsel's motion for fees and costs and the payment of a case contribution award to the Plaintiff.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

Plaintiff alleges that Defendant was a fiduciary to the Plan and that it engaged in breaches of fiduciary duty under 29 U.S.C. § 1104(a) and prohibited transactions under 29 U.S.C. § 1106.[3] In particular, Plaintiff alleges Defendant failed to make decisions concerning the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that prudent fiduciaries acting in a like capacity and familiar with such matters would have used. These claims center around the continued inclusion of the VEF in the Plan.

Defendant denies the claims and all liability. It argues, among other things, that (a) the Plan offered an appropriate investment mix for participants, both proprietary and non-proprietary and across different asset classes, risk profiles, fee structures, and outcome opportunities; (b) the fees charged by the VEF were less than Marvin  Schwartz — the VEF's manager — charged outside investors for his services; (c) the VEF provided participants with strong performance before and

---

[3] All capitalized terms shall have the same meaning as defined in the Settlement.

during the Class Period; (d) the Plan was better off having concentrated its investments in the VEF than it would have been if the investments were more diversified across stock and bonds; (e) Neuberger met the Prohibited Transaction Exemption requirements to offer its own products as investment options for the Plan; and (f) Plaintiff's comparator funds were either offered in the Plan alongside the VEF, or not sufficiently similar to the VEF to award damages based on their alternative performance.

### B. Procedural History, Motions Practice, And Discovery

Plaintiff filed his initial Complaint on August 2, 2016. Dkt. 1. The Complaint identified Neuberger Berman Group LLC, Neuberger Berman LLC, Neuberger Berman Trust Company N.A., Marvin Schwartz, the Neuberger Berman Group 401(k) Investment Committee, and the individual members of the Committee (as Jane and John Does) as defendants. *Id*. All defendants moved to dismiss and for summary judgment, arguing that Plaintiff lacked standing, failed to allege fiduciary status against most of the defendants, and that his claims were barred by a shortened ERISA statute of limitations applicable where a plaintiff has "actual knowledge" of his claim. Dkt. 21. The Court dismissed defendants other than the Neuberger Berman Investment Committee ("the Committee"), but permitted discovery as to whether Plaintiff had "actual knowledge" of his claim. Dkt. 76. Plaintiff filed an Amended Complaint (Dkt. 102) against the Committee alone, and the Committee again moved for Summary Judgment concerning the statute of limitations. Dkt. 106. The Court permitted discovery on that issue, causing the Parties to engage in document discovery, including third-party discovery, and the deposition of Plaintiff, Arthur Bekker. Separately, in the interest of continuing settlement discussions, and at Plaintiff's request, the Committee produced a complete set of meeting agenda, minutes, and materials, including assessments of the VEF conducted by an independent investment consultant, Mercer,

at various times during the Class Period as well as VEF investment information for each Plan participant during the relevant period.

The parties briefed the statute of limitations issue following this discovery, and again following the U.S. Supreme Court's decision in *Intel v. Sulyma*, a case addressing whether a plaintiff is presumed to have "actual knowledge" of material published on plan websites or mailed to plan participants. The Court's consideration of the motion in light of the *Intel v. Sulyma* decision was pending at the time of the settlement.

## III.        THE TERMS OF THE PROPOSED SETTLEMENT

The complete Settlement Agreement is attached as Exhibit A. The key terms are summarized below. The proposed Settlement Class is defined as:

> All participants in the Neuberger Berman Group 401(k) Plan during the Class Period who had any portion of their Plan accounts, at any time during the Class Period, invested in the VEF. Excluded from the class are: (i) Defendant Neuberger Berman Group 401(k) Plan Investment Committee and those of its current and past members who served from June 15, 2010 through August 2, 2016; (ii) non-party Marvin Schwartz; and (iii) the beneficiaries, immediate family members, estates, and executors of (i) and (ii).

Class Action Settlement Agreement ("Settlement"), ¶ 2.36, attached as Exhibit A.  The Class Period is defined as June 15, 2010 through December 16, 2019. Settlement, ¶ 2.5.

### A. Benefits to the Class

In exchange for the dismissal of the Action and for entry of the Judgment as provided for in the Settlement Agreement, Defendant will cause $17,000,000 (the "Gross Settlement Amount") to be deposited in an interest-bearing settlement account (the "Gross Settlement Fund"). The Gross Settlement Fund will be used to pay the participants' recoveries as well as Class Counsel's Attorneys' Fees and Costs, Settlement Administrative Expenses, and Class Representative's

Compensation Award as described in the Settlement Agreement.  It will also be used to pay for the cost for an Independent Fiduciary to evaluate the Settlement as required by ERISA.

Additionally, Defendant has already removed the VEF from the Plan, negating the need for additional relief through additional affirmative plan changes.

### B. Notice and Administration

The notice costs and all costs of administration of the Settlement will be paid from the Gross Settlement Fund. The Settlement Administrator shall be responsible for disseminating the Class Notice, establishing a website for case documents, establishing an interactive voice response system to respond to enquiries, and processing objections. The Settlement Administrator shall also implement the Plan of Allocation and make payments to former participants in the Plan and provide the current trustee of the Plan with a spreadsheet reflecting each current participant's distribution from the Net Settlement Fund.

The Settlement Administrator or other entity approved by the Parties, shall serve as Escrow Agent, and shall be responsible for establishing and maintaining a qualified settlement trust to hold the Settlement Amount and Net Settlement Fund. The Escrow Agent shall invest the assets of the qualified settlement trust pursuant to the agreement with it and Plaintiff's counsel.

Plaintiff requested bids from four Settlement Administrators with experience administering ERISA settlements concerning alleged fiduciary breaches from the selection and monitoring of Plan investments. After reviewing the bids, Plaintiff proposes KCC to be the Settlement Administrator. The proposed Settlement Administrator's summary of experience and proposal for Settlement Administration and Escrow Agent services is Exhibit B to the Porter Declaration.

### C. Compensation Award to Named Plaintiff

A Compensation Award to the Named Plaintiff in an amount to be approved by the Court will also be paid out of the Gross Settlement Fund. Plaintiff intends to seek $20,000 for Mr.

Bekker. This amount is well in line with precedent recognizing the value of individuals stepping forward to represent a class — particularly in a case, like this one, where the potential benefit to any individual does not outweigh the cost of prosecuting the claim and there are significant risks, including the risk of no recovery, the risk of alienation from their employers and peers, and the risk of uncompensated time and energy devoted to a lawsuit with uncertain prospects for success. *See e.g. In re J.P. Morgan Stable Value Fund ERISA Litigation,* 2019 WL 4734396, at *6 (S.D.N.Y.  2019) (approving $20,000 incentive awards to named plaintiffs in ERISA class action); *Beesley v. Int'l Paper Co.*, 2014 U.S. Dist. LEXIS 12037, *13–14 (S.D. Ill. Jan. 31, 2014) (approving compensation of $25,000 each to six plaintiffs in 401(k) fee settlement, noting that "ERISA litigation against an employee's current or former employer carries unique risks and fortitude, including alienation from employers or peers."). The total award requested for the Named Plaintiff represents only 0.1% of the Settlement Fund.

### D. Release of Claims

In exchange for payment of the Settlement Amount and satisfaction of the conditions required by the Settlement Agreement, Plaintiff and the Settlement Class will release "any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees and costs, whether under local, state or federal law, whether by statute, contract, common law or equity, whether brought in an individual, representative or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, against the Released Parties through the date the Court enters the Final Approval Order and Judgment (including, without limitation, any Unknown Claims) arising out of or in any way related to: (a) the conduct alleged in the Complaint or the First Amended Complaint and any subsequent pleading or legal memorandum filed in the Action; (b) the selection, retention, and monitoring of the VEF as a Plan investment

option; (c) the performance, fees, and any other characteristic of the VEF; and the approval by the Independent Fiduciary of the Settlement." Settlement ¶ 2.31.

### E. Attorneys' Fees and Costs

Class Counsel will request attorneys' fees to be paid out of the Gross Settlement Fund in an amount not to exceed one-third of the Gross Settlement Amount, or $5,666,666, as well as reimbursement of costs incurred. A one-third fee is consistent fees awarded in similar cases in this complex area of law. *See J.P. Morgan Stable Value Fund ERISA Litigation*, 2019 WL 4734396, at *4 (S.D.N.Y. 2019) (citing cases).

An application for attorneys' fees and costs, and for Plaintiff's award, will be filed by the date established by the Court prior to the deadline for Class Members to object to the Settlement, and it will be posted on the Settlement website.

### IV.    ARGUMENT

### A. The Court Should Certify the Class for Settlement Purposes

As part of the Settlement, the Parties request that the Court certify that proposed Settlement Class, as defined in Section III above, for purposes of settlement only.

Certification of a class is required where the plaintiff demonstrates the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. As in other ERISA class action, those requirements are easily met here for settlement purposes.

### 1.  The Class satisfies the requirements of Rule 23(a)

Rule 23(a) provides that a class must satisfy four preconditions: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Those conditions are met here.

8

### a. The Class is sufficiently numerous

As to numerosity, the Second Circuit has held that while "numerosity is not an exact science," generally there is a "'a presumption that joinder is impracticable' when the class exceeds 40 members." *Douglin v. GreatBanc Trust Co., Inc*., 115 F.Supp.3d 404, 409–10 (S.D.N.Y. 2015), citing *Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.,* 659 F.3d 234, 252 (2d Cir. 2011) and *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995), *see also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 203 (S.D.N.Y. 2006) ("In this Circuit, numerosity is presumed at forty class members."). Here, the Plan's Form 5500 filed with the United States Department of Labor indicates that at year end 2017 the Plan had 2,567 participants with account balances, including one deceased participant whose beneficiaries were entitled to benefits. Porter Decl. at ¶ 9. While not all of those participants invested in the VEF, the VEF represented over $425 million out of a total of $1.1 billion in the Plan. *Id*. Quarterly data provided to identify class members indicates between 1,400 and 1,500 individuals will be members of the Class. Accordingly, numerosity is easily satisfied.

### b. There are common questions of law and fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Generally, commonality is met if the named plaintiff's and classes' claims share a common question of law or of fact. *Beach v. JPMorgan Chase Bank, National Association*, No. 17-cv-563, 2019 WL 2428631, at *6 (S.D.N.Y. June 11, 2019), *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C*., 504 F.3d 229, 245 (2d Cir. 2007). Courts typically find that ERISA cases like this one raise common questions. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries."); *see also In re Marsh*

9

*ERISA Litig.*, 265 F.R.D. 128, 142–43 (S.D.N.Y. 2010) ("By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class actions."); *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *5 (S.D.N.Y. 2017) (noting that "numerous courts have found commonality where plaintiffs challenge a 401(k) plan's retention of investment products, including proprietary funds, alleging excessive fees")

Here, the common questions of law and fact include:

(a)     who are the fiduciaries liable for the remedies provided by ERISA § 409(a), 29 U.S.C. §1109(a);

(b)     whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by causing the Plan to invest in the VEF and by failing to prudently remove the VEF from the Plan;

(c)     whether the decision to include and not to remove the VEF was made solely in the interests of Plan participants and beneficiaries;

(d)     what are the losses to the Plan resulting from each breach of fiduciary duty;

(e)     whether Defendant caused the Plan to engage in prohibited transactions;

(f)      whether monies received and retained by Defendant were plan assets;

(g)     and what are the profits of any breaching fiduciary that were made through the use of Plan assets by the fiduciary.

Defendant's alleged violations of ERISA are the same for all Class Members. The commonality requirement is met here.

### c.  The typicality requirement of Rule 23(a) is met.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality requires that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999).

However, "[t]he typicality requirement does not require that all of the putative class members' claims are identical." *In re March ERISA Litig.*, 265 F.R.D. at 143. "Rather, the focus of the typicality inquiry concerns whether each class member's claim arises from the same course of events, and whether each class member makes similar legal arguments to prove the defendant's liability. *Id*. (citing *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001). Claims are typical when they arise from the same event, practice or course of conduct that gives rise to the claims of other class members and when the plaintiffs' claims are based on the same legal theory. Differences that related to damages do not defeat typicality. *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 157 (S.D.N.Y. Feb. 27, 2017) ("it is well established that typicality does not require identical facts and does not require that damages be identical among class members.")(internal citations omitted)

Defendant had a fiduciary duty to ensure that the expenses of the Plan were reasonable and that the decision to continue offering the VEF was made solely in the interests of the Plan. 29 U.S.C. §1104(a)(1). No one group of Class Members will gain at the expense of another and each Class Member has an equal interest in recovering his or her pro rata share of the loss.

Plaintiff has made it clear that he is challenging actions committed not only against him, but against every Plan participant who invested in the VEF. Not surprisingly, "[t]he typicality

requirement is often met in putative class actions brought for breaches of fiduciary duty under ERISA." *In re March ERISA Litig.*, 265 F.R.D. at 143.

The Class can and should be certified so as to include the participants in the Plan during the class period because Plaintiff alleges all participants during the class period were harmed and, under the settlement, all are eligible to benefit. Accordingly, Plaintiff's claims with respect to these allegations are typical of the Class, and the requirement of Rule 23(a)(3) is met.

The class satisfies the typicality requirement of Rule 23(a) because Plaintiff's claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Defendant as alleged herein, and all members of the Class are similarly affected by Defendant's wrongful conduct. Plaintiff was an investor in the VEF during the vast majority of the Class Period, removing his investment in the VEF only after the litigation commenced. Porter Decl. ¶ 10.

### d.  The proposed Class Representative and his counsel will fairly and adequately protect the interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The purpose of the adequacy requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Adequacy "typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019), quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Here, Plaintiff has and will continue to fairly and adequately represent the Class. Mr. Bekker has been actively engaged throughout this long running litigation, he prepared for and sat for a deposition, and provided documents to counsel used to draft the Complaint. He has no interests antagonistic to those of other members of the Class, and he is committed to the vigorous prosecution of this action.

Plaintiff's counsel in this case is well-qualified as described in detail in the Declaration of Gregory Porter. Porter Decl. ¶¶ 3–4.  Class Counsel is experienced in class action litigation generally and, in particular, class litigation arising from breaches of fiduciary duties to retirement plans under ERISA. In settlement discussions, the Class was represented by attorneys with decades of experience bringing, settling, and trying cases on behalf of retirement plan participants alleging imprudence, disloyalty, and prohibited transactions under ERISA. Class Counsel is intimately familiar with this unique and complex area of law and has represented plaintiffs in nearly half of all cases nationwide alleging fiduciary breaches from the inclusion of proprietary investment products in a 401(k) plan. Porter Dec., ¶¶ 4. Plaintiff's counsel satisfy Rule 23(a)(4) and 23(g).

Both prongs of the adequacy requirement are satisfied here.

### 2.  The proposed Settlement Class meets the requirements of Rule 23(b)

In addition to meeting the requirements of Rule 23(a), the proposed class must also satisfy at least one of the three subsections of Rule 23(b).

Plaintiff's claims should be certified under Rule 23(b)(1). That Rule provides for certification where:

> the prosecution of separate actions by … individual members of the class would create a risk of (A) inconsistent or varying adjudications … which would establish incompatible standards for the party opposing the class, or (B) adjudications with respect to

> the individual members of the class which would be dispositive of
> the interest of the other members not parties to the adjudications.

*Fed. R. Civ. P.* 23(b)(1)(A), (B). Rule 23(b)(1)(A) "considers possible prejudice to the

defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re

IKON Office Solutions*, 191 F.R.D. 457, 466 (E.D. Pa. 2000). In both cases, the court is

concerned with the problems that would be caused if each potential class member were free to

pursue his or her own lawsuit.

The Rule 23 Advisory Committee noted that "an action which charges a breach of trust …

by [a] … fiduciary similarly affecting the members of a large class of … beneficiaries" calls for

certification under this section. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999)

(citing same).

Cases filed by 401(k) plan participants for breach of fiduciary duty have been certified as

non-opt out classes under Rule 23(b)(1). *E.g.*, *In re Polaroid ERISA Litig.*, 2006 WL 2792202, at

* 11 (breach of fiduciary duty alleged by 401(k) plan participants; Rule 23(b)(1) class certified);

*DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. at 80 (same); *In re WorldCom, Inc. ERISA Litig.*,

2004 WL 2211664, at * 3 (same); *Banyai,* 205 F.R.D. at 165 (same); *In re IKON Office

Solutions*, 191 F.R.D. at 466 (same); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172,

180 (S.D.N.Y. 2006). *Cunningham v. Cornell Univ*., No. 16-cv-6525, 2019 WL 275827

(S.D.N.Y. Jan. 22, 2019); *Sacerdote v. New York Univ.*, No. 16-6284, 2018 WL 840364

(S.D.N.Y. Feb. 13, 2018); *Moreno v. Deutsche Bank Ams. Holding Corp*., No. 15-9936, 2017

WL 3868803 (S.D.N.Y Sept. 5, 2017); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D.

145 (S.D.N.Y. 2017).  As one court has found: "[b]ecause of ERISA's distinctive 'representative

capacity' and remedial provisions, ERISA litigation of this nature presents a paradigmatic

example of a (b)(1) class." *See Kolar v. Rite Aid Corp.*, No. 01-1229, 2003 WL 1257272, at * 3 (E.D. Pa. Mar. 11, 2003) (certifying settlement class).

This action is no exception. Plaintiff, and the members of the Class he seeks to represent, are the participants of the Plan. They claim that the Defendant breached its ERISA-mandated fiduciary duties owed to the Plan. They sue in a representative capacity to recover the Plan's losses arising out of the breaches. "In light of the derivative nature of ERISA §502(a)(2) [29 U.S.C. §1132(a)(2)] claims, breach of fiduciary duty claims brought under §502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009).

This class can be certified under Rule 23(b)(1)(A) because, without question, "inconsistent or varying adjudications with respect to individual class members [] would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). The risk of establishing inconsistent standards under ERISA is particularly strong where, as here, the central element of the prudence claims is not individualized: the fiduciary duties are owed to, and carried out for, the plan. Thus, a court adjudicating a suit by an individual plaintiff would determine the issues of the existence of the fiduciary duty and its breach not in relation to the individual plaintiff, but in relation to the entire plan since the fiduciaries' actions are taken as to the plan as a whole. The language of ERISA §409 makes clear that the liability of the fiduciary is to the *plan*, and that a fiduciary found liable for damages due to a breach must reimburse the *plan*. Thus, as the Supreme Court stated: "Section 502(a)(2) provides for suits to enforce the liability-creating provisions of §409, concerning breaches of fiduciary duties that harm *plans." LaRue v. DeWolff, Boberg & Assoc., Inc.,* 552 U.S. 248, 251, (2008) (emphasis

added). This produces not only a significant risk, but a near certainty that separate actions would establish differing standards for the duty under ERISA owed by a fiduciary to the Plan. The tremendous number of plan participants only enhances the likelihood of separate actions producing inconsistent and incompatible results.

Indeed, the very purpose of ERISA is to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). As part of that regime, ERISA requires that similarly situated plan participants be treated the same. *See, e.g.*, 29 C.F.R. §2560.503-1(b)(5) (claims procedures regulation requiring that plan provisions be "applied consistently with respect to similarly situated claimants[.]"); *Elser v. I.A.M. Nat'l Pension Fund*, 684 F.2d 648 (9th Cir. 1982), *cert. denied*, 464 U.S. 813 (1983); *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (citing cases) (ERISA requires plan administrators to treat all similarly situated participants in a consistent manner).

The Defendant here has common fiduciary duties to all Plan participants. If class members were required to bring (and could practically bring) separate, individual actions against Defendant regarding Defendant's identical actions, there very well could be inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Indeed, if class certification is denied in this case, adjudication of Plaintiff's claims raise the specter of incompatible rulings. The amount of the payment, or the fact of whether an individual should be paid at all, may conflict if different courts calculate damages in different ways or if one court orders that no payment be made while another requires payment to a similarly situated participant. With respect to equitable relief, the conflict is even clearer. One court might order the removal of Plan fiduciaries while another holds they should remain.

"[W]hether defendant breached its fiduciary duty is a question common to all potential cases and could, if tried in separate actions, result in wholly inconsistent adjudications". Westman v. Textron Inc., 151 F.R.D. 229, 231 (D. Conn. 1993). Other courts agree. *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N. D. Cal. 2008); *Stanford*, 2009 WL 3075390 at *14 (E. D. Pa. Sept. 24, 2009) ("the risk of inconsistent orders arising from parallel plan-wide and individual account claims satisfies Rule 23(b)(1)(A)"); *In re Merck*, 2009 WL 331426 at *11 n.7 (D.N.J. Feb. 10, 2009) ("If one court ordered the removal of a fiduciary, and another court enjoined that fiduciary in a particular way, incompatible standards of conduct would be established"); *Jones*, 257 F.R.D. at 193–94 (W.D.Mo. 2009) ("If one court ordered full restitution to the Plan and removal of the fiduciaries, but another ordered differently, those orders would establish incompatible standards of conduct for Defendants").

If certification were not granted, and the class members pursued their claims individually in multiple jurisdictions, the parties could face numerous inconsistent rulings. The Defendant could find itself bound by conflicting rulings and unable to administer the Plan. *Rogers,* 2006 WL 794734, at *10. Absent class certification, the possibility of multiple Plan-wide monetary awards — since each suit must be brought on behalf of the Plan — also looms. *Id.* See *Kolar*, 2003 WL 1257272, at *3 ("Palpably, 'inconsistent or varying adjudications' would be intolerable for the employees of the same employee benefit plans."). Since ERISA fiduciaries are under a duty of impartiality requiring them to treat similarly situated participants and beneficiaries alike, "[w]hether defendant breached its fiduciary duty is a question common to all potential cases and could, if tried in separate actions, result in wholly inconsistent adjudications." *Westman v. Textron, Inc.,* 151 F.R.D. 229, 231 (D. Conn. 1993); *see also Morse v. Stanley*, 732 F.2d 1139,

1145 (2d Cir. 1984); Restatement (Second) of Trusts §232 (1959). For these reasons, the Court

should certify the Class under Rule 23(b)(1).

> **B. The Court Should Grant Preliminary Approval Of The Settlement Because It Is Fair, Reasonable And Adequate.**

> **1. The standards for preliminary approval.**

There is a strong judicial policy favoring the negotiated resolution of litigation. *Wal-Mart*

*Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116–17 (2d Cir. 2005); *TBK Partners, Ltd. V. W.*

*Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982). This is especially true with respect to class

actions. *Wal-Mart Stores, Inc.*, 396 F.3d at 117. For these reasons, "the compromise of complex

litigation is encouraged by the courts and favored by public policy." *Id*.; see also *Bano v. Union*

*Carbide Corp.*, 273 F.3d 120, 129–30 (2d Cir. 2001).

The approval of a proposed class action settlement occurs in a two-step process. The first

step requires the Court, in the exercise of its discretion, to preliminarily determine whether the

proposed Settlement falls within the range of possible approval. *In re Initial Pub. Offering Sec.*

*Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).

Rule 23, as amended in 2018, provides direction to federal courts considering whether to

grant preliminary approval of a class action settlement. Fed. R. Civ. P. 23(e), Committee Notes.

"[I]n weighing a grant of preliminary approval, district courts must determine whether 'giving

notice is justified by the parties' showing that the court will likely be able to: (i) approve the

proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the

proposal.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11,

28 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)). Therefore, although the factors

cited in Rule 23(e)(2) "apply to final approval, the Court looks to them to determine whether it

will likely grant final approval based on the information currently before the Court." *Id.* (citing

Fed. R. Civ. P. 23(e)(2). Those factors are:

> (A) the class representatives and counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

>> (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

>> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 330 F.R.D. at 29.

Prior to the December 1, 2018 amendments, courts in the Second Circuit traditionally considered nine *Grinnell* factors in evaluating whether a settlement is "fair, reasonable, and adequate." *Id,* citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).

The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.,* at 28–29.  In the wake of the 2018 amendment to Rule 23, courts in this Circuit have continued to evaluate settlements according to the *Grinnell* factors on the grounds that the new Rule 23 factors were intended to supplement rather than displace them. *See In re GSE Bonds Antitrust Litig*., 414 F. Supp. 3d 686, 700 (S.D.N.Y. 2019).

Plaintiff will address each of these factors to the extent they are applicable, many of which overlap.[4]

### C. The class is adequately represented and negotiations were arm's length.

Plaintiff and his counsel have and will adequately represent the class for all of the reasons discussed above. *See also* Porter Decl. ¶¶ 2–5.

In addition, the negotiations that led to the proposed Settlement were conducted at arm's length with the assistance of an independent mediator during a full-day mediation, in addition to multiple discussions that were held prior to and after the mediation. The use of a mediator in settlement negotiations further supports the presumption of fairness and the conclusion that the Settlement achieved was free from collusion. *In re Giant Interactive Group, Inc. Sec. Litig*., No. 07-10588, 2011 WL 5244707, at *4 (S.D.N.Y. Nov. 2, 2011); *In re AOL Time Warner, Inc. Sec. & ERISA Litig*., No 02-5575, 2006 WL 903236, at *7 (S.D.N.Y. Apr. 6, 2006) (noting that involvement of mediator in settlement negotiations help "ensure that the proceedings were free of collusion and undue pressure").

The Rule 23(e)(2)(A) and (B) factors support preliminary approval.

---

[4] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv), and since notice of the Settlement has not yet been sent to class members, the reaction of the class (*Grinnell* factor #2) cannot be evaluated yet.

**D. The Relief Provided Is Adequate Taking Into Account the Costs, Risks And Delay Of Further Litigation.**

Both Rule 23(e)(2)(C)(i) and *Grinnell* factors one, four, five, six and nine, address the amount obtained in light of the cost, risks and likely duration of continued litigation, including the risks of establishing liability, damages, and class certification.

Here, the Settlement Class will receive considerable benefits from the $17 million Settlement Fund now, instead of years from now if the case were ultimately successful at trial. This distinction is meaningful. ERISA class actions like this one tend to have significant life-cycles. In one such case, *Tussey v. ABB, Inc*., participants filed their action in 2006, received a trial verdict in 2012, saw that verdict reduced by the court of appeals in 2014 and eventually settled in 2019 — 13 years after filing. *Tussey v. ABB, Inc*., 850 F.3d 951 (8th Cir. 2017) (remanding on damages); *Tussey v. ABB, Inc*., No. 06-cv-4305, Dkt. 869 (W.D. Mo. Aug. 16, 2019) (granting final approval of settlement). Indeed, this action is nearly four years old and merits discovery is not completed. If this case continues, it too could take a decade or more for the Class to receive any benefit, even if Plaintiff prevailed at trial.

Moreover, if the case were to go to trial, it would have required several attorneys from both Parties spending most of their time for at least a month preparing for a trial that would be expected to last over a week. Before the Parties reached trial, they would have to expend substantial time and effort to prepare witnesses, prepare the exhibits, identifying relevant exhibits and objections thereto, and pretrial memoranda. And, regardless of the outcome, there likely would have been appeals that followed, causing more expense and further delaying resolution.

Plaintiff also faces significant risks on liability and damages. Class Counsel are confident in the merits of the Plaintiff's claims. ERISA Section 404(a)(1)(A) provides that "a fiduciary shall discharge his duties with respect to a plan . . . for the exclusive purpose of: (i) providing benefits

to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." Plaintiff believes the decision to continue offering the VEF did not meet that standard.

However, there are significant legal obstacles and defenses which render recovery in this case uncertain, and, if there is a recovery, affect the amount. Defendant denies all of Plaintiff's allegations, denies that it committed or participated in any fiduciary breaches or other wrongdoing, has vigorously contested Plaintiff's allegations, and would continue to do so.

If the Action were to proceed through motions and trial, Plaintiff would have to overcome a host of issues including:

(i)     Because Mr. Bekker knew he was investing in a Neuberger-managed fund, and had a general understanding of the VEF's performance, was his claim barred under ERISA's three-year "actual knowledge" statute of limitations?

(ii)    Because the Plan included alternative active and passively managed large-cap investment products in addition to the VEF, are Plaintiff's claims subject to a defense that the Plan offered a prudent range of options? *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (affirming dismissal where 401(k) plan participants were offered funds with "a wide range of expense ratios" that were "also offered to investors in the general public")

(iii)   Because the VEF outperformed its benchmarks at various extended times during its history in the Plan, and was blessed by an independent investment consultant, could Plaintiff prove the decision to continue offering the VEF was imprudent?

(iv)    Had the VEF been removed, could Defendant prove the assets would have been reinvested in less aggressive investment products, such as the Plan's target date

funds or spread among the Plan's other equity and bond funds, such that the proper

measure of damages reflects the lower returns of a more conservative asset

allocation?

(v)    What is the appropriate measure of damages? *Tussey*, 850 F.3d at 960

(remanding for determination of method of calculating damages where mutual fund

was imprudently added to 401(k) plan.)

Indeed, other recent ERISA 401(k) cases involving proprietary funds have resulted in trial

judgments in favor of the defendants. *See Wildman v. Am. Century Servis., LLC*, No. 16-cv-737

Dkt. No. 304 (E.D. Mo. Jan 23, 2019) (ruling in favor of defendants on all counts); *Brotherston*

*v. Putnam Invs., LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017) (ruling in favor of defendants

on plaintiffs' breach of fiduciary duty claim).

Instead of a drawn-out decade of costly litigation, with a risk of no recovery, class members

will receive a certain benefit now whether they are current participants in the Plan or former

participants. These factors all support preliminary approval of the settlement.

### E. The range of reasonableness of the settlement fund in light of the best possible recovery.

Since the Court rejected Plaintiff's initial proposed alternative, an index fund managed by

Vanguard, Plaintiff's expert calculated damages from the underperformance of the VEF

compared to the applicable Morningstar category median and calculated damages of $87.5

million. Thus, the Settlement represents nearly 20% of the Class' potential damages. This

amount is consistent with approved settlements in other proprietary fund ERISA cases, including

cases that settled after questions of the applicable statute of limitations and summary judgment

were resolved. *See, e.g., Richards-Donald v. Teachers Insurance and Annuity Ass'n of Amer.*,

No. 15-cv-8040 (S.D.N.Y.) ($5 million settlement representing 11.6% of alleged damages);

*Figas v. Wells Fargo*, No. 08-cv-4546 (D. Minn.) ($17.5 million settlement representing 19.5% of alleged damages); *Sims v. BB&T Corp.*, No. 15-cv-732 (M.D.N.C.) ($24 million settlement representing 19% of alleged damages); *Urakhchin v. Allianz Asset Mgmt. of Amer., L.P.*, No. 15-cv-1614 (C.D. Cal.) ($12 million settlement representing 25.5% of alleged damages).

Defendant contends damages should be zero (or negative) because it argues that if the VEF had been removed, the assets would have either been disbursed among all of the Plan's investment options, including very conservative funds, or would have moved into the Plan's target date funds (where Plan assets were actually moved when the VEF was removed). In either case, the VEF outperformed those alternatives over the Class Period.

### F. The effectiveness of the proposed method of distributing relief to the Class and whether Class Members are treated equitably.

Rule 23(e)(2)(C)(ii) and (D) examine the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims, and whether class members are treated equitably. Both factors support the Settlement here.

Those participants owed a recovery will be automatically mailed a check, requiring no effort of their own, not even a claim form. The Settlement provides for these payments to be calculated based on the VEF balances of the participants, so that each participant receives an award commensurate with their losses. The allocation is based on Plaintiff's theory of the case and reflects Plaintiff's contention that the VEF charged excessive fees and exhibited prolonged underperformance throughout the Class Period. This method treats class members equitably relative to each other. There is no reason to doubt the fairness of the proposed allocation for purposes of preliminary approval. Even at the final-approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by experienced and competent class counsel." *In re Am. Bank Note Holographics, Inc.*, 127

F.Supp.2d 418, 429–30 (S.D.N.Y. 2001). The proposed method of allocation is "rationally based on legitimate considerations." *PaineWebber*, 171 F.R.D. at 131, and treats Settlement Class members (including Plaintiff) fairly. Accordingly, the Court should preliminarily approve the settlement and allocation.

### G. The terms of the proposed award of attorneys' fees.

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. As described above in Section III(B), Plaintiff's counsel will file an application seeking an award of attorneys' fees and reimbursement of litigation expenses, not to exceed one-third of the Settlement Fund, or $5,666,666. Settlement, ¶ 8.2.

### H. The ability of the Defendants to withstand a greater judgment.

Plaintiff was satisfied that Defendant had sufficient assets to withstand a greater judgment. Accordingly, this factor did not play a role in the negotiation or acceptance of the Settlement.

### I.  The stage of the proceedings and the amount of discovery completed.

The focus of this third *Grinnell* factor is on "whether the parties had adequate information about their claims." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004).

As discussed above, in the course of the three and half years this litigation has been pending, the Parties have engaged in extensive motions practice, including motions to dismiss, and for summary judgment, briefing core legal issues in the case involving standing and statute of limitations, multiple times. The Parties engaged in discovery on the statute of limitations and related issues.

In connection with their settlement discussions, the Committee produced information necessary to valuing the claims, and the Parties exhaustively discussed the strengths, and weaknesses of their claims and defenses, the risks of litigation, available insurance, and the

financial impact to Defendant, the Class, and the Plan, with respect to any judgment or settlement. Based on these discussions, and years of litigation, the Parties were in an excellent position to negotiate a fair settlement that they believe to be in their respective best interests. Because the Settlement is the product of serious, informed, non-collusive negotiations, preliminary approval should be granted.

### V. THE PROPOSED NOTICE PLAN IS ADEQUATE

Due process and Rule 23(e) do not require that each Class Members receives notice, but do require that class notice be achieved "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Notice is adequate if it may be understood by the average class member." *Wal-Mart Stores Inc. v. Visa USA Inc*., 396 F.3d 96, 114 (2d Cir. 2005) (internal quotations and citations omitted).

"Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 172 (1974). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Id*. at 175.

Here, the proposed form and method of notice of proposed settlement agreed to by the parties satisfy all due process considerations and meet the requirements of Fed. R. Civ. P. 23(e)(1). Plaintiff's proposed form of Notice is attached to the Class Action Settlement Agreement. The proposed Notice will fully apprise Settlement Class members of the existence of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights, including (i) the terms and operation of the Settlement; (ii) the nature and extent of the release and covenant not to sue, (iii) the maximum counsel fees that will be sought; (iv) the procedure and timing for objecting to the Settlement; (v) the date and place of the

fairness hearing; and (vi) the website on which the full settlement documents, and any modifications to those documents, will be posted.

The Notice Plan consists of multiple components designed to reach class members. First, the Individual Notice will be sent by first-class mail to the address of current Plan Participants and the last known address of former Plan Participants shortly after entry of the Preliminary Approval Order. Addresses of class members are maintained by the Plan's recordkeeper, who uses this information for, *inter alia*, mailing Plan notices, participant communications, and other Plan-related information. Participants include both current and former employees of Neuberger. In addition to the Individual Notice, Class Counsel and the Settlement Administrator will develop a dedicated website solely for the settlement. The Notice Plan also includes a requirement for follow-up by the Claims Administrator for those class members whose notice letters are returned because they no longer reside at such address. Class members may also receive notice of the settlement by reading published articles likely to mention the settlement.

Thus, the form of notice and proposed procedures for notice satisfy the requirements of due process and the Court should approve the Notice Plan as adequate. *See* Newberg on Class Actions, § 8.34.

## VI.     CONCLUSION

For these reasons, the Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement should be granted.

Dated: June 10, 2020

Respectfully submitted,

/s/ *Gregory Y. Porter*
Gregory Y. Porter (*pro hac vice*)
Kevin W. Barrett (NY Bar # 2196343)
Ryan T. Jenny (*pro hac vice*)

27

Mark G. Boyko (NY Bar # 4306122)
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
kbarrett@baileyglasser.com
rjenny@baileyglasser.com
mboyko@baileyglasser.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on June 10, 2020 a copy of the foregoing was filed with the Court. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                   /s/ Gregory Y. Porter
                                   Gregory Y. Porter, *pro hac vice*