UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
ARTHUR BEKKER, *individually, on behalf of a*
*class of all other persons similarly situated, and on*
*behalf of the Neuberger Berman 401(k) plan,*

No. 16-cv-06123-LTS-BCM

Plaintiff,

v.

NEUBERGER BERMAN GROUP 401(K) PLAN
INVESTMENT COMMITTEE,

Defendant.
------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY'S
FEES, REIMBURSEMENT OF EXPENSES, AND CASE CONTRIBUTION AWARD**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 1

   A.  Plaintiff and His Counsel Vigorously Litigated On Behalf Of The Class ............. 1

   B.  Plaintiff And Class Counsel Negotiated An Outstanding Settlement .................... 3

   C.  The Court Grants Preliminary Approval Of The Proposed Settlement ................. 4

   D.  Work of Time Invested by Class Counsel .............................................................. 4

III.  ARGUMENT ..................................................................................................... 5

   A.  Legal Standard For Attorneys' Fees Awards ......................................................... 5

   B.  The Requested Fee Is Reasonable Under The Percentage Method Applying
       The Goldberg Factors ............................................................................................. 7

       1.  The Requested 28% Fee Is More Than Reasonable In Relation To The
           Settlement Value And Is Below Fees Approved By Courts In This
           Jurisdiction And Elsewhere In Common Fund Cases ................................. 7

       2.  The Magnitude and Complexity of the Litigation Support the
           Requested Fee ............................................................................................ 9

       3.  Class Counsel Assumed Significant Risks ............................................... 11

       4.  Class Counsel Provided High-Quality Representation ............................. 12

       5.  The ERISA Claims Asserted Required Substantial Time And Labor ...... 13

       6.  Public Policy Supports the Requested Fee ............................................... 15

   C.  Class Counsel's Request To Be Reimbursed $41,083.58 In Expenses
       Advanced To The Class Is Reasonable And Appropriate .................................... 16

   D.  A Case Contribution Award of $20,000 Is Appropriate ....................................... 17

   E.  There Have Been No Objections To The Proposed Distributions ........................ 18

IV.  CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
No. 06-CV-701-MJR-DGW, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ........................9, 18

*In re American Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).....................................................................................11

*Andrus v. New York Life Ins. Co.*,
No. 16-cv-5698 (S.D.N.Y. June 15, 2017) .......................................................................7, 13

*In re APAC Teleservice, Inc. Sec. Litig.*,
No. 97 Civ. 9145(BSJ), 1999 WL 1052004 (S.D.N.Y. Nov.19, 1999) ...................................8

*Beesley v. Int'l Paper Co.*,
No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014)..............................18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)................................................................................................................5

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ................................................................................................17

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003).....................................................................................17

*Brotherston v. Putnam Investments, LLC*,
907 F.3d 17 (1st Cir. 2018) ....................................................................................................9

*Brotherston v. Putnam Investments*,
No. 15-cv-13825, 2017 WL 2634361 (D. Mass. June 19, 2017).............................................9

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).................................................................................................11

*City of Providence v. Aeropostale, Inc.*,
No. 11-cv-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................................................7

*Clark v. Duke Univ.*,
No. 16-cv-1044, 2019 WL 2579201 (M.D.N.C. June 24, 2019) .............................................8

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)........................................................................8, 13, 16

ii

*Cosgrove v. Sullivan*,
  759 F. Supp. 166 (S.D.N.Y.1991) .........................................................................13

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*,
  No. CV09-5457 PSG (JCX), 2016 WL 5938722 (C.D. Cal. May 16, 2016) .........................10

*Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*,
  No. 12CV8918 DLC, 2014 WL 5455473 (S.D.N.Y. Oct. 28, 2014).......................................17

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2001) .............................................................................7

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000).............................................................................6, 14

*Gordan v. Massachusetts Mut. Life Ins. Co.*,
  No. 13-CV-30184-MAP, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) ..............................14

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)......................................................................................6

*Hicks v. Morgan Stanley Co.*,
  No. 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)............................................15

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
  140 S. Ct. 768 (2020)....................................................................................3

*Kelly v. Johns Hopkins Univ.*,
  No. 16-cv-2835, 2020 WL 434473 (D. Md. Jan. 28, 2020)................................................8, 14

*Krueger v. Ameriprise Fin., Inc.*,
  No. 11-cv-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) ....................................*passim*

*Kruger v. Novant Health, Inc.*,
  No. 14-cv-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ....................................*passim*

*Main v. American Airlines, Inc.*,
  No. 16-cv-1033 (N.D. Tex. Feb. 21, 2018)...............................................................8

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................8, 15

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..............................................................*passim*

*In re Medical X-Ray Film Antitrust Litig.*,
  No CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)................................................8

*Meiners v. Wells Fargo & Co.*,
   No. 16-cv-3981, 2017 WL 2303968 (D. Minn. May 25, 2017) .............................................10

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) .................................................................................................................6

*Moreno v. Deutsche Bank Americas Holding Corp.*,
   No. 15-9936 (S.D.N.Y. Mar. 7, 2019) ......................................................................................8

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
   No. 11 CIV. 0520 JLC, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ....................................13

*In re Rite Aid Corp. Sec. Litig.*,
   396 F. 3d 294 (3d Cir. 2005) ...................................................................................................14

*In re RJR Nabisco, Inc. Sec. Litig.*,
   No. 818 (MBM), 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ...............................................13

*Ruiz, v. JCP Logistics, Inc.*,
   No. SACV131908JLSANX, 2016 WL 6156212 (C.D. Cal. Aug. 12, 2016) ..........................14

*Sacerdote v. New York Univ.*,
   328 F. Supp. 3d 273 (S.D.N.Y. 2018) ....................................................................................11

*Savani v. URS Prof. Solutions LLC*,
   121 F. Supp. 3d 564 (D.S.C. 2015) .........................................................................................10

*Sewell v. Bovis Lend Lease, Inc.*,
   No. 09 CIV. 6548 RLE, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) .................................13

*Spano v. Boeing Co.*,
   No. 06-cv-743, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) .................................................14

*Steiner v. Am. B'casting Co., Inc.*,
   248 Fed. Appx. 780 (9th Cir.2007) ..........................................................................................13

*Torres v. Gristede's Operating Corp.*,
   519 F. App'x 1 (2d Cir. 2013) ..................................................................................................8

*Tussey v. ABB, Inc.*,
   No. 2:06-cv-04305-NKL, 2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) .............................10

*Viafara v. MCIZ Corp.*,
   No. 12-cv-7452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ...........................................9, 13

*In re Visa Check/Mastermoney Antitrust Litig.*,
   No. 96-cv-5238, 2008 WL 1787674 (E.D.N.Y. Apr. 14, 2008) .............................................15

*In re Vitamin C Antitrust Litig.*,
   No. 06-MD-1738 BMC JO, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ...........................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...........................................................................................6, 18

*Wildman v. Am. Century Servs., LLC*,
   No. 16-cv-737, 2019 WL 283382 (W.D. Mo. Jan. 23, 2019)...................................................9

**Statutes**

29 U.S.C. § 1001, *et seq.*............................................................................................ *passim*

29 U.S.C. § 1104(a) ............................................................................................................2

29 U.S.C. § 1106(a)(1)........................................................................................................2

29 U.S.C. § 1106(b)(1) .......................................................................................................2

29 U.S.C. § 1106(b)(2) .......................................................................................................2

29 U.S.C. § 1132(g)...........................................................................................................17

**Rules**

Fed. R. Civ. P. 23.............................................................................................................5, 6

Fed. R. Civ. P. 23(h) ...........................................................................................................5

Fed. R. Civ. P. 30(b)(6)....................................................................................................2, 3

**Other Authorities**

*401(k) Fees Continue To Drop*, FORBES (Aug. 20, 2015).......................................................17

Manual for Complex Litigation (Fourth) (2004) ..........................................................................6

Restatement (Third) of Trusts (2012) ......................................................................................10

# I.    INTRODUCTION

Plaintiff and Class Counsel have achieved a settlement in this ERISA class action that creates a $17 million Settlement Fund for 1,451 settlement Class Members.[1] The Settlement is an outstanding result for the Class and will result in an average gross recovery of over $11,700 per Class Member, well above average payments in similar cases.

To compensate them for their efforts, Class Counsel request a fee award of $4,760,000 — twenty-eight percent of the Settlement Fund — which recognizes the results they obtained for the Class, the substantial risks they faced, and their high-quality work. The fee requested is below the range of fees awarded in similar cases and is supported by all the relevant *Goldberg* factors.

Class Counsel also request reimbursement of $41,083.58 in litigation costs. These expenses, largely for experts and travel related to discovery and mediation, are reasonable and were necessary to the successful resolution of the case.

Finally, Class Counsel request that the Court approve a Case Contribution Award to Mr. Bekker in the amount $20,000 for his work on behalf of the Class. He has actively participated in this Action since its inception. Without him there would be no recovery for the Class.

# II.    BACKGROUND

## A.    Plaintiff and His Counsel Vigorously Litigated On Behalf Of The Class

Plaintiff brought this case under ERISA to challenge Defendant's inclusion of the Neuberger Value Equity Fund ("VEF") in the 401(k) plan (the "Plan") offered to qualified employees of Neuberger Berman ("Neuberger"). Dkt. 1. Prior to filing the initial Complaint, Class Counsel conducted an in-depth investigation of the Plan, the Plan's expenses compared to peers, and the merits of the VEF and other proprietary Plan investments compared to

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement. KCC, the Settlement Administrator, mailed 1,451 notices.

benchmarks and other available options, and met with Plaintiff Arthur Bekker about his claims and Plan allegations. Declaration of Gregory Y. Porter in Support of Plaintiff's Motion for Attorney's Fes, Reimbursement of Expenses, and Class Representative Award ("Porter Decl.") ¶ 3. Class Counsel drafted and filed a detailed, 27-page Complaint on August 2, 2016, against multiple related defendants based on their investigation. Dkt. 1. The Complaint alleged that the selection and continued offering of the VEF constituted a fiduciary breach under ERISA, 29 U.S.C. § 1104(a), and that the selection of the VEF and payment of fees from the VEF to Neuberger constituted prohibited transactions under 29 U.S.C. §§ 1106(a)(1), (b)(1) and (b)(2). All defendants moved to dismiss for failure to state a claim and moved for summary judgment on their statute of limitations defense. Dkt. 21. The Court ultimately dismissed the fiduciary breach claim and certain defendants, but permitted discovery against Defendant Neuberger Berman Group 401(k) Plan Investment Committee on the statute of limitations defense for the prohibited transaction claim. Dkt. 76. Because the issue was whether the abbreviated 3-year statute of limitations applied, which required Defendant establishing Plaintiff had "actual knowledge" of the ERISA violation, discovery centered around Plan documents sent, or accessible, to Mr. Bekker.

Plaintiff subsequently obtained leave to file an Amended Complaint, Dkt. 99, the operative Complaint, which this Court found sufficient on both the breach of fiduciary duty claim and the prohibited transaction claim. Dkt. 102. Defendant renewed its dispositive motion concerning the statute of limitations defense on September 13, 2019. Dkt. 106. Defendant deposed Mr. Bekker and Plaintiff conducted a Rule 30(b)(6) deposition of Neuberger and sought discovery from third parties as well. See, e.g., Dkt. 116-1–4. The Court's findings on this issue remained pending as the Parties addressed settlement.

**B.**  **Plaintiff And Class Counsel Negotiated An Outstanding Settlement**

Before beginning settlement discussions, Plaintiff obtained discovery concerning Defendant's selection and monitoring process for the VEF and other Plan investments and other plan data. Porter Dec. ¶ 5. On September 26, 2019, the Parties engaged in a full-day mediation before retired federal district court judge Morton Denlow. *Id*. A settlement was not reached at that time, but Defendant informed Plaintiff of its decision to remove the VEF from the Plan by the end of 2019. The Parties returned to litigation.

On February 26, 2020, the United States Supreme Court issued its ruling in *Intel Corp. Inv. Policy Comm. v. Sulyma*, clarifying what constitutes "actual knowledge" for purposes of the ERISA statute of limitations, the defense on which Defendant had moved for summary judgment, holding that mere access to documents does not constitute "actual acknowledge" for purposes of shortening ERISA's statutory period. 140 S. Ct. 768 (2020). As is the case here, *Sulyma* concerned whether a participant who accessed the Plan's website is deemed to have had "actual knowledge" of all information provided on that website. Class Counsel here are also counsel to the plaintiffs in *Intel.* In response to the *Sulyma* decision, and its impact on this case, the Parties briefed the Court (Dkts. 123–127) and engaged in a series of telephonic conversations with Judge Denlow to further discuss settlement. After extensive further negotiations, the Parties reached a settlement-in-principle on March 20, 2020. Porter Decl. ¶ 6.

Class Counsel, while negotiating the Settlement Agreement, took the lead on drafting its exhibits and associated documents. *Id*. This included the Settlement Notice, Plan of Allocation, the proposed preliminary and final approval orders, and Plaintiffs' motion for preliminary approval of the Settlement. *Id*.

Class Counsel also selected the Settlement Administrator, KCC Class Action Services, LLC ("KCC"), after receiving bids from several qualified settlement administration firms. *Id*. ¶

7. Class Counsel worked with KCC and defense counsel to identify who should be included on the class notice list, reviewed the final drafts of the Settlement Notices, and ensured that they were timely mailed by KCC. *Id.* In addition, Class Counsel worked with KCC to create a settlement website and telephone line for Class Members who wished to obtain additional information about the Settlement. *Id.* Since dissemination of the Settlement Notices, Class Counsel also have responded to questions from Class Members. *Id.*

**C.     The Court Grants Preliminary Approval Of The Proposed Settlement**

Plaintiff filed his unopposed motion for preliminary approval of the Settlement on June 10, 2020. Dkt. 132. The Court granted preliminarily approval of the Settlement and approved the issuance of Class Notice on July 27, 2020. Dkt. 134. A Final Approval Hearing is scheduled for November 19, 2020, at which time the Court will consider the present motion and Plaintiff's forthcoming motion for final approval of the Settlement. *Id.*

Pursuant to the Settlement Agreement, a $17 million common Settlement Fund has already been established and funded. As described in Plaintiff's Memorandum in Support of Preliminary Approval, the Settlement represents approximately one-half of the fees Neuberger received from the VEF and 20% of the underperformance of the VEF compared to Plaintiff's alleged alternative, *i.e.*, 20% of damages as measured by investment opportunity losses. Dkt. 133-1. Defendant would have argued that under its proposed alternative there were no damages even if Plaintiff had established a fiduciary breach.

**D.     Work of Time Invested by Class Counsel**

Class Counsel have expended approximately 1,400 hours prosecuting this action on behalf of the Class (exclusive of write-offs and time spent preparing this motion). Porter Decl. ¶ 19. The work of Class Counsel is detailed in the accompanying Porter Declaration, and is summarized below. In addition to the discovery and briefing processes described, Class Counsel

engaged in initial investigatory work and worked with experts to further evaluate the Class'

claims and damages.

Class Counsel's work on this matter remains ongoing. Prior to the Final Approval

Hearing, Class Counsel will draft Plaintiff's motion for final approval of the Settlement and

respond to any objections. *Id.* ¶ 17. Class Counsel will also communicate with the Independent

Fiduciary and provide it with all necessary information in connection with its required review of

the proposed release on behalf of the Plan. Class Counsel will then attend the Fairness Hearing,

and if final approval is granted, will supervise the distribution of payments to eligible Class

Members. *Id.* And over the remaining course of the action, Class Counsel will continue to

respond to questions from Plaintiff and Class Members and take other actions necessary to

support the Settlement. *Id.* Based on Class Counsel's experience with similar cases, at least 50

additional hours are expected to be spent undertaking these aspects of their representation of the

Class. *Id.*

### III.   ARGUMENT

### A.   Legal Standard For Attorneys' Fees Awards

Under Rule 23, when counsel obtain a settlement for a class, courts "may award

reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties'

agreement." Fed. R. Civ. P. 23(h). Here, the requested fee is reasonable and is authorized both by

the Settlement Agreement, and by applicable law.

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers

a common fund for the benefit of persons other than himself or his client is entitled to a

reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472,

478 (1980). Likewise, "reasonable expenses of litigation" may be recovered from a common

fund, *see Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970). Finally, class representative

service awards "serv[e] the purposes of Rule 23" and may be awarded to compensate efforts undertaken on behalf of class members. *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 151 (S.D.N.Y. 2010).

Courts in this circuit favor the percentage of the fund method of assessing attorneys' fees, "which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). The percentage of fund method also dispenses with the "cumbersome, enervating, and often surrealistic process of lodestar computation." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (quotation marks and citations omitted).

For purposes of evaluating the reasonableness of attorneys' fees, courts in the Second Circuit consider the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50.

Of these factors, "[g]enerally, the factor given the greatest emphasis is the size of the fund created, because 'a common fund is itself the measure of success … [and] represents the benchmark from which a reasonable fee will be awarded.'" Manual for Complex Litigation (Fourth), § 14.121 (2004) (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 14:6, at 547, 550 (4th ed. 2002)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "critical factor is the degree of success obtained").

**B.**     **The Requested Fee Is Reasonable Under The Percentage Method Applying The Goldberg Factors**

**1.**     **The Requested 28% Fee Is Reasonable In Relation To The Settlement Value And Is Below Fees Approved By Courts In This Jurisdiction And Elsewhere In Common Fund Cases**

The $17 million recovery obtained represents over half of the total amount of fees paid to Neuberger by the Plan's investment in the VEF. Porter Decl. ¶ 8. Alternatively, measured by performance, the Settlement constitutes 20% of the underperformance loss of the VEF relative to a basket of other large cap value funds recommended by the Plan's consultant, Mercer. *Id.* Since the filing of the litigation, the Class has also benefitted from fee savings resulting from Defendant's removal of the VEF from the Plan. Perhaps even more importantly, at least from the perspective of Class members, is the average gross class member recovery as compared to recoveries in similar cases. As detailed in Porter Declaration Exhibit A, the average gross recovery here is $11,716 — 46 times the average gross recovery for a proprietary funds class member and 3.75 times the next-highest known recovery in similar ERISA cases. That is an outstanding result for the Class.

The requested fee award of twenty-eight percent of the Settlement Fund is below awards in similar ERISA class actions involving 401(k) plans. As the court stated in *Ameriprise*:

> [I]n comparing the requested fee with fee awards in similar cases, the relevant comparators are ERISA class actions asserting breaches of fiduciary duties in the selection and retention of plan investment options and the reasonableness of defined contribution plan fees. **In such cases, courts have consistently awarded one-third contingent fees**.

*Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-2781, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (emphasis added) (citing numerous cases); *see also Andrus v. New York Life Ins. Co.*, No. 16-cv-5698, Dkt. 83 at 1 (S.D.N.Y. June 15, 2017) (approving one-third fee in ERISA proprietary fund case); *Kruger v. Novant Health, Inc.*, No. 14-cv-208, 2016 WL 6769066, at *2

(M.D.N.C. Sept. 29, 2016) (same); *In re Marsh ERISA Litig.*, 265 F.R.D. at 149 ("Courts have []

awarded percentage fees of one-third or higher in ERISA....").

Other class action cases in this Circuit would support a higher fee. *See, e.g.*, *City of*

*Providence v. Aeropostale, Inc.*, No. 11-cv-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)

(awarding one-third of $15 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279

F.R.D. 151, 165 (S.D.N.Y. 2001) (awarding one-third of $13 million settlement); *Maley v. Del*

*Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 368 (S.D.N.Y. 2002) (awarding one-third of $11.5

million settlement); *In re APAC Teleservice, Inc. Sec. Litig.*, No. 97 Civ. 9145(BSJ), 1999 WL

1052004, at *1 (S.D.N.Y. Nov.19, 1999) (awarding one-third of $21 million settlement); *In re*

*Medical X-Ray Film Antitrust Litig.*, No CV-93-5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7,

1998) (awarding one-third of $39 million fund).

A twenty-eight percent fee is consistent with the aggregate analysis of ERISA settlements

relied upon by this Court in *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351

(S.D.N.Y. 2014) (noting that one analysis of 37 ERISA cases from 2006–07 and another of 100

ERISA settlements from 1997 to 2013, both showed median awarded fees of 28%). And Judge

Schofield recently approved a 30 percent fee in a $21.9 ERISA million settlement concerning the

inclusion of proprietary investments in a 401(k) plan. *Moreno v. Deutsche Bank Americas*

*Holding Corp.*, No. 15-9936, Dkt. 348 (S.D.N.Y. Mar. 7, 2019).

Other recent ERISA settlements of similar size alleging excessive fees and imprudent

investment options in defined contribution retirement plans have awarded higher fees. *Main v.*

*American Airlines, Inc.*, No. 16-cv-1033 (N.D. Tex. Feb. 21, 2018) (approving 30% fee out of

$30 million proprietary fund ERISA settlement); *Kelly v. Johns Hopkins Univ.*, No. 16-cv-2835,

2020 WL 434473, *2 (D. Md. Jan. 28, 2020) (approving 33% fee out of $14 million ERISA

settlement); *Clark v. Duke Univ.*, No. 16-cv-1044, 2019 WL 2579201 (M.D.N.C. June 24, 2019) (approving 33% fee out of $10.65 million settlement).

Moreover, "[b]eyond just the monetary recovery, this court must also consider the overall benefit to the class, including non-monetary benefits, when evaluating a fee request." *Kruger*, 2016 WL 6769066, at *3; *See also Torres v. Gristede's Operating Corp.,* 519 F. App'x 1, 5 (2d Cir. 2013) (noting that injunctive and non-monetary relief were relevant factors in assessing success obtained for purposes of fee award). Here, on December 16, 2019, the VEF was removed as a Plan investment option and participants who did not elect to transfer their balances elsewhere were mapped into an age-based target date fund, which charge less than half of the fee charged by the VEF. This change resulted in a savings to the Plan of over $1 million per year in fees. When this additional value is considered, the requested fee is even more reasonable.

This *Goldberg* factor is satisfied.

### 2.      The Magnitude and Complexity of the Litigation Support the Requested Fee

The second *Goldberg* factor requires the court to consider "[t]he size and difficulty of the issues in a case." *Viafara v. MCIZ Corp.*, No. 12-cv-7452, 2014 WL 1777438, at *11 (S.D.N.Y. May 1, 2014) (citing *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 912 F. Supp. 97 (S.D.N.Y. 1996)). Courts recognize that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Ameriprise*, 2015 WL 4246879, at *1; *see also In re Marsh ERISA Litig.*, 265 F.R.D. at 138 ("Many courts have recognized the complexity of ERISA breach of fiduciary duty actions."); *Abbott v. Lockheed Martin Corp.*, No. 06-CV-701-MJR-DGW, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERSIA 401(k) cases are "particularly complex").

ERISA class actions challenging the inclusion of proprietary funds in an employer's 401(k) plans are rare, uncertain, expensive, and risky. Fewer than two dozen such cases have

been brought since the passage of ERISA in 1974. Only two have gone to trial: both of which resulted in a defense verdicts. *Wildman v. Am. Century Servs., LLC*, No. 16-cv-737, 2019 WL 283382 (W.D. Mo. Jan. 23, 2019); *Brotherston v. Putnam Investments,* No. 15-cv-13825, 2017 WL 2634361 (D. Mass. June 19, 2017), affirmed with respect to fiduciary breach allegations but vacated and remanded with respect to alleged prohibit transaction by *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17 (1st Cir. 2018). At least one other was dismissed. *Meiners v. Wells Fargo & Co.*, No. 16-cv-3981, 2017 WL 2303968 (D. Minn. May 25, 2017), *affirmed at* 898 F.3d 820 (8th Cir. 2018).

And, given the size and complexity of ERISA 401(k) cases, it is not unusual for them to continue for a decade or longer. Indeed, this case has been pending for over four years and the parties had not yet named experts or completed discovery. Handling a large and complex case such as this requires counsel with highly specialized skills and experience. *See Savani v. URS Prof. Solutions LLC*, 121 F. Supp. 3d 564, 573 (D.S.C. 2015) ("Very few plaintiffs' firms possess the skill set or requisite knowledge base to litigate. class-wide, statutorily-based claims for pension benefits"); *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. 09-cv-5457, 2016 WL 5938722, at *10 (C.D. Cal. May 16, 2016) (finding that ERISA litigation requires "highly skilled counsel," supporting fee award of 30% of common fund). Counsel must possess "expertise regarding industry practices" and be able to analyze pertinent records and data. *Kruger v. Novant Health, Inc.*, No. 14-cv-208, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016. Moreover, aside from the complex liability issues involved, ERISA cases present "difficult" questions regarding the measure of "recovery from a trustee for imprudent or otherwise improper investments." Restatement (Third) of Trusts, § 100 cmt. b(1) (2012); *see also Tussey v. ABB, Inc.*, No. 2:06-cv-4305, 2017 WL 6343803, at *1–3 (W.D. Mo. Dec. 12, 2017)

10

(summarizing more than five years of post-trial briefing, including appeals, on the measure of

damages in a 401(k) case, and declaring the need for further submissions from the parties).

Based on their experience litigating similar ERISA cases, Class Counsel were uniquely able to

meet these challenges, and achieve an outstanding result for the Class. The complexity factor is

satisfied.

### 3.   Class Counsel Assumed Significant Risks

The third *Goldberg* factor weighs the risks Class Counsel assumed by taking the case on

a contingent fee basis. As the Second Circuit has stated:

> No one expects a lawyer whose compensation is contingent upon his success to
> charge, when successful, as little as he would charge a client who in advance had
> agreed to pay for his services, regardless of success. Nor, particularly in
> complicated cases producing large recoveries, is it just to make a fee depend
> solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted); *see also In*

*re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (citing *In*

*re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987)).

In the absence of a Settlement, Class Counsel would have faced significant litigation

risks. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 148 (noting risks of ERISA class actions).

These risks are highlighted not only by this Court's dismissal of the fiduciary breach claim in

Plaintiff's initial Complaint, but also by the trial judgment that was recently entered in favor of

the defendants in the New York University case in this District, which concerned alleged

breaches of the duties or prudence and loyalty in the selection of investments for a retirement

plan. *See Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018).

Defendant here offered a host of arguments aimed at avoiding liability, including

assertions that the VEF was prudently offered based on long-term prior outperformance, was

offered at a fee lower than Neuberger offered comparable investments in the marketplace,

charged fees in line with other actively managed similar funds, and, that had the VEF been removed, the assets would have moved to less profitable investments, including the Plan's default investment option.

Defendant also emphasized the fact that it relied on an outside investment consultant (Mercer), which reviewed the Plan's investment lineup during and prior to the class period and never recommended that the VEF be removed. These were facts Plaintiff learned only after receiving discovery years after filing the litigation. It was uncertain whether and to what extent this outside advice would affect the Court's views of the case. The risk on nonrecovery factor is satisfied.

### 4. Class Counsel Provided High-Quality Representation

The quality of the representation, *Goldberg* factor four, also supports the requested fee. The Bailey Glasser attorneys working on this action are experienced in successfully handling ERISA class actions, and have litigated many class actions involving the selection and monitoring of 401(k) plan investments. In fact, they represented the plan participants in nearly half of the proprietary fund 401(k) settlements to date. Porter Decl. Ex. A. They brought that experience to bear in achieving what Class Counsel believe to be *the largest monetary settlement ever* in a case of this type when measured on a per class member basis. As a result of Class Counsel's pursuit of the Plan's interests, 1,451 Class Members will receive their portion of a collective $17 million Settlement without the need to complete a claim form or make any other affirmative act — a gross recovery averaging over $11,700 per Class Member. As an added benefit, many of these participants will receive their recovery directly as a contribution into their tax-deferred 401(k) accounts, creating real additional value by deferring taxation over their recoveries.

As set forth in the accompanying Declaration and the Declaration in Support of Preliminary Approval and Class Certification (Dkt. 133–1), the firm has won favorable pretrial rulings on class certification and dispositive motions in several ERISA cases (including this case). By virtue of its experience and reputation, Bailey Glasser was able to litigate toe-to-toe with one of the largest defense firms in the country, and achieve a successful result for the Class.

The quality of representation is also reflected in the result. No other proprietary fund ERISA settlement has achieved similar results. Porter Decl. Ex. A. The gross recovery exceeds $11,700 per Class Member, making it 3.75 times larger per participant than any prior proprietary funds settlement, even without accounting for the continued savings from the Plan's removal of the VEF and replacement with far less expensive non-proprietary target date funds. Across comparable settlements, the average participants' gross recovery is $263.16, whereas the average gross class member recovery here is 46 times that. *Id.*

### 5.    The ERISA Claims Asserted Required Substantial Time And Labor

The requested fee is reasonable considering the time and effort expended by Class Counsel, the first *Goldberg* factor. Class Counsel has invested approximately 1,400 hours litigating and negotiating the Settlement in this case, not including time spent on this motion. Porter Dec. at ¶¶ 17, 19. The firm's resulting lodestar as of this date is $813,410. *Id.* ¶ 19. The requested fee represents a multiplier of 5.85, falling well within the range of multipliers awarded by courts in this jurisdiction. "Courts award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Viafara v. MCIZ Corp.*, No. 12 CIV. 7452 RLE, 2014 WL 1777438, at *14 (S.D.N.Y. May 1, 2014). *See In re Colgate-Palmolive Co. ERISA Litig.,* 36 F. Supp. 3d at 353 (approving multiplier of 5); *Andrus*, ECF 74, p. 12 (noting that approved one-third fee represented a multiplier of 5); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 CIV. 6548 RLE, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts routinely award

lodestar multipliers between two to six.").[2] This multiplier is warranted given the results achieved and because counsel took this case on a contingent fee basis and assumed a risk of loss.[3]

For purposes of the lodestar calculation, Class Counsel's hourly rates are reasonable, "considering the experience, skill, and reputation of the attorney[s] requesting fees." *Ruiz, v. JCP Logistics, Inc.*, No. SACV131908JLSANX, 2016 WL 6156212, at *9 (C.D. Cal. Aug. 12, 2016). Without a doubt, this is national litigation practiced by only a handful of lawyers across the country. It requires deep knowledge of 401(k) industry practices and managing cases in a sparse yet rapidly evolving area of law. Class Counsel's hourly rates ranged from $650–850 for partners to $350–600 for associates. Porter Decl. ¶ 19. Paralegal rates are between $250 per hour and time spent by legal assistants and law clerks were not billed, nor was time spent preparing this application. *Id.* at ¶¶ 17, 19.

Another firm practicing in this narrow area of law charges approved hourly rates of $1,060 per hour for attorneys with at least 25 years of experience, $900 per hour for attorneys with 15–24 years of experience, $650 per hour for attorney with 5–14 years of experience, $490 per hour for attorneys with 2–4 years of experience, and $330 for Paralegals and Law Clerks.

---

[2] *See also Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 CIV. 0520 JLC, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (approving fees equal to 6.8 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 818 (MBM), 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y.1991) (awarding multiplier of 8.74); *Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir.2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed").

[3] "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F. 3d 294, 306–07 (3d Cir. 2005); *see also Goldberger*, 209 F.3d at 50 ("[T]he hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case.").

*Kelly*, 2020 WL 434473, at *6–7.[4] ERISA litigation defense attorneys also bill at similar rates.[5] If Class Counsel's hourly rates were the same as those approved in *Kelly*, the lodestar multiplier would be 4.06. Porter Decl. ¶ 18.

Class Counsel was able to efficiently, yet effectively, litigate this Action. Class Counsel consciously sought to avoid duplicative and unnecessary time and billed the vast majority of time under associate and paralegal rates. Porter Decl. ¶ 19. This is highly efficient for a complicated ERISA action on behalf of a jumbo plan. By contrast, the *Ameriprise* case — which involved similar allegations regarding proprietary mutual funds involved over 27,000 hours of attorney time. *See Ameriprise*, 2015 WL 4246879, *2.

### 6.    Public Policy Supports the Requested Fee

Finally, public policy considerations support the requested fee. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 149–50. Awards of attorneys' fees encourage skilled counsel to represent those who seek redress for damages inflicted on an entire class of persons, and therefore discourage future misconduct of a similar nature. *See Hicks v. Morgan Stanley Co.*, No. 01-cv-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."); *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-cv-5238, 2008 WL 1787674, at *8 (E.D.N.Y. Apr. 14, 2008) (finding that there is "'commendable sentiment in favor of providing lawyers with sufficient incentive' to undertake the complex task of

---

[4] Other courts have approved comparable rates for the same firm in other cases in previous years. *Gordan v. Massachusetts Mut. Life Ins. Co.*, No. 13-CV-30184-MAP, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016); *Novant Health*, 2016 WL 6769066, at *4; and *Spano v. Boeing Co.*, No. 06-cv-743, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016).

[5] *See also* Porter Decl., Ex. B (Valeo Report excerpts showing that among ERISA practice groups within the top 200 law firms, the 2017 hourly rate range for senior partners was $320–$1,363 (with an average of $835), for partners was $296–$1,202 (with an average of $751), and for senior associates was $238–$938 (with an average of $580)).

competently representing the financial interests of class members once settlement has resulted in the creation of a significant common fund."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("Courts have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis, on behalf of those who otherwise could not afford to prosecute."). This is especially important in the ERISA context because "Congress passed ERISA to promote the important goals of protecting and preserving the retirement savings of American workers." *In re Marsh ERISA Litig.*, 265 F.R.D. at 149–50.

**C.    Class Counsel's Request To Be Reimbursed $41,083.58 In Expenses Advanced To The Class Is Reasonable And Appropriate**

"It is well-established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses." *In re Marsh ERISA Litig.*, 265 F.R.D. at 150. Thus, "[c]ourts in the Second Circuit normally grant expense requests in class action cases as a matter of course." *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012).

"The expenses that may be reimbursed from the common fund encompass 'all reasonable' litigation-related expenses." *In re Marsh ERISA Litig.*, 265 F.R.D. at 150. Here, all of the requested litigation expenses are of a type normally incurred in complex actions. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *11.

In prosecuting this matter, Class Counsel incurred $41,083.58 in out-of-pocket expenses. Porter Decl. ¶ 21. These expenses include experts' fees, mediation fees, electronic discovery and data costs, and filing fees. *Id*. Such expenses are "critically important" and recoverable. *See In re Colgate-Palmolive Co. ERISA Litig.,* 36 F. Supp. 3d at 353–54. Each expense was both reasonable and necessary to prosecute this Action. Porter Decl. ¶ 21. These are the sort of

16

expenses that attorneys in non-contingency cases generally charge to their paying clients. Moreover, the total expense amount is reasonable in light of the stage of the case and the amount awarded in similar cases. *See e.g., Ameriprise,* 2015 WL 4246879, at *3 (approving $782,000 in litigation expenses).

Accordingly, these expenses should be reimbursed.

## D.   A Case Contribution Award of $20,000 Is Appropriate

Finally, this Court also should approve the requested Case Contribution Award for the Plaintiff in the amount of $20,000. "Case law in this and other circuits fully supports compensating class representatives for their work on behalf of the class, which has benefited from their representation." *In re Marsh ERISA Litig.*, 265 F.R.D. at 150. Courts reason that such awards are compensatory in nature, reimbursing class representatives who "take on a variety of risks and tasks when they commence representative actions." *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003).

The requested award in this case is fully consistent with these recognized rationales. First, Mr. Bekker invested significant time reviewing case materials (including pleadings, interrogatory responses, and the Settlement Agreement), producing documents, appearing for his deposition, monitoring the litigation, mediation, and Settlement progress, and communicating with Class Counsel. Dkt. .133 at 12–13. Second, he assumed significant financial risks, *see* 29 U.S.C. § 1132(g) (providing that "the court may allow a reasonable attorney's fee and costs of action to either party"). Third, Mr. Bekker took considerable reputational risk as a worker in the labor market suing his former employer. Fourth, "the protection of retirement funds is a great public interest" and "private attorneys general have a major role to play in ERISA litigation." *Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*, No. 12CV8918 DLC, 2014 WL 5455473,

at *9 (S.D.N.Y. Oct. 28, 2014).[6] Indeed, suits like this are one of the reasons why fees in 401(k) plans have dropped in recent years. *See 401(k) Fees Continue To Drop*, FORBES (Aug. 20, 2015) ("In part in response to 401(k) fee litigation, employers have been aggressively negotiating fees and changing investment fund line-ups to include low-cost funds.").[7] Finally, as the sole Class Representative, without Mr. Bekker's personal sacrifices, the Class would have received nothing.

The amount of the requested Case Contribution Award is also reasonable and in line with amounts awarded in similar cases. Indeed, courts have approved greater awards in other analogous ERISA cases. *See, e.g., Kruger*, 2016 WL 6769066, at *6 (approving $25,000 service awards to named plaintiffs in ERISA action); *Kreuger*, 2015 WL 4246879, at *3 (same); *Abbott*, 2015 WL 4398475, at *4 (same); *Beesley v. Int'l Paper Co.,* No. 3:06-CV-703-DRH-CJP, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (same).

**E.     There Have Been No Objections To The Proposed Distributions**

Finally, Class members have been on notice about the potential amount of the fee request and expenses since notice was provided, but no objections have been received to date. The objection deadline is November 5, 2020, and if any objections are received before the deadline Class Counsel will address those in a supplemental filing. The Settlement Notices that the Court approved and the Settlement Administrator has mailed, explicitly disclosed that Class Counsel and the Class Representative would seek fees of as much as one-third of the Settlement, expense reimbursement of up to $60,000, and a $20,000 Case Contribution Award for Mr. Bekker. Class Counsel's actual fee request is nearly $1 million less than that the maximum stated in the notice.

---

[6] *See also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 n.8 (8th Cir. 2009) (noting that Secretary of Labor "depends in part on private litigation to ensure compliance with the statute").
[7] Available at https://www.forbes.com/sites/ashleaebeling/2015/08/20/401k-fees-continue-to-drop/#6b8caf21164f.

A lack of objections based on the higher amounts contained in the Notices underscores the reasonableness of the requested fee. *See also, Wal-Mart Stores*, 396 F.3d at 118 (finding that "the absence of substantial opposition is indicative of class approval").

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff and Class Counsel respectfully request that the Court approve the requested distributions from the Settlement Fund upon final approval of the Settlement.

Dated: September 21, 2020          Respectfully submitted,

/s/ *Gregory Y. Porter*
Gregory Y. Porter (*pro hac vice*)
Kevin W. Barrett (NY Bar # 2196343)
Ryan T. Jenny (*pro hac vice*)
Mark G. Boyko (NY Bar # 4306122)
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
kbarrett@baileyglasser.com
rjenny@baileyglasser.com
mboyko@baileyglasser.com

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

  I hereby certify that on September 21, 2020, a copy of the foregoing was filed with the Court. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                */s/ Gregory Y. Porter*   
                Gregory Y. Porter, *pro hac vice*