UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ARTHUR BEKKER, *individually, on behalf of a class of all other persons similarly situated, and on behalf of the Neuberger Berman 401(k) plan,*

No. 16-cv-06123-LTS-BCM

                Plaintiff,

    v.

NEUBERGER BERMAN GROUP 401(K) PLAN
INVESTMENT COMMITTEE,

                Defendant.
-----------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS SETTLEMENT**

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND......................................................... 2

    A. Background ................................................................................................................. 2

    B. Procedural History, Motions Practice, And Discovery................................................ 3

III. THE TERMS OF THE PROPOSED SETTLEMENT ....................................................... 5

    Benefits to the Class............................................................................................................ 5

    Release of Claims ............................................................................................................... 5

IV. ARGUMENT ....................................................................................................................... 6

    A. The Legal Standards for Final Approval ..................................................................... 6

    B. The Settlement Is Fair, Reasonable, and Adequate Under the Relevant Factors ............... 7

        1. The Class Representatives and Class Counsel have adequately represented the Class...... 7

        2. The proposal was negotiated at arm's length................................................................... 8

        3. The relief provided for the class is adequate .................................................................. 9

        4. The proposal treats class members equitably relative to each other .............................. 12

        5. Additional factors support approval............................................................................. 12

    C. Class Certification remains appropriate..................................................................... 13

V. CONCLUSION.................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  No 02-5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .......................................................... 8

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................................................... 7

*Bano v. Union Carbide Corp.*,
  273 F.3d 120 (2d Cir. 2001) ..................................................................................................... 6

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.
  Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ............................................................. 12, 13

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ..................................................................................................... 13

*Figas v. Wells Fargo*,
  No. 08-cv-4546 (D. Minn.) ..................................................................................................... 11

*In re Giant Interactive Group, Inc. Sec. Litig.*,
  No. 07-cv-10588, 2011 WL 5244707 (S.D.N.Y. Nov. 2, 2011) .............................................. 8

*Miners v. Wells Fargo & Co.*,
  No. 16-cv-3981, 2017 WL 2303968 (D. Minn. May 25, 2017), *affirmed at* 898
  F.3d 820 (8th Cir. 2018) (dismissed) ...................................................................................... 10

*In re PaineWebber Ltd. P'shps Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) .................................... 7

*Richards-Donald v. Teachers Insurance and Annuity Ass'n of Amer*.
  No. 15-cv-8040 (S.D.N.Y.) ..................................................................................................... 11

*Sims v. BB&T Corp.*,
  No. 15-cv-732 (M.D.N.C.) ..................................................................................................... 11

*TBK Partners, Ltd. V. W. Union Corp.*,
  675 F.2d 456 (2d Cir. 1982) ..................................................................................................... 6

*Tussey v. ABB, Inc.*,
  No. 06-cv-4305, Dkt. 869 (W.D. Mo. Aug 16, 2019) .............................................................. 9

*Urakhchin v. Allianz Asset Mgmt. of Ameri., L.P.*,
  No. 15-cv-1614 (C.D. Cal.) ..................................................................................11, 12

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05-MDL-1695, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)..................................................................................................6

*Wildman v. Am. Century Servs., LLC*,
  No. 16-cv-737, 2019 WL 283382 (W.D. Mo. Jan 23, 2019).....................................................10

## Statutes

29 U.S.C. § 1104(a) .............................................................................................................2

29 U.S.C. § 1106...................................................................................................................2

28 U.S.C. § 1715..................................................................................................................14

ERISA .........................................................................................................1, 5, 8, 11

## Other Authorities

Fed. R. Civ. P. 23..................................................................................................................13

Fed.R.Civ.P. 23(b)(1)(A) and (B)..........................................................................................14

Fed. R. Civ. P. 23(e)(2)...................................................................................................6, 7, 9

Fed.R.Civ.P. 23(e)(2)(C) ........................................................................................................9

*Newberg on Class Actions* §11.41 (3d ed. 1992)...............................................................7

**I.     INTRODUCTION**

Plaintiff filed his action in 2016, at a time when nearly half of the assets in the Neuberger Berman 401(k) Plan (the "Plan") were invested in a single investment — the proprietary Value Equity Fund ("VEF"). Plaintiff's Complaint alleges, among other things, that the fiduciary committee ("the Committee" or "Defendant") responsible for overseeing the Plan breached its duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by allowing the Plan to pay excessive fees to a Neuberger affiliate and by keeping the VEF in the Plan despite deteriorating performance and high fees. Defendants has denied any wrongdoing. Now, with the VEF removed from the Plan and a $17 million Settlement Fund created, the parties are seeking this matter to be formally ended. The proposed settlement ("Settlement") is the culmination of nearly four years of litigation, resulting in a $17 million Settlement Fund for the benefit of participants in the Neuberger Berman 401(k) Plan (the "Plan").

The proposed settlement provides meaningful monetary relief to 1,451 class members.[1] Under the Plan of Allocation, the Class will share the $17 million Settlement Fund, after deductions for court approved attorneys' fees and costs and administrative costs, based on a formula that takes into account the alleged injury to each class member. Because class members are readily identifiable from the Plan's records (maintained by Fidelity, the Plan's recordkeeper), they will receive their monetary distribution without the need to complete or submit a claim form to prove eligibility. Those payments will receive the same tax-favored treatment as other assets

---

[1] Because the VEF was removed from the Plan after Plaintiff sued, the parties did not need to agree to any injunctive or prospective relief.

1

in such accounts (for those Class Members who so elect), providing even more value to the Class.

The Settlement was the product of extensive arms-length negotiation with the assistance of Judge Morton Denlow (Ret.) of JAMS. During the Parties' September 26, 2019 all-day mediation, no resolution was reached. However, the parties engaged in a series of continuing conversations before and after the removal of the VEF from the Plan and before and after the U.S. Supreme Court's decision in *Intel v. Sulyma*, the outcome of which the parties agreed would figure significantly in resolving this lawsuit. On March 23, 2020, the Parties reached an agreement in principle and, on May 27, 2020, finally agreed to and executed the Settlement before the Court. In light of all of the relevant factors, including the litigation risks and delay further prosecution of this action would inevitably entail, the proposed Settlement warrants final approval.

Plaintiff requests that the Court: (1) certify the Class for settlement purposes; (2) appoint Plaintiff's counsel as Class Counsel; and (3) finally approve the proposed Settlement. Plaintiff separately moved for approval of Class Counsel's fees, reimbursement of expenses, and a case contribution award to the Plaintiff. Dkt. 135.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

Plaintiff alleges that Defendant was a fiduciary to the Plan and that it engaged in breaches of fiduciary duty under 29 U.S.C. § 1104(a) and prohibited transactions under 29 U.S.C. § 1106.[2]

---

[2] All capitalized terms not otherwise herein shall have the same meaning as defined in the Settlement.

In particular, Plaintiff alleges Defendant failed to make decisions concerning the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that prudent fiduciaries acting in a like capacity and familiar with such matters would have used. These claims center around the continued inclusion of the VEF in the Plan.

Defendant denies the claims and all liability. It argues, among other things, that (a) the Plan offered an appropriate investment mix for participants, both proprietary and non-proprietary and across different asset classes, risk profiles, fee structures, and outcome opportunities; (b) the fees charged by the VEF were reasonable and less than Marvin Schwartz — the VEF's manager — charged outside investors for his services; (c) the VEF provided participants with strong performance before and during the Class Period; (d) the Plan was better off having concentrated its investments in the VEF than it would have been if the investments were more diversified across stock and bonds; (e) Neuberger met the Prohibited Transaction Exemption requirements to offer its own products as investment options for the Plan; (f) Plaintiff's comparator funds were either offered in the Plan alongside the VEF, or not sufficiently similar to the VEF to award damages based on their alternative performance; and (g) that Plaintiff's claims are time-barred.

### B. Procedural History, Motions Practice, And Discovery

Plaintiff filed his initial Complaint on August 2, 2016. Dkt. 1. The Court ultimately dismissed defendants other than the Neuberger Berman Investment Committee ("the Committee"), but permitted discovery as to whether Plaintiff had "actual knowledge" of his claim. Dkt. 76. Plaintiff filed an Amended Complaint (Dkt. 102) against the Committee alone, and the Committee again moved for Summary Judgment concerning the statute of limitations. Dkt. 106. The Court permitted discovery on that issue, and the Parties engaged in document discovery, including third-party discovery, and Defendant deposed the Plaintiff, Arthur Bekker.

The parties briefed the statute of limitations issue following this discovery, and then again following the U.S. Supreme Court's decision in *Intel v. Sulyma*, a case addressing whether a plaintiff is presumed to have "actual knowledge" of material published on plan websites or mailed to plan participants. The Court's consideration of the motion for summary judgment in light of the *Intel v. Sulyma* decision was pending at the time of the settlement.

At the same time, the Parties exchanged additional discovery and damages analyses as part of settlement discussions mediated by Judge Morton Denlow (Ret.) of JAMS on September 26, 2019. During the mediation, no resolution was reached. However, the parties engaged in a series of continuing conversations before and after the removal of the VEF from the Plan and before and after the U.S. Supreme Court's decision in *Intel v. Sulyma*. On March 23, 2020, the Parties reached an agreement in principle and, on May 27, 2020, finally agreed to and executed the Settlement before the Court.

On July 27, 2020, the Court granted Plaintiff's Motion for Preliminary Approval of the Settlement. Dkt. 134. At the same time, the Court conditionally certified the settlement class and appointed Class Counsel. The Court also directed notice to settlement class members, appointed KCC as settlement administrator, and scheduled the final approval hearing for November 19, 2020. *Id*. Consistent with that Order, KCC sent class notices to the 1,451 class members identified in the Plan's records on September 10, 2020. Exhibit A, Declaration of Andrew Perry, at ¶3. Of these notices, only 40 were returned as undeliverable and KCC is using various tools to locate those class members. *Id*. at ¶4. As reflected in the Notice, class members have until November 5, 2020 to timely submit an objection. To date, no objections have been filed with the Court or received by the Administrator. *Id*. at ¶7.

### III.     THE TERMS OF THE PROPOSED SETTLEMENT

The complete Settlement Agreement was previously filed at Dkt. 132-1. The key terms are summarized below. The proposed Settlement Class is defined as:

> All participants in the Neuberger Berman Group 401(k) Plan during the Class Period who had any portion of their Plan accounts, at any time during the Class Period, invested in the VEF. Excluded from the class are: (i) Defendant Neuberger Berman Group 401(k) Plan Investment Committee and those of its current and past members who served from June 15, 2010 through August 2, 2016; (ii) non-party Marvin Schwartz; and (iii) the beneficiaries, immediate family members, estates, and executors of (i) and (ii).

Class Action Settlement Agreement ("Settlement"), ¶ 2.36, Dkt. 132-1. The Class Period is defined as June 15, 2010 through December 16, 2019. Settlement, ¶ 2.5.

**Benefits to the Class**

Defendant has caused $17,000,000 (the "Gross Settlement Amount") to be deposited in the "Gross Settlement Fund." The Gross Settlement Fund will be used to pay Class Members recoveries as well as Class Counsel's Attorneys' Fees and Costs, Settlement Administrative Expenses, and Class Representative's Compensation Award as described in the Settlement Agreement. It will also be used to pay for the cost for an Independent Fiduciary to evaluate the Settlement, as required by ERISA.

Additionally, Defendant has already removed the VEF from the Plan, negating the need for additional relief through additional affirmative Plan changes.

**Release of Claims**

In exchange for payment of the Settlement Amount and satisfaction of the conditions required by the Settlement Agreement, Plaintiff and the Settlement Class will release "any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees and costs, whether under local, state or federal law, whether by statute, contract,

common law or equity, whether brought in an individual, representative or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, against the Released Parties through the date the Court enters the Final Approval Order and Judgment (including, without limitation, any Unknown Claims) arising out of or in any way related to: (a) the conduct alleged in the Complaint or the First Amended Complaint and any subsequent pleading or legal memorandum filed in the Action; (b) the selection, retention, and monitoring of the VEF as a Plan investment option; (c) the performance, fees, and any other characteristic of the VEF; and the approval by the Independent Fiduciary of the Settlement." Settlement ¶ 2.31.

## IV.   ARGUMENT

The Settlement Agreement satisfies all applicable criteria for approval. The Settlement Agreement should be approved as fair, reasonable, and adequate in all respects.

### A. The Legal Standards for Final Approval

"If the [settlement] would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). There is a strong judicial policy that favors the negotiated resolution of litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005); *TBK Partners, Ltd. V. W. Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982). This is especially true with respect to class actions. *Wal-Mart Stores, Inc.*, 396 F.3d at 117. For these reasons, "the compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.*; see also *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129–30 (2d Cir. 2001). In considering whether a settlement is "fair, reasonable, and adequate," courts must consider a number of demarcated factors identified in Fed.R.Civ.P. 23(e)(2).

### B. The Settlement Is Fair, Reasonable, and Adequate Under the Relevant Factors

There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000); *Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992). When the requirement of arm's-length negotiations is satisfied, counsel's endorsement of a proposed settlement is entitled to significant weight. *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-MDL-1695, 2007 WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007) ("courts should "consider the opinion of experienced counsel with respect to the value of the settlement"); *see also In re PaineWebber Ltd. P'shps Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Under Fed.R.Civ.P. 23(e)(2), a court considering whether a settlement is "fair, reasonable, and adequate" must determine: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; … and (D) the proposal treats class members equitably relative to each other. Fed.R.Civ.P. 23(e)(2). When briefing Preliminary Approval, Plaintiff addressed these same factors. Dkt. 133. Plaintiff supplements that briefing now.

#### 1. The Class Representatives and Class Counsel have adequately represented the Class

Plaintiff and Class Counsel extensively investigated this case before and after the filing of the original Complaint. Without either, the Class would likely have not received any recovery. Their efforts are fully detailed in Plaintiff's Memorandum in Support of Preliminary Approval and Memorandum in Support of Plaintiff's Motion for Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Award. Dkts. 133 and 136. In addition, since the filing of Plaintiff's Motion for Attorneys' Fees, Class Counsel have continued to work with the

7

Settlement Administrator, Independent Fiduciary, Class Representative, and Class Members. to administer the settlement.

### 2. The proposal was negotiated at arm's length

The proposed Settlement here is the result of lengthy, contentious and complex arm's-length negotiations between the parties. Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented. Class Counsel is very experienced in class action litigation generally and, in particular, class litigation arising from breaches of fiduciary duties to retirement plans under ERISA. In settlement discussions the Class was represented by seasoned attorneys with over a decade of experience bringing, settling, and trying cases on behalf of retirement plan participants alleging imprudence, disloyalty, and prohibited transactions under ERISA. Class Counsel is intimately familiar with this unique and complex area of law. Dkt. 137. It is Class Counsel's opinion that the proposed Settlement is fair and reasonable. Dkt. 133 at ¶ 12.

In addition, the negotiations were conducted with the assistance of an independent mediator during a full-day mediation, in addition to multiple discussions that were held prior to and after the mediation. The use of a mediator in settlement negotiations further supports the presumption of fairness and the conclusion that the Settlement achieved was free from collusion. *In re Giant Interactive Group, Inc. Sec. Litig.*, No. 07-cv-10588, 2011 WL 5244707, at *4 (S.D.N.Y. Nov. 2, 2011); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No 02-5575, 2006 WL 903236, at *7 (S.D.N.Y. Apr. 6, 2006) (noting that involvement of mediator in settlement negotiations helps "ensure that the proceedings were free of collusion and undue pressure").

Moreover, in connection with their settlement discussions, the Parties exhaustively discussed the merits, strengths, and weaknesses of the Action, risks of litigation, available insurance, and the financial impact to Defendants, the Class, and the Plan, with respect to any

8

judgment or settlement. Based on these discussions, the Parties were able to negotiate a fair settlement that they believe to be in their respective best interests. Because the Settlement is the product of serious, informed, non-collusive negotiations, approval should be granted.

### 3. The relief provided for the class is adequate

The Federal Rules instruct that adequacy should take into account factors such as: "(i) the cost, risk, and delay or trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2). Fed.R.Civ.P. 23(e)(2)(C). There are no side agreements here, and the remaining factors also clearly support approval.

As a result of the settlement, the Class will benefit now from the Settlement Fund, instead of years from now if the case were ultimately successful at trial. The distinction is meaningful. Cases of this nature tend to have significant lifecycles. In one such case, *Tussey v. ABB, Inc.*, participants filed their action in 2006, received a trial verdict in 2012, saw that verdict reduced by the court of appeals in 2014 and ultimately received compensation only one year ago — after 13 years of litigation and appeal and only after the parties reached a settlement. *Tussey v. ABB, Inc.*, No. 06-cv-4305, Dkt. 869 (W.D. Mo. Aug 16, 2019). In the end, plaintiffs' counsel in *Tussey* requested and received over $2,250,000 in expense reimbursement from the class. *Tussey*, Dkt. 870.

If this case continues, it too could take a decade or more for the Class to receive any benefit, even if Plaintiff prevails at trial. Meanwhile, similar cases have been dismissed in their entirety or resulted in defense verdicts at trial. *Miners v. Wells Fargo & Co.*, No. 16-cv-3981, 2017 WL 2303968 (D. Minn. May 25, 2017), *affirmed at* 898 F.3d 820 (8th Cir. 2018) (dismissed);

*Wildman v. Am. Century Servs., LLC*, No. 16-cv-737, 2019 WL 283382 (W.D. Mo. Jan 23, 2019) (defense verdict after trial).

 The distribution plan will be highly effective. Plan records provide up-to-date contact information for nearly all of the Class Members and for those whose information is not up-to-date, plan records include social security numbers which can be used to trace their whereabouts. Participants who remain in the Plan will receive their distributions directly into their 401(k) Plan account, allowing them to continue to grow tax deferred, while those who have left the Plan will have an option of receiving a check directly or into another qualified account. In this way, the distribution to class members will be highly effective. Further, any assets remaining in the Settlement Fund after the initial distribution will be re-distributed to the Class and/or used to pay Plan expenses pursuant to the Plan of Allocation. Dkt. 132-4, ¶¶ 8–9.

 Finally, although the Settlement Agreement and Class Notices stated that Class Counsel intended to request fees of up to $5,666,666 and expense reimbursement of up to $60,000, Class Counsel have actually sought $4,760,000 (28% of the Settlement Amount) as fees and reimbursement of $41,083.58. Dkt. 135. As explained in Plaintiff's Memorandum in Support of that request, the request is at or below the market rate for settlements in this nuanced area of law. See, Dkt. 136.

 As discussed above, a primary theory for recovery alleged by Plaintiff is based on Defendant's selection and retention of the proprietary VEF in the Plan. Class Counsel continue to have confidence in the merits of these claims. There are, however, significant legal obstacles and defenses which render recovery in this case uncertain and that may affect the amount if there is a recovery. Defendant denies all of Plaintiff's allegations, denies that it committed or participated in any fiduciary breaches or other wrongdoing, vigorously contested Plaintiff's

allegations, and would continue to do so. Defendant would point to outperformance of the VEF and its highly-regarded manager, Marvin Schwartz, prior to the beginning of the Class Period. Defendant would also note that a third-party investment consultant monitored all Plan investments and did not recommend that the VEF be replaced. Finally, Defendant would argue that the Plan was not damaged by the inclusion of the VEF because, although the VEF underperformed equity indexes and peers, it outperformed the Plan's target date funds, which Defendant would argue was the option into-which VEF assets would have been moved had Defendant removed the VEF from the Plan.

The Settlement, meanwhile, provides for a certain $17 million settlement fund. The Settlement Amount represents nearly 20% of Plaintiff's estimate of damages from the underperformance of the VEF, which is $87.5 million. This amount is consistent with, and in fact higher than, settlements in similar propriety fund ERISA class actions approved — in some cases after summary judgment. *See, e.g, Richards-Donald v. Teachers Insurance and Annuity Ass'n of Amer*. No. 15-cv-8040 (S.D.N.Y.) ($5 million settlement representing 11.6% of alleged damages); *Figas v. Wells Fargo*, No. 08-cv-4546 (D. Minn.) ($17.5 million settlement representing 19.5% of alleged damages); *Sims v. BB&T Corp*., No. 15-cv-732 (M.D.N.C.) ($24 million settlement representing 19% of alleged damages); *Urakhchin v. Allianz Asset Mgmt. of Ameri., L.P.*, No. 15-cv-1614 (C.D. Cal.) ($12 million settlement representing 25.5% of alleged damages).

Defendant also contends that even if Plaintiff could establish liability, damages should be zero (or negative) because it argues that if the VEF had been removed, the assets would have either been dispersed among all of the Plan's investment options, including very conservative funds, or would have moved into the Plan's target date funds (where Plan assets were actually

11

moved when the VEF was removed). In either case, the VEF outperformed those alternatives of the Class Period.

The settlement is fair and reasonable, particularly in light of the risks, delay and uncertainty of further litigation.

### 4. The proposal treats class members equitably relative to each other

Distributions to Class Members will be determined by the Plan of Allocation, attached to the Settlement Agreement and filed as Dkt. 132-4. Under the Plan, Class Member distributions will be based on the amount each Class Member held in the VEF over the course of the Class Period. Because damages — whether measured by the VEFs fees or its alleged underperformance — from the inclusion of the VEF are a function of the amount of assets in the Fund, calculating distributions on this basis equitably allocates the settlement proceeds based on the value of each class member's claim.

### 5. Additional factors support approval.

Prior to the December 1, 2018 amendments, courts in the Second Circuit traditionally considered nine *Grinnell* factors in evaluating whether a settlement is "fair, reasonable, and adequate." *Id,* citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).

The *Grinnell* factors are:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*, at 28–29. These factors were expressly addressed by Plaintiff in his Memorandum in Support of Preliminary approval. Dkt. 133. Although analysis of most of these factors is not materially different at this time, or has been fully addressed above, an update is appropriate with respect to the reaction of the Class, the second *Grinnell* factor.

Pursuant to this Court's Order preliminarily approving the settlement (Dkt. 134), notice of the Settlement Agreement was mailed to 1,451 individuals believed to be Settlement Class Members. Ex. A at ¶ 3. In addition, the Notice was distributed electronically and made available over the Internet via the Settlement website. *Id*. at ¶ 5. This notice complies with the requirements of Fed. R. Civ. P. 23 and due process, as well as this Court's Order granting preliminary approval and was calculated to ensure individual notice to each of the Class Members.

Although the objection deadline has not passed, at this time not one of the Settlement Class Members has filed an objection with the Court. *Not one*. The lack of *any* objection is a telling, and virtually unheard-of sign of overwhelming support for the settlement by the members of the class. The Class Representative also agrees with the settlement.

These factors support the Court's granting final approval of the Settlement Agreement.

Additionally, the entire Settlement was reviewed by an independent fiduciary, who issued findings supportive of the Settlement. Ex. 2.

### C.  Class Certification remains appropriate

This Court previously conditionally certified the settlement class under Fed.R.Civ.P. 23(b)(1)(A) and (B). Dkt. 134. For the reasons described in the Court's Order, as well as Plaintiff's Memorandum in Support of Preliminary Approval, Motion for Attorney's Fees (Dkt.

136) and this Memorandum, certification under both sub-sections of Rule 23(b)(1) remains appropriate.

## V.  CONCLUSION

Plaintiff respectfully requests that the Court finally approve the proposed Settlement Agreement as fair, reasonable, and adequate, and enter the proposed Final Order and Judgment.

Dated: October 20, 2020                               Respectfully submitted,

/s/ *Gregory Y. Porter*
Gregory Y. Porter (*pro hac vice*)
Kevin W. Barrett (NY Bar # 2196343)
Ryan T. Jenny (*pro hac vice*)
Mark G. Boyko (NY Bar # 4306122)
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
kbarrett@baileyglasser.com
rjenny@baileyglasser.com
mboyko@baileyglasser.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2020, a copy of the foregoing was filed with the Court. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                          */s/ Gregory Y. Porter*
                                          Gregory Y. Porter, *pro hac vice*